1  MANATT, PHELPS & PHILLIPS, LLP
   BARRY S. LANDSBERG (Bar No. CA 117284)
2  E-mail: blandsberg@manatt.com
   BRAD W. SEILING (Bar No. CA 143515)
3  E-mail: bseiling@manatt.com
   ANDREW H. STRUVE (Bar No. CA 200803)
4  E-mail: astruve@manatt.com
   JESSICA J. SLUSSER (Bar No. CA 217307)
5  E-mail: jslusser@manatt.com
   JUSTIN C. JOHNSON (Bar No. CA 252175)
6  E-mail: jjohnson@manatt.com
   11355 West Olympic Boulevard
7  Los Angeles, CA  90064-1614
   Telephone:  (310) 312-4000
8  Facsimile:  (310) 312-4224

9  DAVID L. SHAPIRO (*Pro Hac Vice*)
   E-mail: dshapiro@law.harvard.edu
10 1563 Mass. Ave.
   Cambridge, MA  02138
11 Telephone:  (617) 495-4618
   Facsimile:   (617) 495-1950

12
   Attorneys for Defendants
13 EVERGREEN AT LAKEPORT, L.L.C.

14            UNITED STATES DISTRICT COURT

15           NORTHERN DISTRICT OF CALIFORNIA

16

17 Phyllis Wehlage, on her behalf and        No.  C 10-05839 CW
   on behalf of others similarly situated,
18                                            **DEFENDANT EVERGREEN AT**
              Plaintiff,                      **LAKEPORT, L.L.C.'S NOTICE OF**
19                                            **MOTION AND MOTION TO**
        vs.                                   **DISMISS PURSUANT TO FED. R.**
20                                            **CIV. P. 12(b)(6); MEMORANDUM OF**
   EmpRes Healthcare, Inc.; EHC              **POINTS AND AUTHORITIES IN**
21 Management LLC; EHC Financial             **SUPPORT THEREOF**
   Services LLC; Evergreen California
22 Healthcare LLC; Evergreen at Arvin         Hearing Date:  April 7, 2011
   LLC; Evergreen at Bakersfield LLC;         Time:          2 p.m.
23 Evergreen at Lakeport LLC;                 Judge:         Hon. Claudia Wilken
   Evergreen at Heartwood LLC;
24 Evergreen at Springs Road LLC;
   Evergreen at Tracy LLC; Evergreen
25 at Oroville LLC; Evergreen at
   Petaluma LLC; Evergreen at Gridley
26 (SNF) LLC; and DOES 1
   THROUGH 100,
27
              Defendants.
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

                    DEFENDANT EVERGREEN AT
          LAKEPORT. L.L.C.'S MOTION TO DISMISS
                    (CASE NO. C 10-05839 CW)

**TO THE COURT AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that, on April 7, 2011, at 2 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Claudia Wilken, located at 1301 Clay Street, Courtroom 2, Oakland, California 94612, defendant Evergreen at Lakeport, L.L.C. ("Defendant") will and hereby does move the Court for an order dismissing the Complaint filed by plaintiff Phyllis Wehlage ("Plaintiff") with prejudice.

Specifically, this Motion seeks dismissal of the Complaint with prejudice pursuant to Federal Rule of Civil Procedure Section 12(b)(6), on the ground that it fails to state a claim as a matter of law for alleged violations of: (1) California Health & Safety Code Section 1430(b); (2) California Business & Professions Code Sections 17200 *et seq.*; and (3) Civil Code Sections 1750 *et seq.*

This motion will be based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all other pleadings and papers filed in this action, and any argument that may be presented to the Court prior to or at the hearing on this Motion.

Dated:  February 18, 2011          Respectfully submitted,

MANATT, PHELPS & PHILLIPS


By:  /s/ Barry S. Landsberg
     Barry S. Landsberg
     *Attorneys for Defendant*
     EVERGREEN AT LAKEPORT, L.L.C.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1                    DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................2

II.   PLAINTIFF'S ALLEGATIONS ..........................................................5

III.   LEGAL ARGUMENT..........................................................................6

   A.   This Court Should Abstain From Adjudicating All Claims.................7

      1.   Skilled Nursing Facilities Are Subject to Extensive
           Oversight and Enforcement by CDPH........................................7

      2.   This Court Should Equitably Abstain From Adjudicating
           All of Plaintiff's Claims .......................................................... 10

      3.   Plaintiff Cannot Invoke the Regulators' Supposed
           Inaction as a Basis to Displace Their Enforcement
           Jurisdiction .............................................................................. 13

   B.   In the Alternative, This Case Should Be Stayed Because CDPH
        Has Primary Jurisdiction Over Setting Staffing Requirements
        and Policing Violations .............................................................. 14

   C.   Plaintiff's First Cause of Action Under Section 1430(b) Also
        Fails Because Section 1276.5 Does Not Create an Individual
        Patient Right ............................................................................... 15

   D.   The CLRA Does Not Apply to Plaintiff's Claims ........................... 20

      1.   The allegedly false representations are not actionable as a
           matter of law .......................................................................... 20

      2.   The CLRA Should Not Extend to the Provision of
           Institutional Health Care ....................................................... 21

IV.   CONCLUSION................................................................................. 22

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Alexander v. Sandoval,*
   532 U.S. 275 (2001)..................................................................... 16

5

*Alvarado v. Selma Convalescent Hospital,*
   153 Cal.App.4th 1292 (2007) ............................................. passim

6

*Arce v. Kaiser Foundation Health Plan, Inc.,*
   181 Cal.App.4th 471 (2010) ........................................................ 10

7

*Ashcroft v. Iqbal,*
   556 U.S. __, 129 S. Ct. 1937 (2009).......................................... 6, 7

8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955 (2007).............................................7

9

*Benn v. County of Los Angeles,*
   150 Cal.App.4th 478 (2007) ........................................................ 16

10

11

*Berry v. American Express Publishing, Inc.,*
   147 Cal.App.4th 224 (2007) ........................................................ 21

12

*Blessing v. Freestone,*
   520 U.S. 329 (1997).............................................................. 16, 19

13

*Caliber Bodyworks, Inc. v. Superior Court,*
   134 Cal.App.4th 365 (2005) ........................................................ 15

14

*California Ass'n of Health Facilities. v. Dep't. of Health Svcs.*
   16 Cal.4th 284 (1997) ............................................................. 7, 16

15

16

*Comm. Nat'l. Bank v. Fidelity and Deposition Co. of Maryland,*
   563 F.2d 1319 (9th Cir. 1977) ......................................................3

17

*Congress of California Seniors v. Catholic Healthcare West,*
   87 Cal.App.4th 491 (2002) .......................................................... 10

18

*Consumer Advocates v. Echostar Satellite Corp.,*
   113 Cal.App.4th 1351 (2003) ...................................................... 20

19

20

*Consumer Solutions REO, L.L.C. v. Hillery,*
   658 F.Supp.2d 1002 (N.D. Cal. 2009).......................................... 21

21

*Crusader Ins. Co. v. Scottsdale Ins. Co.,*
   54 Cal.App.4th 121, 137-138 (1997)...................................... 13, 14

22

*Desert Healthcare District v. PacifiCare, FHP, Inc.,*
   94 Cal.App.4th 781 (2001) .......................................................... 10

