1  MANATT, PHELPS & PHILLIPS, LLP
BARRY S. LANDSBERG (Bar No. CA 117284)
2  E-mail:  blandsberg@manatt.com
BRAD W. SEILING (Bar No. CA 143515)
3  E-mail:  bseiling@manatt.com
ANDREW H. STRUVE (Bar No. CA 200803)
4  E-mail:  astruve@manatt.com
JESSICA J. SLUSSER (Bar No. CA 217307)
5  E-mail:  jslusser@manatt.com
JUSTIN C. JOHNSON (Bar No. CA 252175)
6  E-mail:  jjohnson@manatt.com
11355 West Olympic Boulevard
7  Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
8  Facsimile:  (310) 312-4224

9  DAVID L. SHAPIRO (*Pro Hac Vice*)
E-mail:  dshapiro@law.harvard.edu
10  1563 Mass. Ave.
Cambridge, MA  02138
11  Telephone:  (617) 495-4618
Facsimile:   (617) 495-1950

12
Attorneys for Defendants
13  EVERGREEN AT LAKEPORT, L.L.C.

14                  UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16

| 17 | Phyllis Wehlage, on her behalf and on behalf of others similarly situated, | No.  C 10-05839 CW |
|---|---|---|
| 18 | | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| 19 | Plaintiff, | **DEFENDANT EVERGREEN AT** |
| | vs. | **LAKEPORT, L.L.C.'S MOTION TO** |
| 20 | | **DISMISS PURSUANT TO FED. R. CIV. P.** |
| | EmpRes Healthcare, Inc.; EHC | **12(b)(6)** |
| 21 | Management LLC; EHC Financial Services LLC; Evergreen California Healthcare | Hearing Date: April 7, 2011 |
| 22 | LLC; Evergreen at Arvin LLC; Evergreen at Bakersfield LLC; Evergreen at Lakeport | Time:          2 p.m. |
| 23 | LLC; Evergreen at Heartwood LLC; Evergreen at Springs Road LLC; Evergreen | Judge:         Hon. Claudia Wilken |
| 24 | at Tracy LLC; Evergreen at Oroville LLC; Evergreen at Petaluma LLC; Evergreen at | |
| 25 | Gridley (SNF) LLC; and DOES 1 THROUGH 100, | |
| 26 | Defendants. | |
| 27 | | |

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES
(CASE NO. C 10-05839 CW)

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    ARGUMENT .................................................................................................... 2

     A.    Abstention is Fully Appropriate and Warranted ........................................ 2

          1.    Plaintiff Draws a False Distinction Between "Legal" and
              "Equitable" Claims ..................................................................... 2

          2.    Calculating Compliance With Section 1276.5 Hardly Is
              "Straightforward," and Injunctive Relief Is Burdensome ......................... 4

          3.    Section 1430(b)'s Existence Does Not Make Abstention Improper ........... 7

     B.    Plaintiff Has Not Stated a Valid Section 1430(b) Claim ........................................ 9

     C.    In the Alternative, This Suit Should Be Stayed in Deference to CDPH's
          Primary Jurisdiction .......................................................................... 11

     D.    Plaintiff's Consumer Legal Remedies Act Claim Fails ......................................... 11

III.    CONCLUSION ............................................................................................. 13

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Alvarado v. Selma Convalescent Hospital,*
153 Cal.App.4th 1292 (2007) ...................................................................................... passim

5

*Ashcroft v. Iqbal,*

6

556 U.S. __, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................................................ 12

7

*Baltazar v. Apple, Inc.,*
2011 U.S. Dist LEXIS 13187 (N.D. Cal. 2011)........................................................... 13

8

*Baum v. Northern Dutchess Hosp.,*
__ F. Supp.2d __, 2011 WL 240196 (N.D.N.Y. 2011)............................................... 10

9

*Blessing v. Freestone,*

10

520 U.S. 329 (1997)...................................................................................................... 9

11

*Bly-Magee v. California,*
236 F.3d 1014 (9th Cir. 2001)....................................................................................... 12

12

*Burford v Sun Oil Co.,*

13

319 U.S. 315 (1943) ...................................................................................................... 4

14

*California Ass'n of Health Facilities v. Dept of Health Services,*
16 Cal.4th 284 (1997) ................................................................................................. 4, 9

15

*Comm. Nat'l. Bank v. Fidelity and Deposition Co.,*
563 F.2d 1319 (9th Cir. 1977)........................................................................................ 5

16

17

*Consumer Advocates v. Echostar Satellite Corp.,*
113 Cal.App.4th 1351 (2003) ....................................................................................... 12

18

*Cooper v. Pickett,*
137 F.3d 616 (9th Cir. 1997)......................................................................................... 12

19

*Crusader Ins. Co. v Scottsdale Ins. Co.,*

20

54 Cal.App.4th 121 (1997) .................................................................................. 1, 3, 10

21

*Ctr. for Biological Diversity, Inc. v. FPL Grp., Inc.,*
166 Cal.App.4th 1349 (2008) ........................................................................................ 3

22

*Desert Healthcare District v. PacifiCare, FHP, Inc.,*
94 Cal.App.4th 781 (2001) ............................................................................................ 3

23

24

*Duncan v. Johnson-Mathers Health Care, Inc.,*
2010 WL 3000718 (E.D. KY. 2010)............................................................................ 10

25

*Gonzaga v. Doe,*
536 U.S. 273 (2002).................................................................................................. 9, 10

