MANATT, PHELPS & PHILLIPS, LLP
BARRY S. LANDSBERG (Bar No. CA 117284)
E-mail: blandsberg@manatt.com
BRAD W. SEILING (Bar No. CA 143515)
E-mail: bseiling@manatt.com
ANDREW H. STRUVE (Bar No. CA 200803)
E-mail: astruve@manatt.com
JESSICA J. SLUSSER (Bar No. CA 217307)
E-mail: jslusser@manatt.com
JUSTIN C. JOHNSON (Bar No. CA 252175)
E-mail: jjohnson@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

DAVID L. SHAPIRO (*Pro Hac Vice*)
E-mail: dshapiro@law.harvard.edu
1563 Mass. Ave.
Cambridge, MA  02138
Telephone:  (617) 495-4618
Facsimile:   (617) 495-1950

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Phyllis Wehlage, on her behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EmpRes Healthcare, Inc.; EHC Management LLC; EHC Financial Services LLC; Evergreen California Healthcare LLC; Evergreen at Arvin LLC; Evergreen at Bakersfield LLC; Evergreen at Lakeport LLC; Evergreen at Heartwood LLC; Evergreen at Springs Road LLC; Evergreen at Tracy LLC; Evergreen at Oroville LLC; Evergreen at Petaluma LLC; Evergreen at Gridley (SNF) LLC; and DOES 1 THROUGH 100,<br><br>Defendants. | No.  C 10-05839 CW<br><br>**DEFENDANTS EMPRES HEALTHCARE INC. ET AL'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date:   April 7, 2011<br>Time:                 2 p.m.<br>Judge:               Hon. Claudia Wilken |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Plaintiff Does Not Allege Any Direct Injury As A Result of Defendants' Allegedly Wrongful Conduct. ............................................................................... 2

        1. Only Residents of Facilities That Caused a Violation of those Residents' Rights Can Assert Claims Under Section 1430(b), And Plaintiff Never Resided In Any of Defendants' Facilities or Suffered A Violation of Her Rights Caused by These Defendants. ............ 2

        2. Plaintiff's UCL and CLRA Claims Fail Because She Has Not Alleged that Defendants' Conduct Caused Her Harm. .............................. 2

    B. Neither the "Juridical Link" Doctrine Nor the "Single-Enterprise Exception" Permit Plaintiff to Manufacture Claims at the Pleading Stage. ........... 4

    C. Plaintiff's Conclusory Alter Ego Allegations Do Not Establish Claims Against Facilities In Which She Never Resided or Against Defendants With Which She Had No Dealings and Are Insufficient to State a Claim as a Matter of Law. ...................................................................................................... 7

    D. Plaintiff's Conspiracy and Agency Allegations Also Fail as a Matter of Law. ...................................................................................................................... 11

III. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

### CASES

*Alfus v. Pyramid Tech. Corp.*,
   745 F.Supp. 1511 (N.D. Cal. 1990) .................................................................................. 11

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal.4th 503 (1994) ................................................................................................... 7, 11

*Ashcroft v Iqbal*,
   556 U.S. _, 129 S.Ct. 1937 (2009) ................................................................................... 1

*Associated Vendors, Inc. v. Oakland Meat Co.*,
   210 Cal.App.2d 825 (1962) ......................................................................................... 9, 10

*Baltimore Football Club, Inc. v. Superior Court*,
   171 Cal.App.3d 352 (1985) .............................................................................................. 6

*Bleu Prods. v. Bureau Veritas Consumer Prod. Servs.*,
   2009 U.S. Dist. LEXIS 72187 (C.D. Cal. 2009) ............................................................... 9

*Burns v. County of King*,
   883 F.2d 819 (9th Cir. 1989) .......................................................................................... 11

*Cady v. Anthem Blue Cross Life and Health Insurance Co.*,
   583 F.Supp.2d 1102 (N.D. Cal 2008) ....................................................................... 4, 5, 6

*Californians for Disability Rights v. Mervyn's, LLC*,
   39 Cal.4th 223 (2006) ....................................................................................................... 3

*Calvert v. Huckins*,
   875 F. Supp. 674 (E.D.Cal. 1995) .................................................................................... 9

*Copperweld Corp. v. Independent Tube Corp.*,
   467 U.S. 752 (1984) ....................................................................................................... 11

*Dufour v. Be LLC*,
   2010 WL 2560409 (N.D. Cal. 2010) .............................................................................. 11