23

*Epstein v. Wash. Energy Co.,*
   83 F.3d 1136 (9th Cir. 1996)..........................................................7

24

25

*Fairbanks v. Superior Court,*
   46 Cal.4th 56 (2009)........................................................ 18, 21, 22

26

*Fantasy, Inc. v. Fogerty,*
   984 F.2d 1524 (9th Cir. 1993) .......................................................5

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Farmers Insurance Exch. v. Superior Court,*
  2 Cal.4th 377 (1992) .................................................................. 14, 15

4

*Ferrington v. McAfee, Inc.,*
  No. 10-CV-01455-LHK,

5

  2010 U.S. Dist. LEXIS 106600, at *56-*57 (N.D. Cal. Oct. 5,
  2010) .......................................................................................... 22

6

*Fuentes v. WCAB,*

7

  16 Cal.3d 1 (1976) .......................................................................3

8

*Garfield Medical Center v. Belshe,*
  68 Cal.App.4th 798 (1998) ........................................................ 12

9

*Gonzaga v. Doe,*
  536 U.S. 273 (2002) ............................................................. 16, 17

10

*Holland v. TD Ameritrade, Inc.,*
  No. CIV S-10-2110-GEB-CMK,

11

  2011 U.S. Dist. LEXIS 395, at *19-*20 (Jan. 4, 2011) ................ 22

12

*Jonathan Neil & Associates, Inc. v. Jones,*
  33 Cal.4th 917 (2005) ........................................................... 14, 15

13

*Local 8599, United Steelworkers of America v. Board of Educ.,*

14

  162 Cal.App.3d 823 (1985) ....................................................... 12

15

*Lu v. Hawaiian Gardens,*
  50 Cal.4th 592 (2010) ........................................................... 16, 17

16

*Madrid v. Perot Systems Corp.,*
  130 Cal.App.4th 440 (2005) ...................................................... 19

17

*McKell v. Washington Mutual. Inc.,*
  142 Cal.App.4th 1457 (2006) .................................................... 21

18

*Moradi-Shalal v. Fireman's Fund Ins. Cos.,*

19

  46 Cal.3d 287 (1988) ................................................................. 16

20

*PH II, Inc. v. Superior Court,*
  33 Cal.App.4th 1680 (1995) ...................................................... 15

21

*Reudy v. Clear Channel Outdoor, Inc.*
  2010 U.S. Dist. LEXIS 130295 (N.D. Cal. Nov. 2010) ................ 10

22

*Robertson v. Dean Witter Reynolds, Inc.,*
  740 F.2d 530 (9th Cir. 1984) .......................................................6

23

*Samura v. Kaiser Foundation Health Plan, Inc.,*
  17 Cal.App.4th 1284 (1993), *cert. den.,* 511 U.S. 1084 (1994) ...... 10

24

*Shamsian v. Department of Conservation,*

25

  136 Cal.App.4th 621 (2006) ...................................................... 10

26

*Six Companies of Cal. v. Joint Highways Dist. No. 13,*
  311 U.S. 180 (1940) .....................................................................3

27

*Touche Ross Co. v. Redington,*
  442 U.S. 560 (1979) ................................................................... 16

28

MANATT, PHELPS &
PHILLIPS, LLP.
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

## STATUTES

4

Cal. Civ. Code § 1761(a)...................................................................... 21

Cal. Civ. Code § 1761(b) ..................................................................... 21

5

Cal. Civ. Code § 1770(a)...................................................................... 21

6

Cal. Health & Saf. Code § 1422.6......................................................... 21

7

Cal. Health & Saf. Code § 1422.7......................................................... 21

Cal. Welf. & Ins. Code § 1276.9.............................................................9

8

Cal. Welf. & Ins. Code § 14110.7...........................................................9

9

Cal. Welf. & Inst. Code § 14126.022(f)(2)(A) .......................................9

10

## REGULATIONS

11

42 C.F.R. § 488.332 ...............................................................................8

12

Cal. Code Regs., tit. 22, § 72329.1 .........................................................9

13

Cal. Code Regs., tit. 22, § 72527 (24)................................................... 18

14

15

16

17    300215920.2

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

iv

**MEMORANDUM**

## I.   INTRODUCTION

This lawsuit asks the Court to displace the executive agency tasked by the Legislature with enforcing a purely regulatory law. That law, Health & Safety Code Section 1276.5 ("Section 1276.5"),[1] specifies the average number of nurse hours required for the care of elderly and infirm residents of California's nursing homes. The statute expressly commands regulation and enforcement by the California Department of Public Health ("CDPH"), and no one else. Yet, Plaintiff seeks judicial regulation and enforcement of Section 1276.5, with class-wide injunctive relief, damages and restitution. Since she cannot maintain such an action, the court should abstain and the action should be dismissed.

That is what the courts did in *Alvarado v. Selma Convalescent Hospital*, 153 Cal.App.4th 1292 (2007). In *Alvarado*, the trial court and the Court of Appeal rejected (on first demurrer) judicial enforcement of Section 1276.5, and dismissed a functionally identical action by a putative class of nursing home residents against nursing homes for alleged violations of Section 1276.5. *Alvarado* declared that "Section 1276.5 . . . is a regulatory statute, which the Legislature intended [the CDPH] to enforce." *Id*. at 1304.[2] The published opinion in *Alvarado*, the only appellate decision on this subject, confirms that Section 1276.5 is intended to be enforced by the regulators, not by individual nursing home residents seeking a network of injunctions enforceable by contempt.

The plaintiff in *Alvarado* alleged, as does Plaintiff here, that the defendant skilled nursing facilities ("SNFs") were understaffed and had violated the Unfair Competition Law ("UCL"), based upon violations of Section 1276.5 and of

---

[1] All statutory references herein are to the California Health and Safety Code unless otherwise noted.

[2] *Alvarado* refers to the "DHS", the Department of Health Services. The CDPH now enforces Section 1276.5 along with other regulatory functions formerly administered by the DHS.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

2

1    two other Health & Safety Code statutes, Sections 1599.1 and Section 1430(b).[3]

2    Multiple allegations in the *Alvarado* complaint are repeated verbatim in Plaintiff's

3    Complaint in this Court, and the linchpin in both complaints is a claimed violation

4    of Section 1276.5. *Compare* RJN, Ex. 7 at ¶¶ 1, 2, 4, 34-38, 40-41, *with* Plaintiff's

5    Comp., ¶¶ 1, 2, 5, 31-35, 37-39; *and see* n. 2. Plaintiff's complaint here is no more

6    justiciable than was the complaint in Alvarado.