26

*Grammer v. John J. Kane Reg. Ctrs.,*

27

570 F.3d 520 (3rd Cir. 2009) ....................................................................................... 10

28

*In re Actimmune Mktg. Litig.,*
2009 U.S. Dist. LEXIS 103408 (N.D. Cal. 2009)....................................................... 13

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)..................................................................................... 12

*Kizer v County of San Mateo*,
    53 Cal.3d 139 (1990) ............................................................................................... 9

*Lu v. Hawaiian Gardens*,
    50 Cal.4th 592 (2010) ........................................................................................... 10

*NL Industries, Inc. v. Kaplan*,
    792 F.2d 896 (9th Cir. 1986)................................................................................. 12

*Quackenbush v Allstate Ins. Co.*,
    517 U.S. 706 (1996) ................................................................................................ 4

*Reudy v Clear Channel Outdoor, Inc.*,
    2010 U.S. Dist. LEXIS 130925 (N.D. Cal. Nov. 2010), *appeal pending*, No. 09-15986
    (9th Cir.).............................................................................................................. 2, 4

*Samura v. Kaiser Foundation Health Plan, Inc.*,
    17 Cal.App.4th 1284 (1993) ................................................................................... 4

*Schmeir v. Superior Court*,
    78 Cal.App.4th 703 (2000) ..................................................................................... 6

*Shamsian v. Department of Conservation*,
    136 Cal.App.4th 621 (2006) ................................................................................ 2, 4

*Six Companies of Cal. v. Joint Highways Dist. No. 13*,
    311 U.S. 180 (1940)................................................................................................ 5

*Twombly v. _____*,
    550 U.S. at 570...................................................................................................... 12

*Ziller Electronics Lab v. Superior Court (Grosh Scenic Studios)*,
    206 Cal.App.3d 1222 (1988)................................................................................... 6

**STATUTES**

Cal. Code of Regulations Title 22.................................................................................... 8, 9

Cal. Code of Regulations § 72527 *et seq.* ............................................................................ 9

Cal. Stats. 2004, Chapter 270............................................................................................... 8

California Rules of Court, Rule 8.1105 ................................................................................. 6

Civ. Code § 1761(a), (b) ..................................................................................................... 13

Federal Rules of Civil Procedure Rule 9(b)................................................................. 12, 13

Health & Safety Code § 1276.5 ................................................................................... passim

Health & Safety Code § 1276.5(a).............................................................................. 7, 8, 9

Health & Safety Code § 1430 ......................................................................................... 4, 9

**TABLE OF AUTHORITIES**
(Continued)

**Page**

Health & Safety Code § 1430(b)......................................................................................... passim

Health & Safety Code § 1599.1 .................................................................................................. 9

Health & Safety Code § 1599.1(a)............................................................................................... 8

Welf. & Inst. Code § § 14126.02 (f) and Ex. 6 ......................................................................... 11

**OTHER AUTHORITIES**

http://www.courtinfo.ca.gov/reference/3_stats.htm ....................................................................... 6

http://www.oshpd.ca.gov/FDD/About_Us/History/index.html#res................................................. 9

Stewart & Sunstein, *Public Programs & Private Rights*, 95 HARV. L. REV. 1193, 1196,
    1206-07 (April 1982) ............................................................................................................. 10

1    **I.      INTRODUCTION**

2        Plaintiff's opposition confirms that she wants to pursue private attorney general claims for

3    alleged violations of a purely regulatory law.  The California Court of Appeal held that this law is

4    a matter only for agency enforcement.  *Alvarado v. Selma Convalescent Hospital*, 153

5    Cal.App.4th 1292 (2007), rejected functionally identical claims and putative class claims, by

6    other nursing home residents, under the *broadest* possible consumer-based class claim known to

7    California jurisprudence, the Unfair Competition Law.  *Alvarado* declared that the subject law –

8    Health & Safety Code Section 1276.5[1] – is "regulatory," and that "the Legislature intended [the

9    California Department of Public Health a.k.a. the "CDPH"] to enforce" it.  *Id* at 1304.  *Alvarado*

10   could not have been more sweeping about the non-justiciable nature of Section 1276.5, a law that

11   has not since been amended.  Under *Alvarado,* judicial regulation and enforcement, with the same

12   class-wide injunctive relief, damages and restitution that Plaintiff seeks here, is not proper

13   because it would embroil the Court in a scheme of complex administrative regulations, effectively

14   displacing the executive agency tasked with enforcing the law.  *Id.* at 1305-1306.  Rather, the

15   Court should abstain and dismiss the action.

16       Plaintiff tries to avoid *stare decisis* with a statutory shell game, weaving in two other

17   statutes that are not regulatory but are resident-specific, and that have no connection to the

18   average or facility-wide nurse-hours-per-patient-day law, Section 1276.5.  It is merely artful

19   pleading.  Plaintiff concedes her putative claims are in the *aggregate* only.  The Complaint pleads

20   violations of the *average* facility nurse staffing law, but expressly forsakes any claim for

21   "resident-specific harm."[2]  There is plenty of case law that compels the airing of any such

22   complaints with the Legislature or in a mandamus action against the agency,[3] but there is no case,

---

[1] California Health & Safety Code Section 1276.5 ("Section 1276.5") sets a threshold aggregate standard of 3.2 nurse-hours-per-patient-day ("NHPPD") at California skilled nursing facilities (aka "SNFs").  All statutory references are to the Health & Safety Code, unless indicated otherwise.