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (1st Cir. 1998) ............................................................................................ 5

*Feitelberg v. Credit Suisse First Boston, LLC*,
   134 Cal.App.4th 997 (2005) ............................................................................................. 3

*Fitzhugh v. Granada Healthcare and Rehabilitation Center, LLC*,
   150 Cal.App.4th 469 (2007) ............................................................................................. 5

*Freeman v. San Diego Ass'n of Realtors*,
   77 Cal. App.4th 171 (1999) ............................................................................................ 11

*Hart v. County of Alameda*,
   76 Cal.App.4th 766 (1999) ........................................................................................... 5, 6

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Itel Securities Litigation*,
   89 F.R.D. 104 (N.D. Cal. 1981) ............................................................................................. 5, 6

*Johnson v. Geico Ins. Co.*,
   673 F.Supp.2d 244 (D. Del. 2009) ............................................................................................. 5

*Kema, Inc. v. Koperwhats*,
   2010 WL 3464737 (N.D. Cal. 2010) (N.D. Cal. 2010) ........................................................... 1, 8

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) ................................................................................................................ 3

*LaMar v. H&B Novelty & Loan Co.*,
   489 F.2d 461 (9th Cir. 1973) .............................................................................................. 4, 6, 7

*Lovesy v. Armed Forces Benefit Assoc.*,
   2008 WL 4856350(N.D.Cal. 2008) ......................................................................................... 8, 9

*Madrid v. Perot Systems Corp.*,
   130 Cal.App.4th 440 (2005) ....................................................................................................... 4

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
   97 Cal.App.4th 1282 (2002) ....................................................................................................... 3

*Meyer v. Holley*,
   537 U.S. 280 (2003) ................................................................................................................... 2

*Mid-Century Ins. Co. v. Gardner*,
   9 Cal.App.4th 1205 (1992) .................................................................................................... 9, 10

*Miller v. Pac. Shore Funding, Inc.*,
   224 F.Supp.2d 977 (D. Md. 2002) ............................................................................................. 4

*Mitchell v. Residential Funding Corp.*,
   2010 Mo.App. LEXIS 1593 (2010) ........................................................................................... 5

*Moore v. Confederated Savings Bank*,
   908 F.2d 834 (11th Cir. 1990) .................................................................................................... 5

*Moore v. Regents of University – of California*,
   51 Cal. 3d 120, 134 fn. 12 (1990) ............................................................................................ 12

*Neilson v. Union Bank of California*,
   290 F.Supp.2d 1101 (C.D. Cal. 2003) ..................................................................................... 8, 9

*Olsen v. Idaho Bd. of Medicine*,
   363 F.3d 916 (9th Cir. 2004) .................................................................................................... 11

*People v. Bestline Products, Inc.*,
   61 Cal.App.3d 879 (1976) .......................................................................................................... 3

*People v. Witzerman*,
   29 Cal.App.3d 169 (1972) .......................................................................................................... 3

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES
# (continued)

**Page**

*Rollins Burdick Hunter of So. Cal., Inc. v. Alexander & Alexander Services, Inc.*,
  206 Cal.App.3d 1 (1988) .................................................................................................... 9

*Sonora Diamond Corp. v. Superior Court (Sonora Union High Sch. Dist.)*,
  83 Cal.App.4th 523 (2000) ........................................................................................ 7, 8, 9

*Transamerica Corp. v. Compana*, *LLC*,
  2005 U.S. Dist. LEXIS 46961 (N.D. Cal. 2005) ................................................................ 9

*VirtualMagic Asia, Inc.*,
  99 Cal.App.4th 228, 245 (2002) ......................................................................................... 9

*Wilens v. TD Waterhouse Group, Inc.*,
  120 Cal.App.4th 746 (2003) ............................................................................................... 3

## STATUTES

Cal. Civ. Code § 17204 ............................................................................................................ 3

Cal. Code Civ. Proc. § 1780(a) ................................................................................................ 3

Federal Rules of Civil Procedure Rule 23 ............................................................................... 4

Health & Safety Code § 1267.5 ............................................................................................. 10

## OTHER AUTHORITIES

https://www.alirts.oshpd.ca.gov/LicenseFacilitySearchResults. ........................................... 10

300232271.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii   DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION (CASE NO. C 10-05839 CW)