7          The courts in *Alvarado* refused to adjudicate such claims because to do

8    so "would require the trial court to assume general regulatory powers over the

9    health care industry, . . . a task for which courts are not well equipped," and would

10    place "a tremendous burden on the trial court to undertake a class-wide regulatory

11    function." *Id.* at 1303-04, 1306. *Alvarado* refused to force the trial court to meddle

12    in complex regulatory policy and existing enforcement schemes. Such a lawsuit, it

13    said, would require the Court to "decide whether to issue networks of injunctions

14    across the State of California," and, if so, to "monitor and enforce them." *Id.* at

15    1306. The CDPH, *Alvarado* concludes, "has the power, expertise and statutory

16    mandate to regulate and enforce section 1276.5," and trial courts do not. *Id.*

17          Section 1276.5 has not changed since the *Alvarado* court so decided,

18    and that court's interpretation of the meaning and import of this statewide law is

19    definitive. *See, e.g., Six Companies of Cal. v. Joint Highways Dist. No. 13*, 311

20    U.S. 180, 188 (1940) (holding that announcement of state law by an intermediate

21    appellate state court must be accepted by federal courts in absence of convincing

22    evidence that law of state is otherwise); *Comm. Nat'l. Bank v. Fidelity and*

23    *Deposition Co. of Maryland*, 563 F.2d 1319, 1321 fn. 1 (9th Cir. 1977) (same).

24    Had the Legislature intended the statute to be interpreted differently, it could have

25    amended Section 1276.5 or Section 1430(b) to say so, including when it last

26    amended Section 1430(b) in 2004, over four years after Section 1276.5 became law.

27

28    [3] *See* Request for Judicial Notice, Exhibit ("Ex.") 7, at ¶¶ 35-38, 46.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANT EVERGREEN AT
LAKEPORT, L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1   *Fuentes v. WCAB*, 16 Cal.3d 1, 7 (1976) (the Court "must assume that when

2   passing a statute the Legislature is aware of existing related laws and intends to

3   maintain a consistent body of rules."). Or, it could have overruled *Alvarado*,

4   decided on August 1, 2007. The Legislature has not done so.

5       Indeed, the CDPH itself has acted consistently with *Alvarado*'s

6   interpretation of Section 1276.5. The CDPH recently has published a series of

7   detailed "All Facilities Letters," setting forth an elaborate state audit and penalty

8   scheme for determining and enforcing compliance with Section 1276.5. *See* RJN

9   Ex. 5. Importantly, the CDPH agrees that "[t]he minimum 3.2 NHPPD [nursing

10  hours per patient day] does not assure that *any given patient* receives 3.2 hours of

11  nursing care; it is the total number of nursing hours performed by direct caregivers

12  per patient day divided by the average patient census" – an interpretation of Section

13  1276.5 directly at odds with the one Plaintiff asks this Court to adopt. RJN Ex. 5

14  (January 31, 2011) at pg. 1 (emphasis added). The CDPH also has created an

15  administrative appeal scheme, affording trial-type hearings before trained

16  administrative Hearing Officers, to any SNFs wishing to appeal an agency penalty

17  assessment of any amount. *See* RJN, Ex. 6 at p. 2. *Alvarado* presciently

18  forewarned of inconsistent adjudication of claims brought under Section 1276.5,

19  and the CDPH has emphatically underlined the problem of parallel judicial and

20  administrative enforcement of this law. *Alvarado*, 153 Cal.App.4th at 1304-06.

21  *Alvarado* admonishes anyone who has a genuine concern with respect to the

22  agency's enforcement of the law to petition for a writ of mandate against the

23  CDPH. *Id.* at 1366 n.5.[4]

24       Plaintiff tries to plead around *Alvarado*, but it is a round trip. Plaintiff

25  resurfaces the former UCL claim as a separate "cause of action" for violations of a

---

[4] One plaintiff did precisely this, seeking a writ of mandate to compel CDPH to publish regulations under another regulatory law relating to nurse staffing ratios within nursing homes. *See* RJN, Ex. 8. To Defendant's knowledge, no one has petitioned for such relief regarding Section 1276.5.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1   resident's right under Section 1430(b), which authorizes a private cause of action

2   and specified remedies whenever "rights of a resident" have been violated. But, as

3   the CDPH has stated, there is no resident's right to receive any specific number of

4   nurse hours on a given day. Section 1276.5 instructs the CDPH to regulate and

5   calculate facility-wide *average* hours from the total aggregate nurse hours clocked

6   for all residents that day. This case is about the same law declared inappropriate for

7   private enforcement by the court in *Alvarado*, no matter that it is presented through

8   the UCL or Section 1430(b). This Court should adhere to *Alvarado* and abstain.[5]

9           In the alternative, the doctrine of primary jurisdiction supports a stay

10  of this action, until such time as the CDPH can apply its expertise, audit and find

11  that Defendants have or have not complied with Section 1276.5. If the CDPH

12  assesses penalties for any adverse findings, then judicial review should await

13  completion of all administrative appeals of any such penalty assessments. *See infra*

14  at pp. 14-15. Finally, Plaintiff's Consumer Legal Remedies Act ("CLRA") claim

15  fails because the health care services at issue are not covered by that law.

16  **II.    PLAINTIFF'S ALLEGATIONS**

17          The crux of Plaintiff's Complaint is an allegation that Defendants

18  failed "to provide sufficient direct nursing care staffing for elderly and dependent

19  adult residents" by failing to meet "the minimum staffing required for patients and

20  skilled nursing facilities" under Section 1276.5. (Comp., ¶¶ 1-3.) Plaintiff's three

21  claims for relief, including class relief, all depend on being able to litigate and

22  prove violations of Section 1276.5. (Comp., ¶¶ 3, 58, 62, 75.) Plaintiff names 13

23

---

24  [5] Alternatively, because Section 1276.5 cannot serve as the predicate of Plaintiff's
    Section 1430(b) claim, the Court should strike any reference to Section 1276.5 from
25  Plaintiff's Complaint, pursuant to F.R.C.P., Rule 12(f). *See Fantasy, Inc. v.
    Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other gnds*, *Fogerty v.
26  Fantasy, Inc.*, 510 U.S. 517, 534-535 (1994) ("(T)he function of a 12(f) motion to
    strike is to avoid the expenditure of time and money that must arise from litigating
27  spurious issues by dispensing with those issues prior to trial. . . . ' Immaterial'
    matter is that which has no essential or important relationship to the claim for relief
28  or the defenses being pleaded.") (internal citations omitted.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1    separate companies and 9 separate facilities, 8 of which she never resided in,[6] for

2    purported violations of (1) Section 1430(b), (2) the UCL, Business & Professions

3    Code Sections 17200 *et seq.* and (3) the CLRA, Civil Code Sections 1750 *et seq.*

4                Plaintiff alleges no facts to support her allegations of understaffing.

5    Plaintiff simply includes a single allegation "[o]n information and belief" that

6    "defendants have systematically and continuously failed to comply with the 3.2

7    NHPPD requirement under Section 1276.5 on 20% or more days during the Class

8    Period." (Comp., ¶ 39.)  With respect to Plaintiff, the Complaint simply alleges

9    that she resided in one of the facilities (in Lakeport, California) on days that the

10   facility was purportedly understaffed.  (Comp., ¶ 41.)

11               With no allegation that Plaintiff resided in any other facility, Plaintiff

12   asks this Court to determine whether Defendants have systematically understaffed

13   their facilities, whether such understaffing violates residents' rights, and the

14   appropriate nature of class-wide injunctive relief.  (Comp, ¶ 49, Prayer at pg. 17.)

15   Plaintiff also seeks statutory penalties, attorneys' fees and costs, restitution, and

16   treble damages.  (Comp., Prayer at pg. 17.)