[2] Compl., ¶¶ 3, 4, 5, 32, 33, 34, 36, 39, 43, 58, 62 (alleging violations of the  "3.2" law *aka* "Section 1276.5"); *id*. at ¶ 47 (expressly disclaiming personal injuries or any other sort of "resident-specific harm.").   Indeed, two of Plaintiff's irrelevant and objectionable exhibits refer to 3.2 NHPPD and the agency's supposed inability to enforce the law.  *See* concurrently filed Objections to Plaintiff's Request for Judicial Notice, Exhibits 1 and 4.

[3] This includes *Alvarado*, (*see* 153 Cal.App.4th at 1306, n.5) and *Crusader  Ins. Co. v Scottsdale*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES
(CASE NO. C 10-05839 CW)

1  in the 29 years since Section 1430(b) was enacted, that remotely endorses the use of Section

2  1430(b) to enforce an aggregate law of any sort.

3       There simply is no resident right to an *average* number of facility nurse staffing hours

4  under Section 1276.5.  Had the California Legislature intended otherwise, it would have said so

5  in Section 1276.5 or in one of the other two laws Plaintiff claims support this action.  It did not.

6  Indeed, the expert regulators at the CDPH agree that no law requires that "any given patient

7  receives 3.2 hours of nursing care."  (*See* Exhibit 5 to Defts.' Request for Judicial Notice, at pg.

8  1.)  If this case really was about the "rights of a resident" under Section 1430(b), then Plaintiff

9  would not have alleged Section 1276.5 violations, as she does in each claim, or at least she would

10  have embraced Defendants' alternative motion to strike all references to Section 1276.5.

11       Only the Plaintiff is out of step – she wants the Court to trammel *Alvarado* and the CDPH

12  with unauthorized parallel enforcement litigation.  Plaintiff is, in fact, trying to act as a private

13  attorney general, whose claims would be no different had she resided for just *one day* in any one

14  of the Defendants' affiliated facilities.[4]  No law allows such a patent interference with executive

15  agency enforcement of a complex regulatory law, and *Alvarado* instructs otherwise.  The Court

16  should abstain and the action should be dismissed.  *See also Reudy v Clear Channel Outdoor,*

17  *Inc.*, 2010 U.S. Dist. LEXIS 130925 (N.D. Cal. Nov. 2010), *appeal pending*, No. 09-15986 (9th

18  Cir.), citing *Shamsian v. Department of Conservation*, 136 Cal.App.4th 621 (2006).

19  **II.    ARGUMENT**

20       **A.    Abstention is Fully Appropriate and Warranted.**

21            1.    **Plaintiff Draws a False Distinction Between "Legal" and "Equitable"**
               **Claims.**
22
       Plaintiff contends that "the equitable abstention doctrine, by definition, does not apply to
23
legal claims."  (Opp. at 4:13-20.)  This is wrong, even aside from the fact that Plaintiff's
24
Complaint – "For **Injunctive** Relief and Damages" – seeks injunctive relief and/or restitution for
25
each of the three claims she pleads. (Emphasis added).  *See* Complaint at ¶¶ 53, 54(c), 59, 73, 87;
26

27  *Ins. Co.*, 54 Cal.App.4th 121, 138 (1997).  *See infra* at .

28  [4] *See* concurrently filed Motion to Dismiss and Reply by all defendants besides Evergreen at
    Lakeport.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2       DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
        REPLY MEMORANDUM OF POINTS AND AUTHORITIES
        (CASE NO. C 10-05839 CW)

1   Prayer at ¶¶ 2, 3.  The abstention cases also foreclose *common law damage claims* under

2   regulatory laws and Plaintiff cites no case holding otherwise.

3   Abstention is no less necessary and proper in suits for damages for alleged noncompliance

4   with a pervasive regulatory scheme.  A court's determination of liability and award of damages

5   (including possibly punitive damages, which are available under the CLRA) for the same

6   purported violation of the same regulations intrude into the CDPH's regulatory arena just as much

7   as a UCL claim.  The court still must craft and then apply its own analysis as to whether a SNF is

8   complying with regulations and impose penalties if the court determines it is not doing so.  This

9   has the identical potential for trial courts across the state to reach differing results and impose, or

10   not impose, penalties on different SNFs for the identical conduct.  SNFs would be subject to

11   different levels and severity of regulation depending on whether they were sued, and, if so, in

12   which court.

13   The *Alvarado* plaintiff himself sought both monetary and injunctive relief, and the court's

14   abstention order applied to all claims.  *Alvarado*, 153 Cal.App.4th at 1295; *see also Desert*

15   *Healthcare District v. PacifiCare, FHP, Inc.*, 94 Cal.App.4th 781, 796 (2001) (affirming

16   dismissal of action against HMO because "[i]n order to fashion an appropriate remedy . . ., be it

17   injunctive or restitutionary, the trial court necessarily would have to determine the appropriate

18   levels of capitation and oversight").

19   The *Crusader* court held clearly that writ relief was the appropriate vehicle for complaints

20   about regulatory enforcement, even in a case where the plaintiff expressly sought damages.

21   *Crusader Ins. Co. v. Scottsdale Ins. Co*., 54 Cal.App.4th at 137-138.  Abstention analysis requires

22   courts to focus on what is required *of them* in order to adjudicate the dispute, not what remedies

23   the plaintiffs seek.  *See Ctr. for Biological Diversity, Inc. v. FPL Grp., Inc.*, 166 Cal.App.4th

24   1349, 1372 (2008).  The regulatory nature of the action, not relief sought, dictates whether the

25   court should abstain.