## I. INTRODUCTION

Plaintiff's opposition confirms that she is trying to act as a self-appointed private attorney general, suing facilities in which she never resided and other defendants with which she had no dealings.[1] In Plaintiff's world view, a resident of one nursing home could sue some *other facility* in which she never resided based on the theory that the *other facility* did not honor her personal rights to have an adequate number of qualified personnel. No authority supports such an absurd result that would stretch the consumer protection laws beyond the breaking point. Plaintiff must allege individual harm caused by the alleged wrongful conduct of *each* Defendant. Nothing less is "plausible." *See Ashcroft v Iqbal*, 556 U.S. _, 129 S.Ct. 1937, 1949 (2009); *Kema, Inc. v. Koperwhats*, 2010 WL 3464737 * 9 (N.D. Cal. 2010) (N.D. Cal. 2010) (granting Rule 12(b)(6) motion, over conclusory alter ego allegations.) Put simply, Plaintiff cannot assert a claim against a defendant with which she had no direct dealings.

Plaintiff argues inapposite "exceptions" relating to alter ego and conspiracy liability. The arguments are extreme departures from accepted pleading standards and basic principles of Article III standing. Plaintiff's Complaint and her opposition provide no basis in law for the extreme departure she urges. Indeed, the cases Plaintiff cites show that Plaintiff cannot sue such disconnected defendants.

Plaintiff's theory of relief against Defendants does not proffer any factual cure for such a defective claim and it is plain to see that she had and has no business with the moving Defendants. She wants discovery to try to ferret out some basis for her far-flung theory, but the Federal Rules do not allow plaintiffs to sue first and ask questions later. Plaintiff's failure to allege facts to support her claim is dispositive. The Defendants' motions to dismiss Plaintiff's Complaint should be granted, without leave to amend.

---

[1] All Defendants have moved to dismiss this action in the concurrently filed Motion to Dismiss by Evergreen at Lakeport, L.L.C., joined by all Defendants. This Motion to Dismiss need not be reached if the Court agrees there is no justiciable claim.

## II. ARGUMENT

### A. Plaintiff Does Not Allege Any Direct Injury As A Result of Defendants' Allegedly Wrongful Conduct.

#### 1. Only Residents of Facilities That Caused a Violation of those Residents' Rights Can Assert Claims Under Section 1430(b), And Plaintiff Never Resided In Any of Defendants' Facilities or Suffered A Violation of Her Rights Caused by These Defendants.

Plaintiff does not address Defendants' principal argument that only *a resident* of a facility can assert a claim under Health & Safety Code Section 1430(b). That argument rests on the express language of Section 1430(b), which provides that "a *current or former resident or patient of a skilled nursing facility . . . may bring a civil action against the licensee of a facility who violates any rights of the resident or patient. . . ." Id.* (emphasis added). Section 1430(b) is only available to former or current **residents** of the SNF they are suing, and the facility they are suing must have violated a "right of the resident of patient." This Plaintiff happens to have no actionable rights under Section 1430(b) (*see* concurrently filed Evergreen at Lakeport, L.L.C.'s Motion to Dismiss), but in no event may a resident sue a facility where she never resided.

*Meyer v. Holley,* 537 U.S. 280 (2003), cited by Plaintiff, does not support extending liability to facilities in which Plaintiff never resided, or to other entity Defendants with which Plaintiff similarly had no dealings. The statute at issue in *Meyer* generally prohibited "any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate," and that section broadly defined the "persons" covered by the Act. *Id.* In contrast, Section 1430(b) specifically limits the class of persons who can sue (current or former residents of facilities) **and** the types of entities that can be sued (licensees of the facility that violated the resident's rights). No court has used vicarious liability principles to extend Section 1430(b) to independently licensed facilities in which the plaintiff resident never resided, or to other entities that had no involvement in resident care.

#### 2. Plaintiff's UCL and CLRA Claims Fail Because She Has Not Alleged that Defendants' Conduct Caused Her Harm.

Plaintiff also neglects to address the point that the Unfair Competition Law ("UCL") and the Consumer Legal Remedies Act ("CLRA") require her to plead an actual injury caused by each

1  Defendant she named. Plaintiff's only authority in support of her UCL and CLRA claims
2  consists of two cases decided more than thirty-five years ago involving claims by district
3  attorneys against parties directly involved in the alleged illegal conduct. *People v. Witzerman*, 29
4  Cal.App.3d 169, 184-185 (1972) and *People v. Bestline Products, Inc.*, 61 Cal.App.3d 879, 918
5  (1976). These old enforcement cases have no relevance here.