17   **III.   LEGAL ARGUMENT**

18               Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure

19   is proper if a complaint cannot plead a cognizable legal theory or is unable to allege

20   sufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter*

21   *Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  To survive a motion to dismiss

22   for failure to state a claim, a pleading must contain sufficient factual matter,

23   accepted as true, to state a claim to relief that is plausible on its face.  FRCP

24   12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  "A claim

25   _____

[6] Plaintiff's claims against the Defendant facilities in which they never resided are
26   deficient for separate and independent reasons that are addressed in the motion to
dismiss being filed concurrently by those facilities.  Those separate defendants also
27   join in the instant motion to dismiss, which is brought by the operator of the single
SNF in which Plaintiff alleges she resided, Evergreen at Lakeport, L.L.C. *See*
28   concurrently-filed Motion to Dismiss and Notice of Joinder.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6                          DEFENDANT EVERGREEN AT
LAKEPORT, L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1    has facial plausibility when the plaintiff pleads factual content that allows the court

2    to draw the reasonable inference that the defendant is liable for the misconduct

3    alleged." *Ibid.*  However, the court need not accept "[t]hreadbare recitals of the

4    elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129

5    S.Ct. at 1949.  While a court "must take all of the factual allegations in the

6    complaint as true," it is "not bound to accept as true a legal conclusion couched as a

7    factual allegation." *Id.* at 1949–50.  Mere "labels and conclusions" or "a formulaic

8    recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

9    *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  Indeed, "conclusory

10   allegations of law and unwarranted inferences are insufficient to defeat a motion to

11   dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136,

12   1140 (9th Cir. 1996).

13           A.      **This Court Should Abstain From Adjudicating All Claims.**

14                   Under *Alvarado* and other decisions, judicial abstention is appropriate

15   when a lawsuit would require a court to embroil itself in a scheme of complex

16   administrative regulations.  This is such a case.  It is the *Alvarado* case, only barely

17   disguised with meaningless pleading wrinkles.[7]

18                   1.      **Skilled Nursing Facilities Are Subject to Extensive Oversight**
                             **and Enforcement by CDPH.**
19
                     SNFs are among the most extensively regulated health care providers
20
     in California.  The CDPH has "primary responsibility for enforcing compliance
21
     with statutes and regulations governing long-term health care facilities . . . through
22
     its licensing, inspection, and citation regime." *California Ass'n of Health*
23
     *Facilities. v. Dep't. of Health Svcs.* 16 Cal.4th 284, 305 (1997).  The CDPH is
24

25   _____
     [7]  *Alvarado* held that the trial court had not abused its discretion in deciding to
26   dismiss that action on abstention grounds.  But, as we show in our discussion of the
     Court of Appeal's opinion, *Alvarado* moves well beyond the trial court's discretion
27   and declares the meaning of statewide law in a published decision.  The case for
     dismissal was so strong that the appellate court would almost surely have reversed a
28   refusal to dismiss as an abuse of discretion.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1    specifically responsible for evaluating and licensing SNFs, inspecting them, and

2    ensuring their ongoing compliance with applicable law, including Section 1276.5

3    and its many nuances and variables of the 3.2 NHPPD facility-wide average

4    staffing.

5         The CDPH may not license a SNF unless it first finds that the SNF

6    meets hundreds of specifically enumerated requirements, and that its services are

7    adequate and appropriate for residents' needs. *See* Sections 1254(a), 1250(c), 1277.

8    The CDPH also wields enforcement and remedial powers for SNFs' violations. *See*

9    Sections 1417.1, 1420. As the result of even one complaint, the CDPH may revoke

10   a SNF's license, recommend that the SNF be decertified from participation in

11   Medicare and Medi-Cal, and subject the SNF to civil penalties or other remedies

12   under the federal scheme or it may impose a state citation with its own penalties.

13   *See* § 1423(a).

14        The CDPH's Licensing and Certification Division ("L&C") surveys

15   onsite all SNFs at least every 15 months and investigates complaints from residents

16   or others. *See* 42 C.F.R. § 488.332. The CDPH's L&C inspection teams conduct

17   unannounced surveys to evaluate all aspects of resident care and nursing home

18   procedures and practices and assess compliance with state and federal requirements.

19   (*See* Health Facilities Consumer Information Systems Website, ¶¶ 3 & 5, at

20   https://hfcis.cdph.ca.gov/AboutUs.aspx.) Areas reviewed include "residents' rights,

21   facility practices, quality of life, activities, assessment and care plans, quality of

22   care provided for specific needs, dietary services, housekeeping, staffing,

23   pharmacy, physician services, environment, disaster preparedness, and quality

24   assurance." *Id.* at 6. Survey teams have the authority to issue statements of

25   deficiencies if they determine that the SNF has failed to follow any of the numerous

26   applicable regulations. *Id.* at 10.

27        Section 1276.5 specifically bestows upon the CDPH the authority to

28   adopt regulations setting the minimum number of "nursing hours" per patient,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

DEFENDANT EVERGREEN AT
LAKEPORT, L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1    subject to the requirements of Welfare and Institutions Code Section 14110.7 and

2    Health and Safety Code Section 1276.9.  Both of these laws establish separate

3    nursing hour requirements for SNFs with special treatment programs.  Welf. & Ins.

4    Code § 14110.7; Section 1276.9.

5            The corresponding regulations are likewise complex and require

6    considerable expertise and discretion to enforce.  California Code of Regulations,

7    Title 22, Section 72329.1 further details the required staffing levels and formulas

8    for their calculation.  *See* Cal. Code Regs., tit. 22, § 72329.1.  These staffing levels,

9    however, are "minimum standards only."  *Id.* § 72329.1(a).  The regulations further

10   require SNFs to "employ and schedule additional staff as needed to ensure quality

11   resident care based on the needs of individual residents and to ensure compliance

12   with all relevant state and federal staffing requirements."  *Id.*

13           The CDPH's enforcement of Section 1276.5, in particular, is ongoing

14   and robust.  The Legislature and the CDPH recently have provided additional

15   guidance concerning Section 1276.5, and have assured strict annual regulation and

16   enforcement, including the imposition of substantial fines.  Section 14126.022 was

17   added to Welfare & Institutions Code effective October 19, 2010, and now provides

18   that the CDPH "shall assess [SNFs] . . . an administrative penalty" ranging from

19   $15,000 to $30,000 if SNFs fail to meet the 3.2 NHPPD requirement for *5 percent*

20   *or more of the days audited*.  Welf. & Inst. Code § 14126.022(f)(2)(A).  In addition,

21   the CDPH has issued several All Facilities Letters which provide that "CDPH will

22   conduct 'unannounced' on-site staffing visits of all facilities to verify compliance

23   with the staffing requirements."  RJN Ex. 5.  It also has created a trial-type

24   administrative appeal mechanism that allows SNFs to appeal "any penalty"

25   assessed by the CDPH for violations of Section 1276.5 and staffing requirements.

26   RJN Ex. 6.

27           The All Facilities Letters provide a detailed regulatory elaboration of

28   Section 1276.5.  RJN Exs. 5-6.  For a given patient day, NHPPD will be calculated

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

9

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1   using the average patient census based on the highest number of patients each hour.