26   Judicial intrusion and implied rights of action into heavily regulated areas would create an

27   intolerable double and inconsistent regulatory scheme that inevitably would supplant the agency's

28   expertise.  For instance, any adjudication in cases like this one could clash with the actions and

3                   DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES
(CASE NO. C 10-05839 CW)

1    interpretation of the CDPH as expressed in its recent "All Facilities Letters," which authorize

2    massive civil penalties and also appeal rights for facilities which are assessed penalties in "any

3    amount" for violating Section 1276.5.  (*See* Exhibit 6 to Defendants' RJN, at pg. 2.)  *Alvarado*

4    forewarned of just such inconsistent adjudication of claims under Section 1276.5.  *Alvarado*, 153

5    Cal.App.4th at 1304-06.  The nursing home statutory enforcement scheme, including Section

6    1430, is supposed to be remedial, not penal.  *See California Ass'n of Health Facilities v. Dept of*

7    *Health Services*, 16 Cal.4th 284, 294-295 (1997) (the "primary purpose" of the nursing home

8    enforcement law, including Section 1430 *et seq*., is "remedial" and not "punitive").

9            Plaintiff advances no relevant contrary authority.  *Quackenbush v Allstate Ins. Co*., 517

10   U.S. 706 (1996) concerns the federal "*Burford*" abstention doctrine.  *Id.* at 709, citing *Burford v*

11   *Sun Oil Co*., 319 U.S. 315 (1943).  That is not the basis for this motion or any case cited within it,

12   including the Northern District's decision in *Reudy v Clear Channel Outdoor*.  Critical to the

13   *Quackenbush*  decision, the plaintiff's claims were "solely legal" (for "contract and tort

14   damages"); the Court referred to the case as "nothing more than a run-of-the-mill contract

15   dispute."  *Id*. at 709, 729.  Here, Plaintiff's Complaint is "For Injunctive Relief and Damages"

16   and she seeks injunctive relief and/or restitution on all three of her claims.  (*See* Complaint at

17   ¶¶ 53, 54(c), 59, 73, 87; Prayer at ¶¶ 2, 3.)  As *Alvarado* and the other abstention cases we cite

18   show, this case hardly is run-of-the-mill.

19                    2.       **Calculating Compliance With Section 1276.5 Hardly Is
                               "Straightforward," and Injunctive Relief Is Burdensome.**
20

21           Plaintiff next argues that abstention is unwarranted because her claims "do not involve ...

22   complex economic or regulatory issues," one of the categories of cases from which courts

23   traditionally abstain.  (Opp. at 5:2-8.)  However, this is but one of the common bases for

24   abstention.  As *Alvarado* expressly states, "[j]udicial abstention [also] is appropriate when

25   granting the requested relief would require a trial court to assume the functions of an

26   administrative agency, or to interfere with the functions of an administrative agency."  *Alvarado*,

27   153 Cal.App.4th at 1298 (citing *Shamsian v. Department of Conservation*, 136 Cal.App.4th at

28   642 and *Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal.App.4th 1284, 1301-02 (1993)).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4          DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
           REPLY MEMORANDUM OF POINTS AND AUTHORITIES
           (CASE NO. C 10-05839 CW)

1    This latter justification for abstention was one of the bases upon which the *Alvarado* courts

2    abstained:  "[a]djudicating this class action controversy would require the trial court to assume

3    general regulatory powers over the healthcare industry through the guise of enforcing the UCL, a

4    task for which the courts are not well-equipped."  *Id.* at 1303-04.

5         *Alvarado* further explained that even *were* trial courts equipped to make a determination

6    under Section 1276.5, "[the CDPH] is better equipped to determine compliance with the statute"

7    because of the multitude of administrative determinations necessary for a trial court to enforce

8    section 1276.5.  *Id.* at 1305 (noting that in order to calculate nursing hours a court must, *inter*

9    *alia*, classify employees into different categories of nursing care, calculate the hours each

10   employee worked, and "determine on a class-wide basis the size, configuration and licensing

11   status of skilled nursing and intermediate care facilities").  Because of the complexity of these

12   calculations, the Court of Appeal held that "calculating on a class-wide basis whether skilled or

13   intermediate nursing facilities are in compliance with Section 1276.5 . . . is a task better

14   accomplished by an administrative agency than by trial courts."  *Id.* at 1306.

15        Plaintiff considers herself free to disagree with *Alvarado*'s interpretation of the statute,

16   arguing that determining compliance with the 3.2 NHPPD standard is "a relatively

17   straightforward exercise" that is "no more complicated than reviewing the facilities' own

18   documents," and that any complexities are "easily addressed."  (Opp. at 5:9-27.)  She cannot do

19   this:  *Alvarado*, besides being right, is the only appellate authority on this subject and it is *stare*

20   *decisis*.[5]

21        In order for the *Alvarado* court to conclude that abstention was warranted, it first was

22   obliged to analyze, interpret and construe Section 1276.5, in order to determine whether the

23   CDPH, as the administrative agency with regulatory enforcement jurisdiction over SNFs, was

24   more suitable than the courts to "enforce" that statute.  Only after doing so, could the Court of

25   Appeal conclude that claims based on alleged violations of Section 1276.5 could not be

26   ───────────────────

[5] Federal courts follow state court appellate decisions with the same rigor that they enforce

27   decisions by the California Supreme Court concerning issues of state law.  *See, e.g., Six*
     *Companies of Cal. v. Joint Highways Dist. No. 13*, 311 U.S. 180, 188 (1940); *Comm. Nat'l. Bank*

28   *v. Fidelity and Deposition Co.*, 563 F.2d 1319, 1321 fn. 1 (9th Cir. 1977).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    adjudicated without intruding into the regulators' extensive regulatory and administrative scheme.