6  Much has happened in UCL and CLRA jurisprudence in the last thirty-five years. For one
7  significant example, the enactment of Proposition 64 specifically prohibited litigants from
8  bringing private attorney general actions, such as the claims Plaintiff is pursuing here. *See*
9  *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223 (2006). Where once private
10 suits could be brought by "any person acting for the interests of itself, its members or the general
11 public" (former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198), now private plaintiff
12 standing is limited to any "person who has suffered injury in fact and has lost money or property"
13 as a result of unfair competition (§ 17204, as amended by Prop. 64, as approved by voters, Gen.
14 Elec. (Nov. 2, 2004) § 3). The UCL, as amended by Proposition 64, bars suits against defendants
15 with which plaintiff concededly "ha[s] not engaged in business dealings." *Kwikset Corp. v.*
16 *Superior Court*, 51 Cal.4th 310, 342 (2011).

17 Similarly, CLRA actions may be brought only by a consumer "who suffers any damage *as*
18 *a result of* the use or employment "of a proscribed method, act, or practice." Cal. Civ. Code
19 § 1780(a) (emphasis added). "This language does not create an automatic award of statutory
20 damages upon proof of an unlawful act. . . . Relief under the CLRA is specifically limited to those
21 who suffer damage, making causation a necessary element of proof." *Wilens v. TD Waterhouse*
22 *Group, Inc.*, 120 Cal.App.4th 746, 754 (2003). A CLRA plaintiff cannot proceed as a private
23 attorney general, and instead "[must] show not only that a defendant's conduct was deceptive but
24 that the deception caused them harm." *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97
25 Cal.App.4th 1282, 1292 (2002). Plaintiff again cites no authority, and none exists, to support her
26 expansive interpretation of CLRA liability.

27 Asserting putative class action claims, a procedural device, does not create individual
28 right of action. *See Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal.App.4th 997, 1018

(2005) ("If a specific form of relief is foreclosed to the claimants as individuals, it remains unavailable to them even if they congregate into a class."); *Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 461 (2005) (holding that class allegations do not expand a party's substantive rights or allow for recovery where the plaintiff otherwise has no claim). *See also Miller v. Pac. Shore Funding, Inc.*, 224 F.Supp.2d 977, 996 (D. Md. 2002) ("In a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants.") The Court should dismiss the UCL and CLRA claims, with prejudice.

### B. Neither the "Juridical Link" Doctrine Nor the "Single-Enterprise Exception" Permit Plaintiff to Manufacture Claims at the Pleading Stage.

Plaintiff argues that the Court should apply the "juridical link" doctrine or the "single-enterprise exception" to create a claim that otherwise would not exist. Plaintiff's underlying theory of liability against these Defendants is contrary to basic principles of Article III standing. No authority supports her claims against disconnected Defendants. The issue here is sufficiency of pleading, not class certification.

The Ninth Circuit has not embraced the "juridical link" doctrine, as this Court explained in *Cady v. Anthem Blue Cross Life and Health Insurance Co.*, 583 F.Supp.2d 1102, 1107 (N.D. Cal 2008) (emphasis added):

> However, the Ninth Circuit in *La Mar* explicitly declined to resolve the issue of standing. (citations omitted) And, as the *Siemers* court noted, "***the juridical-link doctrine has been held not to apply to standing questions at the pleading stage***." 2006 U.S. Dist. LEXIS 81097, 2006 WL 3041090, at *6 (citations omitted) (emphasis added). The Court shares the view of other courts finding that the "doctrine, developed in the context of class certification analysis under Rule 23, should properly remain in the analysis of adequacy and typicality of plaintiffs for which it was originally conceived." *Siemers*, 2006 U.S. Dist. LEXIS 81097, 2006 WL 3041090, at *6 (citations omitted); *see also Henry*, 223 F.R.D. at 544 (stating that a "doctrine developed under Rule 23 based on judicial efficiency and expedience does not play a role in an Article III standing analysis").

*Id*. at 1107.