2   The CDPH also announced a new rule that only care provided by nurses, certified

3   nursing assistants and psychiatric technicians will count towards the NHPPD

4   calculation (*id.* at 2, 4 (definition of "Direct Caregiver")).  And, in obvious conflict

5   with Plaintiff's core claim here, the CDPH reconfirmed that the "3.2 NHPPD does

6   not assure that any given patient receives 3.2 hours of nursing care . . . ."  RJN Ex

7   5, p. 1.

8            2.    **This Court Should Equitably Abstain From Adjudicating
                   All of Plaintiff's Claims.**

9

10            Plaintiff's Complaint asks this Court to determine what California's

11   SNF staffing laws require, and to regulate judicially by imposing statewide

12   "networks of injunctions" against all Defendants.  But courts have declined similar

13   invitations to intrude on such complex administrative schemes and have abstained

14   and swiftly dismissed cases in favor of legislative or regulatory action (or both).[8]

15            Here, the Court of Appeal has already spoken, and has emphatically

16

---

17   [8]  *See, e.g., Shamsian v. Department of Conservation,* 136 Cal.App.4th 621 (2006)

18   (trial court properly abstained from adjudicating a UCL claim brought against the
     Department of Conservation for allegedly failing to provide the recycling
     opportunities contemplated in Public Resources Code Section 14501(g)); *Samura v.*

19   *Kaiser Foundation Health Plan, Inc.,* 17 Cal.App.4th 1284, 1301-02 (1993)
     ("courts cannot assume general regulatory powers over [regulated entities] through

20   the guise of enforcing the UCL"), *cert. den.,* 511 U.S. 1084 (1994); *Congress of
     California Seniors v. Catholic Healthcare West,* 87 Cal.App.4th 491 (2002)

21   (abstention mandated on demurrer to complaint alleging improper submission of
     claims for Medi-Cal reimbursement, stating that "[n]o Court should venture into

22   such a judicial minefield."); *Desert Healthcare District v. PacifiCare, FHP, Inc.,* 94
     Cal.App.4th 781, 794-95 (2001) ("the instant case is a perfect example of when a

23   court of equity should abstain . . . .  such an inquiry would pull the court deep into
     the thicket of the health care finance industry, an economic arena that courts are ill-

24   equipped to meddle in"); *Reudy v. Clear Channel Outdoor, Inc.* 2010 U.S. Dist.
     LEXIS 130295 (N.D. Cal. Nov. 2010) (equitable abstention applied and effected

25   dismissal of action with prejudice where comprehensive regulatory enforcement
     mechanism existed to address alleged wrongdoing), relying on *Shamsian v. Dep't*

26   *of Conservation,* 136 Cal.App.4th 621 (2006); *cf. Arce v. Kaiser Foundation Health
     Plan, Inc.,* 181 Cal.App.4th 471, 500-01 (2010) (abstention not warranted where

27   claims were not regulatory and focused on basic judicial function of interpreting
     health plan contract and a related categorical refusal to insure autistic spectrum

28   disorders).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

DEFENDANT EVERGREEN AT
LAKEPORT, L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1    defined Section 1276.5 as just the type of statute that should not invoke private

2    enforcement by individuals through the judicial system.  Just as in this action, the

3    plaintiff in *Alvarado*, also suing on behalf of absent nursing home residents, alleged

4    that the defendant SNFs had failed to provide sufficient staffing under Section

5    1276.5.  *Alvarado*, 153 Cal.App.4th at 1296.  Like this case, the plaintiff in

6    *Alvarado* asserted claims under the UCL, and for false advertising in violation of

7    Business and Professions Code sections 17500 *et seq.  Id.*  Relying upon the

8    abstention doctrine, the trial court sustained defendants' demurrer without leave to

9    amend.  *Id.*

10          In affirming the trial court's dismissal, the Court of Appeal held, as a

11   matter of law, that "[a]djudicating this class action controversy would require the

12   trial court to assume general regulatory powers over the healthcare industry through

13   the guise of enforcing the UCL, a task for which the courts are not well-equipped."

14   *Id.* at 1303-04.  The court first noted that "*[s]ection 1276.5, subdivision (a) is a*

15   *regulatory statute, which the Legislature intended the DHS [now the CDPH] to*

16   *enforce.*"  *Id.* (emphasis added).  Even *were* the court equipped to make a

17   determination under the statute, "DHS is better equipped to determine compliance

18   with the statute" because of the multitude of administrative determinations

19   necessary for a trial court to enforce section 1276.5.  *Id.* at 1305 (noting that in

20   order to calculate nursing hours a court must, *inter alia*, classify employees into

21   different categories of nursing care, calculate the hours each employee worked, and

22   "determine on a class-wide basis the size, configuration and licensing status of

23   skilled nursing and intermediate care facilities").  Because of the complexity of

24   these calculations, the Court of Appeal held that "calculating on a class-wide basis

25   whether skilled or intermediate nursing facilities are in compliance with Section

26   1276.5 . . . is a task better accomplished by an administrative agency than by trial

27   courts."  *Id.* at 1306.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

*Alvarado* also held that injunctive relief to remedy and enforce inadequate nursing home staffing would impose an unmanageable burden on busy trial courts. "[G]ranting the requested injunctive relief would place a tremendous burden on the trial court to undertake a class-wide regulatory function and manage the long-term monitoring process to ensure compliance with section 1276.5, subdivision (a)," because it would require the trial court to issue, monitor and enforce "networks of injunctions across the State of California." *Id.* at 1306.

Plaintiff wants to ensnare this Court into the same regulatory role that the courts in *Alvarado* refused to assume. (Comp., Prayer ¶ 2 (asking this Court to enjoin Defendants' staffing practices).) As *Alvarado* definitively held, claims based on alleged violations of Section 1276.5 cannot be adjudicated without intruding into the regulators' extensive regulatory and administrative scheme. *See, e.g., Garfield Med. Ctr. v. Belshe*, 68 Cal.App.4th 798, 806 (1998) (prior appellate interpretation of statute's meaning was necessary to decision and binding in later actions); *Local 8599, United Steelworkers of America v. Board of Educ.*, 162 Cal.App.3d 823, 834 (1985) (same). Just as in *Alvarado*, Plaintiff is asking the Court to step into the shoes of a regulatory agency that already is doing its job conducting surveys, issuing statements of deficiencies and imposing remedies with respect to them when and as appropriate, and that, as recently as this January, in its latest All Facilities Letters, has reconfirmed its intention to enforce these laws.

As *Alvarado* also emphasized, there are immense practical difficulties with Plaintiff's request. State regulators conduct surveys and inspections, respond to complaints and use complex formulas involving extensive guidelines and protocols to determine whether a SNF is complying with mandated staffing requirements. Judicial involvement in such supervision would create the risk of inconsistent standards and results, with no clear mechanism for resolving the inconsistencies. The Court is simply "not well equipped" to make such determinations, and should not be forced into a tug-of-war with the actual

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

12

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

regulators.  That lack of expertise and legislative assignment of responsibility are among the core stated reasons that the trial court and the Court of Appeal gave for abstaining in *Alvarado*.[9]

### 3. Plaintiff Cannot Invoke the Regulators' Supposed Inaction as a Basis to Displace Their Enforcement Jurisdiction.

*Alvarado* makes clear that the proper recourse for complaints about the manner in which the CDPH enforces Section 1276.5 is a writ of mandate directed to the CDPH, not a private action.  *Alvarado*, 153 Cal.App.4th at 1306, fn. 5.  Any attack on the adequacy of the existing regulatory enforcement scheme is misdirected and does not justify judicial displacement of the chartered regulatory agency.