2    *Alvarado* moved well beyond the trial court's discretion and declares the meaning of statewide

3    law in a rare published appellate decision – in this instance the only appellate decision on this

4    statute, which has not been amended since.[6]  Any fair reading of *Alvarado* makes it clear that the

5    case for dismissal was so strong that the appellate court would almost surely have reversed a

6    refusal to dismiss as an abuse of discretion.  *See Alvarado,* 153 Cal.App.4th at 1304-06.

7    *Alvarado* is published so that the courts and the bar will rely on it, not denigrate it.

8            Plaintiff tries to impeach *Alvarado* with an unreviewed jury verdict from another case,

9    which Plaintiff contends shows that "the Court does not need to be heavily involved in

10   administering or monitoring an injunction because private auditors and the parties themselves can

11   police the issues."[7]  (Opp. at 6:10-15.)  The Court will note the irony of Plaintiff's simultaneous

12   submission of an irrelevant un-appealed trial court jury verdict in another case, while also

13   insisting that the Court ignore the published Court of Appeal decision in *Alvarado*.  (*See*

14   concurrently filed Objections to Plaintiffs' RJN, regarding Exhibits 1 and 4.)  If the law were

15   made that way, then the courts of appeal might as well not bother to write careful and published

16   decisions to guide other courts and the bar.  Plaintiff proves too much with her overreach for

17   "precedent" of this sort while ignoring the rule of law from a published appellate decision.[8]

18           *Alvarado*'s interpretation of Section 1276.5, on the other hand, is fully binding and carries

19   *stare decisis* effect, and *Alvarado* spoke clearly and strongly about the unworkable nature of the

20

21   [6] *See* California Rules of Court, Rule 8.1105 ("An opinion of a Court of Appeal ... should be
     certified for publication in the Official Reports if the opinion: (1) Establishes a new rule of law;

22   [and] (4) Advances a new … construction of a provision of a ... statute ..."); *see also* Judicial
     Council of California Court Statistics Report, 2008 Summary  at pg. IX (covering appellate

23   decisions in FY ended 2007) at http://www.courtinfo.ca.gov/reference/3_stats.htm  California
     courts sparingly publish decisions precisely because they recognize that published opinions are

24   *stare decisis*.  *Schmeir v. Superior Court*, 78 Cal.App.4th 703, 709-10 (2000).

     [7] The Court will note the irony of Plaintiff's simultaneous submission of an un-appealed trial

25   court jury verdict in another case, while also insisting that the Court ignore the published Court of
     Appeal decision in *Alvarado*.  *See* concurrently filed Objections to Plaintiffs' RJN, regarding

26   Exhibits 1 and 4.

27   [8] She also misunderstands that a unappealed state trial court decision carries no force or effect in
     any case except the one in which it was entered.  *See, e.g.*, *Ziller Electronics Lab v. Superior*

28   *Court (Grosh Scenic Studios)*, 206 Cal.App.3d 1222, 1228 (1988).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6    DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
     REPLY MEMORANDUM OF POINTS AND AUTHORITIES
     (CASE NO. C 10-05839 CW)

1    sort of statewide, classwide injunctions to enforce Section 1276.5 of the type that Plaintiff seeks:

2    "[G]ranting the requested injunctive relief would place a tremendous burden on the trial court to

3    undertake a class-wide regulatory function and manage the long-term monitoring process to

4    ensure compliance with section 1276.5, subdivision (a)," because it would require the trial court

5    to issue, monitor and enforce "networks of injunctions across the State of California." *Id.* at

6    1306. This conclusion stands regardless of how loudly Plaintiff protests.

7                      3.        **Section 1430(b)'s Existence Does Not Make Abstention Improper.**

8           Plaintiff next claims Section 1430(b)'s creation of a cause of action to remedy purported

9    violations of nursing home residents' rights demonstrates why abstention is inappropriate.

10   Plaintiff misses the point about Section 1430(b)'s origin and its legislative purpose.

11          Section 1430(b) provides, in pertinent part, that "a *current or former resident or patient* of

12   a skilled nursing facility . . . may bring a civil action against the licensee of a facility who violates

13   any *rights of the resident or patient . . . .*" Section 1430(b) (emphasis added). Plaintiff claims that

14   Section 1430(b) creates "dual public and private enforcement of state nursing home standards"

15   (Opp. at 6:18-26), obliging the trial courts to entertain any Section 1430(b) claims about any

16   subject, even if the supposed source of the claim creates no right of a resident or commands only

17   regulatory action. Plaintiff thinks that the very existence of Section 1430(b) forecloses

18   abstention, primary jurisdiction, or other doctrines courts use to avoid parallel litigation over

19   subjects committed to agency action and discretion.

20          Plaintiff's interpretation is wrong. Section 1430(b) does not authorize individual residents

21   to regulate nursing homes in a dual-regulatory capacity with the CDPH, as Plaintiff argues.

22   Claims under Section 1430(b) depend on the existence of a violation of a "right of the resident or

23   patient." Plaintiff's instant lawsuit complains about supposed aggregate rights only, rather than

24   individual rights. That is because there is no such right in issue here, and Plaintiff has forsaken

25   claims for any "resident-specific" wrong. (Compl., ¶ 47.) Plaintiff instead wants to pursue class

26   claims without stating any threshold individual claim.