No case anywhere helps Plaintiff. For example, in *Alves* – a class action dispute – the court applied the juridical link doctrine to justify certifying a class against sponsors of employee health benefit plans that were "wholly owned affiliates of [the employee health plan] in which

1    plaintiffs were participants," and where the "copayment plan provisions [were] substantially the
2    same." *Id.* at 206.  Relying on an ERISA-specific doctrine articulated in *Fallick v. Nationwide*
3    *Mut. Ins. Co*., 162 F.3d 410, 422 (1st Cir. 1998), the *Alves* court held that since "an individual in
4    one ERISA benefit plan can represent a class of participants in numerous plans other than his
5    own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the
6    plans." *Id*.  This case does not involve the unique principles that apply in ERISA cases.  Nor can
7    Plaintiff come close to alleging that separately operated and state-licensed facilities are
8    comparable to defendants in *Alves.*
9          In *Moore v. Confederated Savings Bank*, 908 F.2d 834 (11th Cir. 1990), the Eleventh
10   Circuit did not expressly apply the juridical link doctrine. *Id.* at 838.  Rather, the court found that
11   defendants (financial institutions that purchased notes from a bankrupt lender) were properly
12   joined pursuant to Federal Rule of Civil Procedure 20(a).  *Id*. at 839.  *Mitchell v. Residential*
13   *Funding Corp*., 2010 Mo.App. LEXIS 1593 (2010) also demurred, noting instead that "the
14   juridical link doctrine has not heretofore been adopted nor addressed by Missouri state courts."
15   *Id.* at *18.  Similarly, the court in *Johnson v. Geico Ins. Co*., 673 F.Supp.2d 244, 253 (D. Del.
16   2009) the court said that such "logic cannot save Plaintiffs' claims against GEICO Casualty and
17   GEICO General because the juridical link doctrine is inapplicable to issues of standing." *Id*.
18   *Fitzhugh v. Granada Healthcare and Rehabilitation Center, LLC,* 150 Cal.App.4th 469, 476
19   (2007) does not even mention the "juridical link" doctrine.
20         The Georgia court in *Doss* applied the juridical link doctrine to allow a class-action suit
21   challenging the constitutionality of the court's fee system (applying it ***not*** to defendant judges, but
22   to the court fee system, a "systemic defect in the state judiciary").  Significantly, the California
23   Court of Appeal rejected that analysis in a case involving nearly identical claims.  In *Hart v.*
24   *County of Alameda,* 76 Cal.App.4th 766, 776 (1999), the court held that a plaintiff could not state
25   a claim for undeposited jury fees against counties "unless the plaintiff has actually been injured
26   by each of the defendants in the class."  *Id*. at 766.
27         Plaintiff's reliance on *In re Itel Securities Litigation*, 89 F.R.D. 104, 121 (N.D. Cal. 1981)
28   also is misplaced.  *In re Itel* applied the "juridical link" doctrine solely as it related to certification

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION (CASE NO. C 10-05839 CW)

1  of a defendant class in a securities case, specifically because all of the defendants therein were

2  already united as a class for purposes of litigating a related action. *Itel* has no bearing on whether

3  Plaintiff can proceed with claims against parties with which she did no business. Indeed, certain

4  defendants here have moved to dismiss the action for lack of personal jurisdiction.[2]  Plaintiff

5  cannot seriously enlist the Court in a deprivation of any Defendant's due process rights.

6  As to the "single-enterprise exception," every case Plaintiff cites in her opposition *refused*

7  to apply that narrow exception, even in the class certification context. *Hart v. County of*

8  *Alameda*, *supra*, one of those cases, actually supports Defendants' position:

> A plaintiff cannot use the procedure of a class action to establish standing to sue a class or group of defendants unless the plaintiff has actually been injured by each of the defendants in the class." (Italics deleted.)].) An exception to this rule applies where the plaintiff alleges the defendants acted under a conspiracy or the defendants are jointly responsible for the plaintiffs' injuries.

13  *Id.*, 76 Cal.App.4th at 766, citing *Baltimore Football Club, Inc. v. Superior Court*, 171

14  Cal.App.3d 352, 359 (1985). *Baltimore Football Club* also confirms the obvious: "A class

15  action may only be maintained against defendants as to whom the class representative has a cause

16  of action . . . . Without such a personal cause of action, the prerequisite that the claims of the

17  representative party be typical of the class cannot be met." *Id.* at 359.

18  *Cady*, *supra,* and *LaMar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 469 (9th Cir. 1973),

19  likewise support Defendants' position. Both *Cady* and *La Mar* held that a plaintiff could ***not***

20  assert a claim against defendants with which he had done no business and which had not caused

21  him any harm.