In *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal.App.4th 121, 137-138 (1997), the Court of Appeal held the trial court had quite properly rejected such a judicial encroachment on an agency's regulatory authority.  In *Crusader,* the court affirmed the dismissal (also on demurrer) of an action seeking judicial enforcement of another regulatory law, under which the Department of Insurance oversees the sales of insurance policies by surplus or excess line insurers (i.e., insurers not "admitted" in California).  Just as here, the *Crusader* plaintiff argued that judicial enforcement was warranted because the responsible regulatory agency "is not adequately performing its legislatively assigned task . . . ."  *Id.*  The Court of

---

[9] These principles apply equally to the CLRA claim.  While Plaintiff purports to frame that claim in terms of alleged misrepresentations, those allegations depend on the underlying allegations regarding noncompliance with staffing requirements. *See Alvarado*, 153 Cal.App.4th at 1296 (affirming demurrer on abstention grounds as to all claims, including false advertising).  A court cannot find that a representation about quality of care is false unless it first ascertains what quality of care was required and what quality of care was rendered – the province of the regulators.  In addition, the principle of abstention is no less relevant when a suit for damages for alleged noncompliance with a pervasive regulatory scheme is pursued, using the CLRA as a vehicle.  A court's determination of liability and award of damages (including possibly punitive damages, which are available under the CLRA) for the same purported violation of the same regulations intrudes into the regulatory arena just as much.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT EVERGREEN AT LAKEPORT. L.L.C.'S MOTION TO DISMISS (CASE NO. C 10-05839 CW)

1    Appeal rebuked that argument, holding:

2        *The question of what type or level of regulation is*
         *adequate or appropriate is uniquely a question for*
3        *executive or legislative policy choice. . .*[Plaintiff's]
         complaints are therefore properly directed either to the
4        [Regulatory Agency] or to the Legislature.

5    *Id.* at 138 (emphasis added).  The *Crusader* court also identified a writ of mandate

6    as the appropriate vehicle "to direct the Department to perform a duty mandated by

7    the Legislature . . . ."  *Id.*  Because "[i]nstitutional systems are [] in place to deal

8    with the problem [Plaintiff] raises . . . [t]here is no need or justification for the

9    courts to interfere with the Legislature's efforts to mold and implement public

10   policy in this area . . . ."  *Id.*

11         Here too, there simply is no basis for judicial second-guessing of the

12   CDPH's enforcement of a regulatory law.  Institutional systems are already in place

13   to assess, and if necessary correct, the alleged problems Plaintiff raises.  And as

14   *Alvarado* recognized, those institutional systems are better equipped to address the

15   exact problems Plaintiff raises in this case.  If Plaintiff really thinks otherwise, she

16   should take it up with the CDPH or the Legislature or seek a writ of mandate.[10]  She

17   cannot entangle the Court in the regulatory "thicket" of nursing home staffing

18   regulation.

19       **B.    In the Alternative, This Case Should Be Stayed Because CDPH
                 Has Primary Jurisdiction Over Setting Staffing Requirements and**
20               **Policing Violations.**

21         In the alternative, this Court should exercise its discretion to stay this

22   lawsuit under the doctrine of primary jurisdiction, for the purpose of allowing the

23   CDPH, the expert agency charged with regulating SNFs and determining their

24   compliance with federal and state nurse staffing requirements, to decide whether

25   Defendants are meeting those requirements – and if not, what enforcement

26   remedies should be imposed.  "[T]he primary jurisdiction doctrine advances two

27

28   [10]   *See* n. 3 *supra.*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFENDANT EVERGREEN AT
LAKEPORT, L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1    related policies: it enhances court decisionmaking and efficiency by allowing courts

2    to take advantage of administrative expertise, and it helps assure uniform

3    application of regulatory laws." *Farmers Insurance Exch. v. Superior Court*, 2

4    Cal.4th 377, 390-91 (1992); *see also Jonathan Neil & Associates, Inc. v. Jones*, 33

5    Cal.4th 917, 934 (2005) (overturning plaintiff's jury award in tort action and

6    holding that Department of Insurance "interpretation and application of these

7    regulations in the first instance [wa]s necessary to secure regulatory uniformity

8    informed by its expertise and extensive experience . . .") Here, as in *Farmers* and

9    *Jonathan Neil*, "'considerations of judicial economy, and concerns for uniformity in

10   application of the complex . . . regulations . . . , strongly militate in favor of a stay

11   to await action by [the administrative agency] . . . .'" *Jonathan Neil,* 33 Cal.4th at

12   934 (quoting *Farmers*, 2 Cal.4th at 396).

13          If this action is not dismissed outright, then the Court should stay this

14   action until such time as the CDPH can apply its expertise, audit and find that

15   Defendants have or have not complied with Section 1276.5.  If the CDPH imposes

16   penalties for violations of Section 1276.5, judicial review should await completion

17   of any administrative appeals of those penalties.

18   **C.    Plaintiff's First Cause of Action Under Section 1430(b) Also Fails
             Because Section 1276.5 Does Not Create an Individual Patient
19           Right.**

20          Section 1276.5 also cannot serve as the predicate for Plaintiff's Section

21   1430(b) claim, and the Court should strike any allegations concerning Section

22   1276.5 that fuel that claim.[11]  Section 1430(b) authorizes a SNF resident to bring a

23   claim against a facility in which she resided, if the facility "violated *any rights of*

24   *the resident or patient* as set forth in the Patients Bill of Rights . . . or any other

25   right provided for by federal or state law or regulation."  Section 1430(b) (emphasis

26   added).  The 3.2 NHPPD requirement of Section 1276.5 is not set forth in the

27   _____

28   [11]  The Court can properly strike separate defective legal theories under a single
     labeled "count" at the pleading stage.  *See* n. 4 *supra*.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1   Patients' Bill of Rights, and it is not an individual resident's "right" under any other

2   law.[12]

3       The question of whether a statute creates an individual right focuses on

4   the text and structure of the statute, agency regulations, and expressions in

5   legislative history. *See Gonzaga v. Doe*, 536 U.S. 273 (2002) (applying this

6   analysis to determine whether statute creates individual right actionable under 42

7   U.S.C. § 1983); *Blessing v. Freestone*, 520 U.S. 329 (1997); *Lu v. Hawaiian*

8   *Gardens*, 50 Cal.4th 592 (2010) (applying similar analysis to determine whether

9   statute confers individual right under implied right of action doctrine); *Moradi-*

10  *Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287, 295 (1988).[13]  Under this

11  analytical framework, for a statute to create an individual right, it must contain

12  explicit rights-creating language phrased in terms of the person benefited.

13  *Gonzaga*, 536 U.S. at 280, 284 (no right unless legislature "speaks with a clear

14  voice and manifests an unambiguous intent to confer individual rights"); *Touche*

15  *Ross Co. v. Redington*, 442 U.S. 560, 576 (1979) (statute does not create a right

16  where "by its terms [it] grants no private rights to any identifiable class");

17  *Hawaiian Gardens*, 50 Cal.4th at 597 (statute must contain "clear, understandable,

18  unmistakable terms" indicating an intent to create an individual right).