27          Nothing in Section 1430(b) authorizes, or even contemplates, one resident (much less a

28   class) bringing suit over a facility-wide regulatory obligation to provide an average number of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7                        DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
                         REPLY MEMORANDUM OF POINTS AND AUTHORITIES
                         (CASE NO. C 10-05839 CW)

1    daily nursing hours.[9]  The Court need only read the relevant sections of Complaint, and scan

2    generally the additional irrelevant information Plaintiff tenders under her Request for Judicial

3    Notice, to see that the focus here is an aggregate claim which focuses on average facility staffing

4    under Section 1276.5.  This also is exactly what the *Alvarado* plaintiff tried to do.  Why else, for

5    example, would the Plaintiff bother to denigrate the CDPH's supposed inaction in enforcing

6    Section 1276.5, if her claim were really about anything else?  (*See* Opp. at 7:26-28, n. 2.)

7         This lawsuit creates the exact same problem that impelled the conclusion in *Alvarado* that

8    parallel judicial enforcement of a law committed to expert agency enforcement is not "... a task

9    for which the courts are … well-equipped."  *Alvarado*, 153 Cal.App.4th at 1303-04.  Obviously,

10   the *Alvarado* courts recognized the CDPH's jurisdiction was not legally exclusive.  The issue is

11   not exclusivity of jurisdiction, the issue is the recognized unsuitability of these cases for

12   litigation.

13        Plaintiff fails to confront the express language and history of Section 1430(b) and Section

14   1599.1(a), both of  which expressly confer "rights of the resident or patient," language missing

15   from Section 1276.5(a), which has commanded only regulation by the CDPH since its start date of

16   January 1, 2000.  On their face these laws belie the appropriateness of aggregate, collective relief.

17   The focus of both Section 1430(b) is – and always has been – on the particular rights of an

18   *individual* resident, making the statute uniquely unsuited to class treatment.[10]  Section 1430(b)

19   must be read sensibly:  It authorizes a suit by a present or former resident to enforce his or her

20
     ───────────────────────────
21   [9] Section 1430(b) was amended four years after Section 1276.5, and yet it makes no reference to
     Section 1276.5 on the long but quite specific list of "rights of the resident" in the statute and in
     Title 22 regulations.  There was never any legislative intention to use Section 1430(b) this way, or
     else the Legislature would have said something about the four-year old Section 1276.5 (effective
22   Jan. 1, 2000) when it amended Section 1430(b) in 2004.  None of the proponents of amended
     Section 1430(b) proposed this; rather, they proposed to amend Section 1430(b) to increase by ten-
23   fold the maximum damages a resident might recover for a violation of a resident-specific right –
     hardly a proposal that suggests use of Section 1430(b) as an aggregate or class claim law.  *See*
24   Cal. Stats. 2004, Ch. 270 (AB 2791) and accompanying legislative history, Exhibit 4 to
     Defendants' RJN (CD), at pp. 20 and 46.
25
     [10] At the time of its initial enactment in 1982, as well as its 2004 amendment, the focus of Section
26   1430(b) was on individuals, not aggregations of residents alleging a violation of group or
     "collective" rights.  In 1982, the legislation's sponsor stated: "This bill would allow *a resident or*
27   *patient* of a nursing facility to *personally* bring suit against the facility. . ..  *See* Press Release # 28
     from the Office of Sen. Petris (March 16, 1982), Exhibit 3, CD to Defendants' RJN (emphasis
28   added), at pp. 216, 281 and 291.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8    DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
     REPLY MEMORANDUM OF POINTS AND AUTHORITIES
     (CASE NO. C 10-05839 CW)

1   personal patient rights.  That is it and no case or reasoned analysis says or implies otherwise.[11]

2   Similarly focused on personal "rights of the patient" is Section 1599.1 *et seq.*, the only

3   statute mentioned in Section 1430(b), and the subject of the Patient's Bill of Rights, set forth in

4   Title 22, Cal Code of Regulations Section 72527 *et seq*.  The Bill of Rights is necessarily long, but

5   its specificity is deliberate and it does not include regulatory claims for average facility nurse

6   staffing under Section 1276. 5.  A nursing home has myriad other "personnel" necessary to

7   perform all of its functions, including maintenance, engineering and many other safety and

8   building code functions.  Another state agency regulates those functions, the Office of Statewide

9   Health Planning and Development.[12]  Plaintiff wants the Court to rewrite disconnected laws, which

10  the courts will not do.  Indeed, in 2006, six years after the nurse staffing law, the Legislature

11  amended Section 1599.1 to add specific other "rights of the patient," but not among them are rights

12  for average facility staffing under Section 1276.5(a).  *See* 1599.1(i), amended by 2006 Stats. Ch.

13  530 (S.B. 1248) (adding specified Medicare participation requirements as patient rights.)

14  **B.      Plaintiff Has Not Stated a Valid Section 1430(b) Claim.**

15  Plaintiff next challenges the assertion that Section 1276.5 does not confer an individual

16  patient right.  *Id.*  Plaintiff again misses the point.  Most tellingly, her only effort to distinguish

17  *Gonzaga v. Doe*, 536 U.S. 273 (2002), and *Blessing v. Freestone*, 520 U.S. 329 (1997), is that

18  these cases "largely concern issues of federalism under the Constitution's Spending Clause."