22  Specifically, in *Cady*, plaintiff insured asserted claims against insurers with which he had

23  no relationship. Because he had done no business with those defendants, the court granted

24  defendants' motion to dismiss. The court held that plaintiff could ***not*** assert claims against those

25  defendants that "played no part in the decision" at issue, stating, "Plaintiff has sued more than

26  forty Defendants, but his individual claim is asserted against only one [sic] them." *Id.* at 1107.

---

[2] They are Defendants EmpRes Healthcare, Inc., EHC Financial Services, L.L.C. and Evergreen California Healthcare, L.L.C.

1   Similarly, in *La Mar*, the court dismissed claims against defendant counties with which
2   plaintiff had no dealings. The court held that plaintiffs could not use a class action device to state
3   a claim against defendants, holding that "the plaintiffs here are not entitled to bring a class action
4   against defendants with whom they had no dealing." *Id*. at 464.

5   Plaintiff wants to have her cake and eat it too. In one breath, she argues that Defendants
6   conspired with each other to allegedly under-staff the facilities. In the next breath, she argues that
7   Defendants are part of a "single enterprise." Plaintiff cannot have it both ways. California law
8   does not recognize the concept of a conspiracy between agents and their principals, so these are
9   mutually contradictory theories. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd*., 7
10  Cal.4th 503, 512 (1994) (reaffirming rule that agents cannot be held liable for conspiring with
11  their principal).

12  Plaintiff also argues that allowing her to assert claims against all Defendants would
13  promote "judicial economy" because her claims "all arise from an identical pattern and practice."
14  (Opp., 10.) No California court has recognized a "judicial economy" exception that would permit
15  a plaintiff to sue a defendant against which it otherwise would not have an independent claim.
16  Arguments for judicial economy cannot be used to deprive a defendant of due process. In
17  addition, Plaintiff's argument that her allegations of supposed inadequate staffing in eight
18  separate facilities will involve the same proof is contrary to her own Complaint, which refers to
19  different levels of NHPPD (nursing hours per patient day) at different facilities.

20  **C.    Plaintiff's Conclusory Alter Ego Allegations Do Not Establish Claims Against Facilities In Which She Never Resided or Against Defendants With Which She Had No Dealings and Are Insufficient to State a Claim as a Matter of Law.**

23  Plaintiff's alter ego argument does not support her attempt to state claims against facilities
24  in which she never resided or against corporate parent and shareholder Defendants. As a
25  preliminary matter, there is a strong presumption *against* potential alter ego liability. "Alter ego
26  is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Court (Sonora Union*
27  *High Sch. Dist.)*, 83 Cal.App.4th 523, 539 (2000). To properly plead alter ego, Plaintiff's factual
28  allegations (not mere conclusions) must establish two independent elements: (1) "there must be

1  such a unity of interest and ownership between the corporation and its equitable owner that the
2  separate personalities of the corporation and the shareholder do not in reality exist"; and
3  (2) "there must be an inequitable result if the acts in question are treated as those of the
4  corporation alone." *Id.* at 538.

5  Plaintiff's conclusory allegations fail to plead sufficient facts necessary to allege either
6  required element. Plaintiff must plead ***facts*** to support her allegations; she has not. *See Neilson*
7  *v. Union Bank of California,* 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003); *Kema, Inc. v.*
8  *Koperwhats*, 2010 WL 3464737 at * 9 (granting defendant's motion to dismiss because plaintiff
9  failed to allege facts to support its alter ego claims). "Conclusory allegations of 'alter ego' status
10 are insufficient to state a claim[;] [r]ather, a plaintiff must allege specifically both elements of
11 alter ego liability, ***as well as facts supporting each***." *Neilson,* 290 F.Supp.2d 1101, 1116 (C.D.
12 Cal. 2003) (emphasis added).

13 Neither Plaintiff's Complaint nor her opposition begin to explain how these independently
14 licensed facilities purportedly control each other or work some fraud or inequity on Plaintiff or
15 others. The facilities are separately licensed by regulators and there is no allegation that any
16 Defendant fails to observe proper corporate form or separateness. In substance, Plaintiff is
17 condemning the business form itself, a baseless proposition that would come as news to
18 regulators and secretaries of state. Put another way, Plaintiff would argue that one Toyota
19 dealership is the alter ego of another Toyota dealership merely because both are independent legal
20 entities both of which sell Toyota products. Hardly.