19      Neither Section 1276.5 nor its legislative history indicates such intent.

20  On the contrary, there are two aspects of Section 1276.5 that confirm that no private

21  right was created: (1) its aggregate focus on requirements applicable to a SNF, and

22  (2) its regulatory enforcement. *First*, where a statute has an "aggregate" focus – as

23  opposed to a focus on whether the "needs of any particular person have been

---

24  [12] Section 1430(b) is an enabling statute that permits a private right of action for
    violations of other individual rights-conferring statutes.

25  [13] The same analysis applicable to 42 U.S.C. § 1983 equally applies to determine
    whether a statute creates a right actionable under Section 1430(b). *See Benn v.*
26  *County of Los Angeles*, 150 Cal.App.4th 478, 498-499 (2007).  *Cf. Cal. Ass'n of*
    *Health Facilities*, 16 Cal.4th at 302 ("a private suit for a violation of the patient's
27  Bill of Rights bears more than a passing resemblance to a private suit for violation
    of civil rights under the federal Civil Rights Act of 1871 (42 U.S.C. § 1983). . . ").

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

16

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1   satisfied" – it cannot "give rise to individual rights." *Blessing*, 520 U.S. at 343-344;

2   *see also Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) ("Statutes that focus on

3   the person regulated rather than the individual protected create no implication of an

4   intent to confer rights on a particular class of persons.").

5           *Second*, statutory provisions that prescribe administrative enforcement

6   mechanisms, such as Section 1276.5, strongly evidence that the Legislature did *not*

7   intend to create an individual right. *Gonzaga*, 536 U.S. at 289 (conclusion that

8   statute did not create individual right buttressed by administrative enforcement

9   provisions); *Hawaiian Gardens*, 50 Cal.4th at 598 (statutory language provides for

10   administrative and not individual enforcement).

11           *Gonzaga* illustrates all of these principles.  There, the court considered

12   whether provisions of the Family Educational Rights and Privacy Act ("FERPA")

13   created an individual right.  536 U.S. at 276.  The relevant provision authorized the

14   Secretary of Education to establish an enforcement scheme and withhold federal

15   funds from educational institutions that had a policy or practice of releasing student

16   records without written consent.  *Id.* at 278-279.  A student whose records were

17   released without authorization brought suit under 42 U.S.C. § 1983.  *Id.* at 279.

18           To determine whether the claim was actionable under Section 1983,

19   the court first had to determine whether FERPA created an individual right.  *Id.* at

20   285-286.  Applying the above principles, the court concluded that the statute did

21   not create an individual right, because FERPA "contain[s] no rights-creating

22   language," has "an aggregate, not an individual focus," and was directed principally

23   to the regulator.  *Id.* at 290.

24           The same analysis compels the conclusion that the Legislature did not

25   intend Section 1276.5 to create an individual right.  *First*, Section 1276.5 contains

26   no individual rights-creating language – let alone the "clear, understandable [and]

27   unmistakable" language that is required.  *Hawaiian Gardens*, 50 Cal.4th at 597.

28   Section 1276.5 speaks only to the CDPH, directing it to promulgate regulations

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

17

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1    establishing *facility-wide* staffing standards.  This focus is two steps removed from

2    the "right" of any individual patient.  *Gonzaga*, 536 U.S. at 287.  In contrast, the

3    Legislature and CDPH know how to include rights-creating language when they

4    intend to do so, including rights relating to staffing having nothing to do with

5    Section 1276.5.  *See, e.g.,* Section 1599.1 (a) ("Those policies and procedures shall

6    ensure that each patient admitted to the facility has the following rights and is

7    notified of the following facility obligations, in addition to those specified by

8    regulation: (a) The facility shall employ an adequate number of qualified personnel

9    to carry out all of the functions of the facility."); Cal. Code Regs., tit. 22, § 72527

10   (24) ("Patients have the rights enumerated in this section . . ., including "[o]ther

11   rights as specified in Health and Safety Code, Section 1599.1.")  Tellingly, the

12   word "right" nowhere appears in Section 1276.5 and the statute is now 11 years old.

13   Also, Section 1599.1, which was originally enacted in 1979, was amended after

14   Section 1276.5, thus giving the Legislature ample opportunity to identify the

15   staffing provisions of Section 1276.5 as an individual patient right.  If, as Plaintiff

16   appears to claim, her reference to "adequate number of qualified personnel" in

17   Section 1599.1 can be conflated with facility-wide aggregate nurse staffing under

18   Section 1276.5, a law that appears amid a series of laws compelling agency

19   regulation, then why is there no mention of nursing in 1599.1 or any law or

20   amendment since 1276.5 became law?  *See Fairbanks v. Superior Court*, 46 Cal.4th

21   56, 62 (2009) ("We presume the Legislature was aware of [existing similar law] . . .

22   and [t]he use of differing language in otherwise parallel provisions supports an

23   inference that a difference in meaning was intended.").  Similarly, the Legislature

24   declined to add a resident's right under Section 1276.5 when it last amended

25   Section 1430(b) in 2004, four years after Section 1276.5 became law.  The

26   Legislature also could have overruled *Alvarado* at any time since that published

27   appellate decision became law on August 1, 2007.  That the Legislature failed to

28   include any rights-creating language in Section 1276.5 itself, or within the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

18

DEFENDANT EVERGREEN AT
LAKEPORT, L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1   surrounding statutory framework, confirms that it did not intend to create an

2   individual right.

3        *Second*, Section 1276.5 has an "aggregate" and not individual focus.

4   As recently as January 2011, the CDPH itself has explained that Section 1276.5

5   "does not assure that any given patient receives 3.2 hours of nursing care."

6   (January 31, 2011 All Facilities Letter, Ex. 5 to RJN.)  Indeed, Section 1276.5

7   exclusively focuses on the facilities regulated, and not whether "the needs of any

8   particular person have been satisfied."  *See Blessing*, 520 U.S. at 343-344.  No

9   individual resident can be injured by a violation of Section 1276.5 because the

10  statute imposes an aggregate, not an individual, requirement of 3.2 hours of nursing

11  care.  In contrast, Section 1430(b) is a resident specific statute that only authorizes

12  enforcement of resident-specific rights.[14]  Plaintiff's addition of class allegations

13  does not magically transform the aggregate rights addressed in Section 1276.5 into

14  individual rights actionable under Section 1430(b).  *See Madrid v. Perot Systems*

15  *Corp.*, 130 Cal.App.4th 440, 461 (2005) (holding that class allegations do not

16  expand a party's substantive rights or allow for recovery where the plaintiff

17  otherwise does not have a claim).  Because Section 1276.5 does not address the

18  needs of any individual patients, it does not give rise to individual rights, and is not

19  actionable through Section 1430(b).