19  (Opp. at 10:20-28.)  But, Plaintiff never even discusses, much less attempts to refute, the plain

20  application of the governing standard set forth and applied in these cases, namely, that Section

21  1276.5 "contain[s] no rights-creating language," has "an aggregate, not an individual focus," and

22  principally is directed to the regulator.  *Gonzaga*, 536 U.S. at 290.  As such, it confers no

23

24  [11] The only case that even comes close to addressing the scope of Section 1430(b) does so in
    *dicta*, when deciding that licensed operators of SNFs may not delegate duties to employees and
25  avoid liability for penalties assessed *by the CDPH. California Association of Health Facilities v.
    Dept. of Health Services*, 16 Cal.4th at 305 (upholding the agency's authority to impose civil
26  penalties on state-operated nursing home, declaring that the state agency, not residents, is mainly
    "responsible for the enforcement of [Section 1430 *et seq*]…") (quoting *Kizer v County of San
27  Mateo*, 53 Cal.3d 139, 150 (1990)).

    [12] *See* http://www.oshpd.ca.gov/FDD/About_Us/History/index.html#res.
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9                    DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
                     REPLY MEMORANDUM OF POINTS AND AUTHORITIES
                     (CASE NO. C 10-05839 CW)

1   individual rights under clear application of settled law.[13]

2        Defendants' motion's cited cases (Mtn. at pp. 16-17) show precisely the flaw in Plaintiff's

3   attempt to use Section 1430(b) to enforce a right that she does not have.  *See Gonzaga*, 536 U.S.

4   at 280, 284 (no enforceable right unless legislature "speaks with a clear voice and manifests an

5   unambiguous intent to confer individual rights"); *Lu v. Hawaiian Gardens*, 50 Cal.4th 592, 597

6   (2010) (statute must contain "clear, understandable, unmistakable terms" indicating an intent to

7   create an individual right).  Plaintiff simply asserts that Section 1276.5 was "clearly intended to

8   benefit residents – the whole purpose of amending the statute to increase the minimum staffing

9   requirements was 'to improve patient care,'" (Opp. at 11:17-24), but she cannot dispute that the

10  statute itself does not contain any explicit rights-creating language, nor does its legislative history.

11       Plaintiff also cannot distinguish *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal.App.4th

12  121 (1997).  The absence of a right to sue in the Insurance Code generally was not the issue in

13  *Crusader*; rather, what controlled was the absence of a law authorizing or implying  a right of

14  action to enforce the regulatory law alleged as the basis for the claim.  *Crusader* clearly holds

15  that, where the purpose of a statute is regulatory, it cannot be the subject of a private lawsuit for

16  damages, but rather enforcement should be left to the regulators.  Section 1430(b) creates a

17  limited private right of action based on a borrowed law, but that borrowed law must create a

18  private resident's right.  If, as here, the borrowed law is regulatory, then it is not actionable and

19  Section 1430(b) cannot change this.[14]

---

20  [13] Plaintiffs cite *Grammer v. John J. Kane Reg. Ctrs.*, 570 F.3d 520 (3rd Cir. 2009) as an example
of a case finding a statute "clearly intended to benefits residents."  There is no federal nurse
21  staffing hours minimum, so the point is academic.  That said, the presence or absence of a "clear
intent to benefit residents" is not the governing test, *Grammer* appears to be an outlier decision of
22  the Third Circuit that has received substantial criticism.  *See, e.g.*, *Duncan v. Johnson-Mathers
Health Care, Inc.*, 2010 WL 3000718, *8 (E.D. KY. 2010) (rejecting *Grammer* as inconsistent
23  with *Gonzaga v. Doe, supra*, 536 U.S. 273; *see also, Baum v. Northern Dutchess Hosp.*, __ F.
Supp.2d __, 2011 WL 240196 (N.D.N.Y. 2011) (noting the "strikingly contrary view" to
24  *Grammer* of other federal circuits).

25  [14] *See also* Stewart & Sunstein, *Public Programs & Private Rights*, 95 HARV. L. REV. 1193, 1196,
1206-07 (April 1982) ( The U.S. Supreme Court "…has created a strong presumption against
26  judicial recognition of private rights of action."  When "the legislature has entrusted enforcement
of a statutory scheme to a specialized administrative agency that is empowered to issue rules or to
27  adjudicate controversies under the statute… private rights of action may usurp the agency's
responsibility for regulatory implementation … and force courts to determine in the first instance
28  the meaning of a regulatory statute.").

                                           10         DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES
(CASE NO. C 10-05839 CW)

**C.** **In the Alternative, This Suit Should Be Stayed in Deference to CDPH's Primary Jurisdiction.**

Minimally, the Court should stay this action to allow the CDPH, the expert agency charged with regulating SNFs and determining their compliance with federal and state nurse staffing requirements, to decide whether Defendants meet those requirements – and if not, to allow the agency to decide what enforcement remedies it should impose, as well as await the conclusion of any administrative appeal, which another statute and other regulatory pronouncements affords to any licensee of a facility that may pursue. *See* Welf. & Inst. Code § 14126.02 (f) and Ex. 6 to RJN.