21 Shared company officers and employees and administrative office financial and
22 accounting support or "controls" do not support alter ego liability as between parents and
23 subsidiaries. *See Lovesy v. Armed Forces Benefit Assoc.,* 2008 WL 4856350, *5 (N.D. Cal.
24 2008). Some amount of control and overlap is "to be expected as an incident of the parent's
25 ownership of the subsidiary." *Sonora Diamond,* 83 Cal.App.4th at 542. "The parent's general
26 executive control over the subsidiary is not enough; rather there must be a strong showing beyond
27 simply facts evidencing 'the broad oversight typically indicated by [the] common ownership and
28 common directorship" present in a normal parent-subsidiary relationship. *Id*. at 542 (*citing*

1  *Calvert v. Huckins*, 875 F. Supp. 674, 679 (E.D.Cal. 1995)).  There is no allegation that any

2  senior entity Defendant "moved beyond the establishment of general policy and direction for the

3  subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in

4  carrying out that policy."  *Calvert, supra*, 875 F. Supp. at p. 679.  *See also Rollins Burdick*

5  *Hunter of So. Cal., Inc. v. Alexander & Alexander Services, Inc*., 206 Cal.App.3d 1, 9 (1988).

6  Courts routinely find conclusory allegations like those in Plaintiff's Complaint insufficient.  *See*

7  *Neilson*, 290 F.Supp.2d at 1116; *Lovesey*, 2008 WL 4856350 at *5.

8        Neither *Transamerica Corp. v. Compana*, *LLC*, 2005 U.S. Dist. LEXIS 46961, *2 (N.D.

9  Cal. 2005) nor *Bleu Prods. v. Bureau Veritas Consumer Prod. Servs.*, 2009 U.S. Dist. LEXIS

10  72187, *44-45 (C.D. Cal. 2009) change the result.  In *Bleu Products*, the court found that the

11  plaintiff alleged sufficient facts to support alter ego, including that the different defendant entities

12  – which shared the same address and human resources – were directly responsible for setting up

13  testing protocols at issue in the case, shared the same employees, jointly filed false reports, and

14  were directly involved in the inspection at the center of the dispute while knowing about a

15  fraudulent report regarding the inspection.  *Id.* *44-45.  Similarly, in *Transamerica, supra*, the

16  court held that defendants were alter egos of one another because the defendant's president and

17  only employee was the same person; both companies were one and the same.  *Id*. at *2.

18        Plaintiff's opposition says nothing about the required second prong to establish alter ego

19  liability.  "Alter ego will not be applied absent evidence that an injustice would result from the

20  recognition of separate corporate identities, and 'difficulty in enforcing a judgment or collecting a

21  debt does not satisfy this standard.'"  *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99

22  Cal.App.4th 228, 245 (2002) (*quoting Sonora Diamond Corp*., *supra*, 83 Cal.App.4th at 539);

23  *Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 1213 (1992) ("Certainly, it is not sufficient

24  to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus

25  set up such an unhappy circumstance as proof of an 'inequitable result'.  In almost every instance

26  where a plaintiff has attempted to invoke the doctrine he is an unsatisfied creditor") (*quoting*

27  *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.App.2d 825, 842 (1962)).

28        California courts require pleading and proof of bad faith conduct by defendants before

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9   DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION (CASE NO. C 10-05839 CW)

1  concluding that an inequitable result justifies an alter ego finding.  *See Mid-Century Ins. Co.*, 9
2  Cal.App.4th at 1213 (purpose of doctrine "is not to protect every unsatisfied creditor, but rather to
3  afford him protection, where some conduct amounting to bad faith makes it inequitable, under the
4  applicable rule above cited, for the equitable owner of a corporation to hide behind its corporate
5  veil") (*quoting Associated Vendors*, 210 Cal.App.2d at 842).

6       Here, Plaintiff fails to make a single allegation regarding any bad faith on the part of the
7  eight Defendants or any potential injustice which may result if they are not held as alter egos of
8  the Defendants.  There is no allegation that Defendants used the corporate form to perpetrate a
9  fraud, circumvent a statute, or accomplish some other inequitable purpose.  Alleging that the
10  parent entities allegedly created shell entities to purportedly avoid liabilities of managing a skilled
11  nursing facility is not enough and does not explain provide any factual allegations as to how
12  independently licensed, totally separate facilities engaged in wrongful behavior in connecting
13  with the allegedly inadequate staffing.