20       *Third*, Section 1276.5 itself only contemplates regulatory enforcement,

21  not individual enforcement.  Section 1276.5 appears in Division 2 of the Health and

22  Safety Code, entitled "Licensing Provisions," in Chapter 2, Article 3, entitled

23  _____

24  [14]  Further to this point, Plaintiff neglects to mention that while Section 1430(a) plainly contemplates class-wide relief with language that is quite similar to the UCL, Bus & Prof Code Section 17204, no such language appears in Section

25  1430(b), the enactment of which followed Section 1430(a) by nine years.  *See* RJN Ex. 2 (Assembly Bill 1107); Ex. 3 (Senate Bill 1930).  Rather, the history and

26  purpose of Section 1430(b) was, as its sponsor said, to "provide a specific mechanism for an individual resident to enforce his or her rights through a private

27  right of action".  RJN Ex. 4 at LIS - 3.  Nowhere is class relief mentioned, and the omission is not accidental, given the stated purpose of 1430(b) to add a limited

28  right of action for violations of resident-specific rights.

1    "Regulations."  The first section of that article, Section 1275(a), begins, "The state

2    department [i.e., CDPH] shall adopt, amend, or repeal . . . any reasonable rules and

3    regulations as may be necessary or proper to carry out the purposes and intent of

4    this chapter and to enable the state department to exercise the powers and perform

5    the duties conferred upon it by this chapter . . . ."  As *Alvarado* explains, "[w]ith

6    limited exceptions, each statute contained in the article directs the [Department] (or

7    another state agency) to prioritize existing regulations, adopt new regulations or

8    standards, enforce regulations, or ensure that certain health care providers operate

9    in compliance with appropriate license requirements and agency rules and

10   regulations." *Alvarado*, 153 Cal.App.4th at p. 1304.  For this and other reasons

11   "Section 1276.5, subdivision (a) is a regulatory statute, which the Legislature

12   intended the DHS to enforce." *Alvarado*, 153 Cal.App.4th at 1303-04.  Because a

13   violation of Section 1276.5 does not equate to a violation of a patient's rights, it

14   cannot serve as the predicate of a 1430(b) claim, and any reliance on Section

15   1276.5 as a basis for the claim should be stricken.

16         **D.    The CLRA Does Not Apply to Plaintiff's Claims.**

17              To support a CLRA claim, an alleged transaction must involve "the sale

18   or lease of goods or services to a consumer."  Civ. Code § 1770.  Plaintiff's

19   allegations do not state a CLRA claim.[15]

20              **1.    The allegedly false representations are not actionable as a**
                        **matter of law.**
21

22              Plaintiff's CLRA claim fails because the representations alleged in the

23   complaint – non-specific statements in "promotional materials, admission

24   agreements, submissions made to DHS and other materials disseminated to the

25   public in connection with defendants' services" (Comp., ¶ 75) – do not constitute

26

27   ───────────────
     [15]   Moreover, as noted above, *supra* note 8, the CLRA claim, like the other claims
28   in the complaint, is subject to the rule established in *Alvarado*, and dismissal of the
     claim is also warranted on that ground.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1   the type of specific and concrete factual assertions that may be actionable under the

2   CLRA. *See Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th

3   1351, 1360-61 (2003). These alleged statements do not involve any factual

4   assertion that a particular legal "standard" of care is met.[16]

5         There is no allegation or explanation as to how any statement was false

6   or any service not as represented. These purported representations constitute the

7   sort of generalized statements that cannot support a viable CLRA claim as a matter

8   of law. *See Consumer Advocates*, 113 Cal.App.4th at 1360-61 (holding that the

9   defendant satellite television company's representations that its system provided

10  "crystal clear digital" video and "CD quality" audio were not actionable false

11  advertising under the CLRA because they were "not factual representations that a

12  given standard was met"). In addition, Plaintiff does not allege that she ever even

13  read the materials or agreements she alleges.  Moreover, contrary to Plaintiff's

14  general allegation that Defendants "failed to disclose . . . that their Facilities do not

15  and will not provide sufficient nurse staffing to comply with state law" (Comp., ¶

16  76), every statement of deficiency issued against any SNF is readily available to the

17  public on-line; must be conspicuously posted at the facility itself; and is available

18  through the CDPH Licensing Department. Health & Saf. Code §§ 1422.6, 1422.7.

19  There is no allegation that Defendants violated these disclosure obligations.

20         2.    **The CLRA Should Not Extend to the Provision of
              Institutional Health Care.**
21

22         The provision of institutional health care is not properly a "good" or

23  "service" subject to the CLRA. Civ. Code § 1770(a). The CLRA defines "goods"

24  as "tangible chattels bought or leased for use primarily for personal, family, or

25  household purposes . . ." and defines "services" as "work, labor, and services for

26  other than a commercial or business use, including services furnished in connection

27  _____

[16] (Comp., ¶ 75 (alleging that Defendants represented that "they provide sufficient
28  and lawful staffing to meet the needs of their residents").

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

21

DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1    with the sale or repair of goods." Civ. Code § 1761(a), (b).  Institutional health care

2    is neither.  While no case has directly addressed the question, courts construe the

3    CLRA according to its terms and in accordance with its express language.

4            Recent cases have examined the nature of the transaction at issue, the

5    statutory language, and the legislative history, and concluded that the CLRA does

6    not apply to a host of activities, including the provision of life insurance coverage,

7    *see Fairbanks*, 46 Cal.4th at 61-62; mortgages and other loans, *see Consumer*

8    *Solutions REO, L.L.C. v. Hillery*, 658 F.Supp.2d 1002, 1015-17 (N.D. Cal. 2009);

9    credit cards, *see Berry v. American Express Publishing, Inc.*, 147 Cal.App.4th 224,

10   233 (2007); certain professional services in connection with real estate transactions,

11   *see McKell v. Washington Mutual. Inc.*, 142 Cal.App.4th 1457, 1465 (2006);

12   computer software, *see Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010

13   U.S. Dist. LEXIS 106600, at *56-*57 (N.D. Cal. Oct. 5, 2010); or securities, *see*

14   *Holland v. TD Ameritrade, Inc.*, No. CIV S-10-2110-GEB-CMK, 2011 U.S. Dist.

15   LEXIS 395, at *19-*20 (Jan. 4, 2011).  Like these activities, institutional health

16   care does not fit neatly into the definition of a "good" or "service."  Moreover, one

17   of the key bases for the Supreme Court's exclusion of life insurance from the

18   coverage of the CLRA was that the legislative history of the CLRA indicated that

19   the model act on which the California statute was based included insurance within

20   the definition of services, but that insurance was omitted from the California

21   definition.  *See Fairbanks*, 46 Cal. 4th at 61.  Similarly, the model act included

22   within the definition "privileges with respect to . . . hospital accommodations," but

23   that provision likewise was omitted by the Legislature from the California

24   enactment.  *See id.*  This weighs in favor of a finding that the provision of

25   institutional health care is not a consumer good or service under the CLRA.

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

22

DEFENDANT EVERGREEN AT
LAKEPORT, L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)

1

## IV.   CONCLUSION

2          For the reasons stated above, Plaintiff's Complaint, and all of the

3 claims included therein, should be dismissed with prejudice.

4

5 Dated:  February 18, 2011          Respectfully submitted.

6                                    MANATT, PHELPS & PHILLIPS

7

8                                    By:  /s/ Barry S. Landsberg
                                         Barry S. Landsberg
9                                        *Attorneys for Defendant*
                                         EVERGREEN AT LAKEPORT, L.L.C.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

23          DEFENDANT EVERGREEN AT
LAKEPORT. L.L.C.'S MOTION TO DISMISS
(CASE NO. C 10-05839 CW)