Plaintiff responds that deference to the CDPH's primary jurisdiction is not warranted, because, per Plaintiff, "there are no parallel proceedings pending in the CDPH." (Opp. 7:23.) That is no different from what the plaintiff in *Alvarado* said. Plaintiff is doing none of the work assigned to the CDPH by statute. The CDPH has for years enforced Section 1276.5 and has issued multiple regulatory instructions to define includable nurse staffing hours and to enforce the statute. This is evidenced by the multiple, recent All Facilities Letters released by the CDPH that already are before this Court. The administrative enforcement process will continue to evolve and culminate in agency regulatory assessments and compliance determinations for all SNFs under Section 1276.5. Already, the CDPH is in conflict with Plaintiff's central claim that Section 1276.5 entitles "any given patient" to claim 3.2 NHPPD at any facility. (Exhibit 5 to Defendants' RJN.) So, this is precisely the wrong time for the Court to move forward on a parallel conflicting litigation track. The primary jurisdiction doctrine exists to prevent such a dual enforcement debacle.

**D.** **Plaintiff's Consumer Legal Remedies Act Claim Fails.**

Plaintiff's claim under California's Consumer Legal Remedies Act ("CLRA") also fails as a matter of law. First, Plaintiff has not alleged sufficient factual averments to state a CLRA claim, but rather only the existence of non-specific statements in "promotional materials, admission agreements, submissions made to DHS and other materials disseminated to the public in connection with defendants' services" (Compl., ¶ 75) – which do not constitute the type of

11

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES
(CASE NO. C 10-05839 CW)

1   specific and concrete factual assertions that may be actionable under the CLRA.  *See Consumer*

2   *Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1360-61 (2003).

3         In opposition, Plaintiff contends her Complaint's alleged misrepresentations are

4   sufficiently "specific and concrete" to support a CLRA claim, because, according to Plaintiff, the

5   Complaint alleges "representations that the defendants' facilities comply with all laws, including

6   the [S]tate's minimum staffing standards."  (Opp. at 15:22-25.)  Plaintiff is mistaken.  The CLRA

7   claim she pleads contains no such allegation.  Instead, her Complaint merely alleges that

8   Defendants represented "that they provide sufficient and lawful staffing to meet the needs of their

9   residents...."  (Compl., ¶ 75.)  Particularly given that Plaintiff's Complaint carefully and

10  purposefully eschews any potential recovery for "personal injuries or other resident-specific

11  harm" (Compl., ¶ 47), these are not identical allegations.

12        Beyond this, the Complaint does not come close to alleging sufficient details about the

13  supposed CLRA misrepresentations to meet the heightened pleading standard that requires that

14  the circumstances constituting fraud be pled with particularity.  In analyzing a motion to dismiss,

15  a district court must accept as true all material allegations in the complaint, and construe them in

16  the light most favorable to the nonmoving party. *See NL Industries, Inc. v. Kaplan*, 792 F.2d 896,

17  898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual

18  material, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v.*

19  *Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at

20  570).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"

21  *Twombly*, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as

22  a factual allegation."  *See Iqbal*, 129 S.Ct. at 1950 (internal quotation and citation omitted).

23        "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific

24  enough to give defendants notice of the particular misconduct . . . so that they can defend against

25  the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*,

26  567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th

27  Cir. 2001)) (some quotation marks omitted).  To satisfy Rule 9(b), plaintiffs must explicitly aver

28  "the who, what, when, where, and how" of the alleged fraudulent conduct. *Cooper v. Pickett*, 137

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES
(CASE NO. C 10-05839 CW)

1    F.3d 616, 627 (9th Cir. 1997).  Rule 9(b)'s heightened pleading requirements are applied to

2    claims under the CLRA.  *In re Actimmune Mktg. Litig.*, 2009 U.S. Dist. LEXIS 103408, *48

3    (N.D. Cal. 2009) (dismissing CLRA claim for lack of specificity regarding facts of reliance);

4    *Baltazar v. Apple, Inc.*, 2011 U.S. Dist LEXIS 13187, *10-11 (N.D. Cal. 2011) (same).  Here, no

5    such required facts are alleged.

6         Finally, Defendants observed in their motion to dismiss that no reported decision (or, for

7    that matter, unreported one) appears to have found the provision of institutional health care to be

8    a "good or service" within the meaning of the CLRA.  Plaintiff apparently has found none either.

9    Plaintiff points out that the word "service" or "services" appears in various places in and around

10   the California Health & Safety Code, and also that the California Legislature is interested in

11   protecting the elderly.  (Opp. at pp. 16-17.)  But, that in no manner changes the fact that the

12   provision of institutional health care does not fit within the Legislatively-drawn definitions of

13   "goods" or "services" as set forth in the CLRA.  Again, the CLRA defines "goods" as "tangible

14   chattels bought or leased for use primarily for personal, family, or household purposes . . ." and

15   defines "services" as "work, labor, and services for other than a commercial or business use,

16   including services furnished in connection with the sale or repair of goods."  Civ. Code § 1761(a),

17   (b).  Institutional health care is neither.

18   **III.    <u>CONCLUSION</u>**

19        For the reasons stated above, Plaintiff's Complaint, and all of the claims included therein,

20   should be dismissed with prejudice.

21   Dated:    March 24, 2011                    Respectfully submitted,

22                                              MANATT, PHELPS & PHILLIPS

23

24                                              By: /s/ Barry S. Landsberg
                                                   Barry S. Landsberg
                                                   *Attorneys for Defendant*
25                                                 Evergreen at Lakeport, L.L.C.

26

27        *Filer's Attestation: Pursuant to General Order No. 45, Section X(B) regarding signatures,
     Brad W. Seiling hereby attests that concurrence in the filing of this document has been obtained.*

28   300232270.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    13       DEFENDANT EVERGREEN AT LAKEPORT, L.L.C.'S
                                             REPLY MEMORANDUM OF POINTS AND AUTHORITIES
                                             (CASE NO. C 10-05839 CW)