14       Further, the California Department of Public Health ("CDPH") strictly regulates the
15  licensing and corporate structure of skilled nursing facilities.  Each skilled nursing facility must
16  provide readily available information to the public regarding its corporate structure and
17  ownership information, including, among other things, the names and addresses of the parent
18  organizations of the management company, an officer or director of the parent organizations, and
19  any person or organization having an ownership or control interest of five percent or more in the
20  management company.  Cal. Health & Safety Code § 1267.5.

21       Information regarding the specific ownership details with respect to Defendants such as
22  the details described in section 1267.5 can be found on-line at:
23  https://www.alirts.oshpd.ca.gov/LicenseFacilitySearchResults.  Defendants must disclose their
24  corporate ownership structure publicly and to the CDPH.  This open disclosure of corporate
25  structure, coupled with the presumption of corporate separateness raises a very high bar for
26  Plaintiff.  Her conclusory alter ego allegations do not come close to stating a claim against these
27  Defendants.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10   DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION (CASE NO. C 10-05839 CW)

**D.     Plaintiff's Conspiracy and Agency Allegations Also Fail as a Matter of Law.**

Plaintiff's conclusory conspiracy and agency allegations also cannot manufacture a claim where no direct claim exists.  *See Dufour v. Be LLC,* 2010 WL 2560409 *8 (N.D. Cal. 2010) (dismissing alter ego claims with prejudice because plaintiff "fail[ed] to allege sufficient facts to support this legal conclusion"); *Alfus v. Pyramid Tech. Corp.,* 745 F.Supp. 1511, 1521 (N.D. Cal. 1990) ("In civil conspiracy actions, courts insist upon a higher level of specificity than is usually demanded of other pleadings.... [P]laintiff's allegations that defendants conspired to commit fraud are insufficient both for failure to plead conspiracy with the requisite particularity and for failure to plead an agreement to participate in an unlawful act."); *Olsen v. Idaho Bd. of Medicine,* 363 F.3d 916, 929 (9th Cir. 2004) (a plaintiff must plead "specific facts to support the existence of the claimed conspiracy") (citation omitted); *see also Burns v. County of King,* 883 F.2d 819, 821 (9th Cir. 1989) (a pleading alleging conspiracy must present specific, non-conclusory allegations of subjective intent, a required element of such a claim).

Plaintiff fails to allege anything regarding the purported formation of the conspiracy, what wrongful activities each Defendant specifically engaged in, when this happened, and how this conspiracy caused Plaintiff any damages (impossible since Plaintiff never resided at any Defendant facility) or how any Defendants owed her any duty not to commit the alleged wrong. Plaintiff simply states that Defendants are somehow "jointly responsible" and that they allegedly conspired to form "excessively fragmented" entities into shell corporations to maximize profits at the expense of care.  Plaintiff simply lumps all the Defendants together.

In addition, as noted, Defendants are legally separate; and such entities cannot conspire. *See, e.g., Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (1994). *See also Freeman v. San Diego Ass'n of Realtors,* 77 Cal. App.4th 171, 189 (1999), citing *Copperweld Corp. v. Independent Tube Corp.*, 467 U.S. 752 (1984)] ("the mere existence of separate incorporated entities does not automatically suffice to show that these entities are capable of combining; instead the entities must have separate and independent interests that are combined by the unlawful conspiracy.  Under *Copperweld*, legally distinct entities do not conspire if they "pursue[ ] the common interests of the whole rather than interests separate from

1 those of the [group] itself. . . .)". For the same reason, Plaintiff's agency claim also fails: The

2 "mere allegation of agency is sufficient to plead agency" is circular and of no legal effect. *Moore*

3 *v. Regents of University of California*, 51 Cal. 3d 120, 134 fn. 12 (1990).

### III.   CONCLUSION

Plaintiff cannot state any valid claim against any Defendant facility where she never resided, or against other Defendants with she had no business. If the Court does not dismiss the entire action, as all Defendants have requested, then the Court should grant this Motion to Dismiss, without leave to amend, and dismiss the action against these moving Defendants with prejudice.

Dated:   March 24, 2011                    Respectfully submitted.

                                              MANATT, PHELPS & PHILLIPS

                                              By: /s/ Barry S. Landsberg
                                                    Barry S. Landsberg
                                                    *Attorneys for Defendant*
                                                    EVERGREEN AT LAKEPORT, L.L.C.

*Filer's Attestation: Pursuant to General Order No. 45, Section X(B) regarding signatures, Brad W. Seiling hereby attests that concurrence in the filing of this document has been obtained.*