Robert J. Nelson (State Bar No. 132797)
Lexi J. Hazam (State Bar No. 224457)
Andrew S. Kingsdale (State Bar No. 255669)
**LIEFF, CABRASER, HEIMANN &**
**BERNSTEIN, LLP**
275 Battery St., 29th Floor
San Francisco, CA  94111-3339
Tel:    (415) 956-1000
Fax:    (415) 956-1008

Kathryn A. Stebner (State Bar No. 121088)
Sarah Colby (State Bar No. 194475)
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, CA  94102
Tel:    (415) 362-9800
Fax:    (415) 362-9801

*Attorneys for Plaintiffs*
[Additional Counsel listed on signature page]

Michael D. Thamer (State Bar No. 101440)
**LAW OFFICES OF MICHAEL D. THAMER**
Old Callahan School House
12444 South Highway 3
Post Office Box 1568
Callahan, California 96014-1568
Tel:    530.467.5307
Fax:    530.467.5437

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Phyllis Wehlage, on her behalf and on behalf of others similarly situated,<br><br>           Plaintiff,<br><br>vs.<br><br>EmpRes Healthcare, Inc.; EHC Management LLC; EHC Financial Services LLC; Evergreen California Healthcare LLC; Evergreen at Arvin LLC; Evergreen at Bakersfield LLC; Evergreen at Lakeport LLC; Evergreen at Heartwood LLC; Evergreen at Springs Road LLC; Evergreen at Tracy LLC; Evergreen at Oroville LLC; Evergreen at Petaluma LLC; Evergreen at Gridley (SNF) LLC; and DOES 1 THROUGH 100,<br><br>           Defendants. | CASE NO.  C10-05839 CW<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1.  VIOLATION OF HEALTH & SAFETY CODE SECTION 1430(b) based on failure to meet minimum staffing requirements– H&S Code §1276.5<br>2.  VIOLATION OF HEALTH & SAFETY CODE SECTION 1430(b) based on failure to provide adequate qualified nursing staff–H&S Code §1599.1<br>3.  UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES (B&P Code § 17200 *et seq.*)<br>4.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT (Civ. Code § 1750 *et seq.*)<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, on their own behalf and on behalf of a class of similarly situated persons, based on information and belief and the investigation of counsel, except for information based on personal knowledge, hereby alleges as follows:

## NATURE OF ACTION

1.    This class action lawsuit is brought under California Health and Safety Code section 1430(b); the Unfair Competition Law, California Business & Professions Code sections 17200 *et seq.*; and the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA"); to redress the pervasive and intentional failure to provide sufficient and adequate qualified nurse staffing for elderly and dependent adult residents at skilled nursing facilities owned, licensed, operated, administered, managed, directed, and/or controlled by defendants within the State of California.

2.    Understaffing is uniformly viewed as one of the primary causes of the inadequate care and often unsafe conditions in skilled nursing facilities.  Numerous studies have shown a direct correlation between inadequate staffing and serious care problems including, but not limited to, a greater likelihood of falls, pressure sores, significant weight loss, incontinence and premature death.  For example, in *Quality of Care in Nursing Homes:  An Overview*, Office of Inspector General (March 1999) the authors found that California facilities staffed at, or above, the safe staffing standard had less than half the rate of pressure sores and incontinence than facilities staffed below the safe staffing standard.

3.    Since January 1, 2000, all skilled nursing facilities in California have been required to provide at least 3.2 hours of direct nursing care per patient per day ("NHPPD"), pursuant to Health & Safety Code section 1276.5.  The 3.2 hour NHPPD requirement under Section 1276.5 represents the minimum staffing required for patients at skilled nursing facilities.  Depending on patient needs and other factors, higher levels of direct nursing care may be warranted.  Significantly, expert studies into the staffing levels required to meet basic patient needs confirm that the minimum recommended level for skilled nursing staffing is 4.1 hours NHPPD, including 0.75 hours worked by registered nurses ("RNs").

4.    As alleged in more detail below, defendants' skilled nursing facilities in California have failed to meet the 3.2 hour NHPPD minimum requirements, to employ adequate numbers of qualified

nursing staff given aggregate patient acuity levels at the Facilities, and to employ sufficient numbers of registered nurses on numerous days during the Class Period (as defined below).  Not surprisingly, many of these facilities have an inordinately high number of reported complaints, deficiencies and/or citations arising from inadequate care of their elderly and dependent adult residents, as reflected in records maintained by the California Department of Health Services.

5.    Defendants have failed to disclose and concealed that they do not operate their nursing facilities in compliance with applicable nurse staffing laws, including laws such as Health & Safety Code sections 1276.5 and 1599.1, and that, in fact, their facilities fail to provide minimum and adequate qualified nurse staffing.

6.    Defendants' conduct is deceptive, misleading and made with the intent to induce elderly and dependent adults to become residents, and to remain as residents, at defendants' facilities under a false pretense, namely, that defendants will provide the minimum and adequate nursing staff required by law.  Defendants' misleading and deceptive conduct is particularly egregious, given that it is aimed at and intended to affect elderly and dependent adults, who are among the most vulnerable members of our society.

## **PARTIES**

7.    Plaintiff Phyllis Wehlage is a resident of Lake County.  She is and was at all relevant times a disabled person as defined under Cal. Civil Code § 1761(g).  She was a resident at Evergreen Lakeport Healthcare located in Lakeport, California during most of 2008.

8.    Plaintiff John Michael Beauvais is a resident of Kern County.  He is the son and successor-in-interest to the Estate of Lavonne Beauvais.  Ms. Beauvais resided in Evergreen Bakersfield Post Acute Care from November 27 to December 24, 2007.  She was at all relevant times a senior citizen as defined under Cal. Civ. Code § 1761(f).

9.    Plaintiff Maria Hernandez is a resident of Kern County.  She was a resident of Evergreen Arvin Healthcare from approximately November 2008 to May 2010.  She is and was at all relevant times a senior citizen as defined under Cal. Civ. Code § 1761(f).  Her granddaughter, Isabel S. Simental-Collier, is a resident of Sacramento County.  She holds Power of Attorney and has requested that the Court appoint her as Ms. Hernandez's Guardian ad Litem for purposes of this lawsuit.

10.     Plaintiff Earl Roberts is a resident of Solano County.  He is and was at all relevant times a disabled person as defined under Cal. Civil Code § 1761(g).  He was a resident at Springs Road Healthcare in Vallejo from approximately July 2010 to January 2011.

11.     Plaintiff Sherri Avalos is a resident of Colusa County.  She is the daughter and successor-in-interest to the Estate of David Townsend.  David Townsend resided in Twin Oaks Post Acute Rehab in Chico, CA in March 2009.  He resided in Evergreen Gridley Healthcare in Gridley, CA in July 2009.  He was at all relevant times a senior citizen as defined under Cal. Civil Code § 1761(f).

12.     Plaintiff Marie-Louise Patch is a resident of Solano County.  She is the widow and successor-in-interest to the Estate of Arthur Patch.  At all relevant times, Arthur Patch was a senior citizen as defined under Cal. Civ. Code § 1761(f).  He resided in Heartwood Avenue Healthcare in Vallejo, CA from approximately July to August 2008.

13.     Plaintiff Howard Richard Starts is a resident of Napa County.  He is and was at all relevant times a disabled person as defined under Cal. Civil Code § 1761(g) and a senior citizen as defined under Cal. Civ. Code § 1761(f).  Mr. Starts was a resident of Petaluma Health and Rehabilitation in Petaluma, CA from approximately October 2008 to March 17, 2009.  His wife, Marilyn Starts, is a resident of Sonoma County.  She holds Power of Attorney and has requested that the Court appoint her as Mr. Starts' Guardian ad Litem for purposes of this lawsuit.

14.     Plaintiff Dea Barry is a resident of San Joaquin County.  She is the daughter of and successor-in-interest to the Estate of Patricia Brush.  Ms. Brush resided at New Hope Post Acute Care from approximately July to September 2008 and November 2009 to March 2010.  At all relevant times, Ms. Brush was a senior citizen as defined under Cal. Civ. Code § 1761(f).

15.     Plaintiff Harold Benveniste is a resident of Orange County.  He is and was at all relevant times a senior citizen as defined under Cal. Civ. Code § 1761(f).  He was a resident at Fullerton Post Acute Care in Fullerton, CA for approximately one month in December 2010.

16.     Plaintiff Paige Melendez is a resident of Butte County.  She is the daughter of and successor-in-interest to Maxine P. Moore.  Maxine P. Moore was at all relevant times a senior citizen as defined under Cal. Civ. Code § 1761(f).  She was a resident at Olive Ridge Post Acute Care in Oroville, CA from approximately April 8, 2011 to April 17, 2011.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

17.     Plaintiff Tamara Dillon is a resident of Butte County.  She is the daughter of and successor-in-interest to Tom Dillon.  Tom Dillon was at all relevant times a senior citizen as defined under Cal. Civ. Code § 1761(f).  He was a resident at Olive Ridge Post Acute Care from approximately 2005 until December 2007.

18.     Defendant EmpRes Healthcare, Inc. ("EmpRes") is a Washington corporation.  It is the sole equity member of defendant EHC Management, LLC; defendant EHC Financial Services, LLC; and defendant Evergreen California Healthcare, LLC.  EmpRes is the successor to Evergreen Healthcare, Inc.  Each of these entities shares officers and/or managing members, and each shares a principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington 98662. During the class period, EmpRes regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California.

19.     Defendant Evergreen California Healthcare, LLC ("Evergreen California") is a Washington corporation with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington 98662.  It is the sole equity member of all but one of the California skilled nursing facility defendants (the "Facilities"), which are part of Division 1, Regions 1-1 and 1-2, of the "Evergreen chain," as referenced in defendants' filings with the California Department of Health ("DPH").  It was the sole equity member of defendant Evergreen at Gridley (SNF) LLC until its sale to a third party on April 1, 2010.  During the class period, Evergreen California regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California.

20.     Defendant EHC Management, LLC ("EHC Management") is a limited liability company formed and existing under the laws of the State of Washington with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  During the class period, EHC Management regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

21.    Defendant EHC Financial Services, LLC ("EHC Financial") is a limited liability company formed and existing under the laws of the State of Washington with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  During the class period, EHC Financial regularly conducted business in the State of California and—either directly or through its wholly-owned subsidiaries and/or affiliated companies—owned, leased, licensed, operated, administered, managed, directed, and/or controlled skilled nursing facilities in California.

22.    For purposes of this complaint, defendants EmpRes, Evergreen California, EHC Management, and EHC Financial will be referred to collectively as "Evergreen" or "the Parent Entities."

23.    Defendant Evergreen at Lakeport LLC, dba Evergreen Lakeport Healthcare ("Evergreen Lakeport") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Lakeport, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Lakeport was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Evergreen.

24.    Defendant Evergreen at Arvin LLC, dba Evergreen Arvin Healthcare ("Evergreen Arvin") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Arvin, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Arvin was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Evergreen.

25.    Defendant Evergreen at Bakersfield LLC, dba Evergreen Bakersfield Post Acute Care ("Evergreen Bakersfield") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Bakersfield, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Bakersfield was owned, leased, licensed, operated,

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

administered, managed, directed, and/or controlled by, or otherwise affiliated with, Evergreen.

26.    Defendant Evergreen at Springs Road, LLC, dba Springs Road Healthcare ("Evergreen Springs Road") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Vallejo, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Springs Road was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Evergreen.

27.    Defendant Evergreen at Chico, LLC, dba Twin Oaks Post Acute Rehab ("Evergreen Chico") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Chico, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Chico was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Evergreen.

28.    Defendant Evergreen at Heartwood Avenue, LLC, dba Heartwood Avenue Healthcare ("Evergreen Heartwood") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Vallejo, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Heartwood was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Evergreen.

29.    Defendant Evergreen at Tracy LLC, dba New Hope Post Acute Care ("Evergreen Tracy") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Tracy, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Tracy was owned, leased, licensed, operated, administered, managed, directed, and/or

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

controlled by, or otherwise affiliated with, Evergreen.

30.    Defendant Evergreen at Gridley (SNF) LLC, dba Evergreen Gridley Healthcare ("Evergreen Gridley") was a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Gridley, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Gridley was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Evergreen.

31.    Defendant Evergreen at Petaluma LLC, dba Petaluma Health and Rehabilitation ("Evergreen Petaluma") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Petaluma, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Petaluma was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Evergreen.

32.    Defendant Evergreen at Oroville LLC, dba Olive Ridge Post Acute Care ("Evergreen Oroville") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Oroville, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Orovile was owned, leased, licensed, operated, administered, managed, directed, and/or controlled by, or otherwise affiliated with, Evergreen.

33.    Defendant Evergreen at Fullerton LLC, dba Fullerton Post Acute Care ("Evergreen Fullerton") is a limited liability company formed and existing under the laws of the State of Washington, with its principal place of business at 4601 NE 77th Avenue, Suite 300, Vancouver, Washington.  It is a "skilled nursing facility," as defined in Health & Safety Code section 1250, and operating in Fullerton, CA under a license granted to it by the State of California Department of Public Health.  During the class period, Evergreen Fullerton was owned, leased, licensed, operated, administered, managed,

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

directed, and/or controlled by, or otherwise affiliated with, Evergreen.

34.    Each of the entities referenced in paragraphs 23 through 33 above is a "skilled nursing facility" as defined in Health & Safety Code section 1250.  For purposes of this Complaint, each such entity is referred to as a "Facility" and, collectively, the "Facilities."

35.    Defendants operate as a joint venture, single enterprise, are agents of one another, are alter egos, and/or conspire to increase profits by ignoring California's requirements for adequate and minimum nurse staffing.

36.    There is sufficient unity of interest and ownership between EmpRes, EHC Financial, Evergreen California, EHC Management (collectively "Evergreen" or "the Parent Entities"), and the Facilities, and each of them, such that the acts of one are for the benefit of all and can be imputed to the acts of the others.

37.    The equitable ownership in each of Defendants is virtually identical, and they share the same officers, directors, and employees:

    a)    The sole equitable member of each of the Facilities is and has always been Evergreen California.

    b)    From January 1, 2007 until July 30, 2008, the members and equitable owners of Evergreen California were Andrew Martini (88.95%), Anne Nipp (4.99%), Jan Tietjen (2.17%), Dale Patterson (2.89%), and Aaron Besen (1%).  In turn, Evergreen California owned 100% of the Facilities. As a result, the Facilities were owned by Martini (88.95%), Nipp (4.99%), Tietjen (2.17%), Patterson (2.89%), and Besen (1%)

    c)    On July 30, 2008, EmpRes purchased the interests of Nipp, Tietjen, Patterson and Besen in Evergreen Healthcare.  Martini contributed his interest in Evergreen California and "other companies" for 100% of the interest in EmpRes.  This included all interest in the Facilities.

    d)    On December 30, 2008, Martini sold 100% of his stock in EmpRes to the EmpRes Healthcare, Inc. Employee Stock Ownership Trust (the "ESOP").  Martini was appointed trustee of the ESOP Trust.

    e)    Currently, the EmpRes ESOP owns 100% of EmpRes stock.  EmpRes owns 100% of Evergreen California.  Evergreen California remains the sole member (and 100% owner) of the

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

Facilities. Dale Patterson is the CEO of EmpRes.  On information and belief, Martini is on the Board of Directors.

f)    The EmpRes ESOP is also known as the B13, Inc. Employee Stock Ownership Trust.  Martini is its trustee.  According to a UCC Financing Statement filed with the Washington Secretary of State on January 8, 2009 which lapses on January 8, 2014, Martini is a secured party in all of the ESOP's "right, title and interest in and to 12,440,164 shares of Common Stock of B13, Inc. represented by Certificate Number 4 (the "Securities"), and all of Debtor's right, title and interest in and to all general intangibles and investment property now or hereafter arising from the Securities and all proceeds therefrom."

g)    EHC Management's sole equity member is EmpRes.  Martini was the CEO and Manager for EHC Management through 2006. Nipp has been the Manager and CEO of EHC Management since 2007. Patterson was its Assistant Manager in 2003.  Besen was its Vice President and General Counsel from January 1, 1999 through December 31, 2006.  Tietjen was the Assistant Manager in 2007 and possibly after that. On information and belief, Martini is currently the President of EHC Management.

h)    EHC Financial's sole equity member is EmpRes.  Dale Patterson has been the Manager and CEO of EHC Financial since approximately August 2007.  On information and belief, Martini was the Manager prior to Patterson.

38.    The Facilities are undercapitalized and rely on the assets and capital of the other defendants to conduct their business and obtain and maintain their licensing from DPH.  There is a commingling of funds among defendants:

a)    When the Facilities were formed there was no capital contribution, as evidenced by the Operating Agreement for each of the Facilities.  Initial capital contributions of their only member, Evergreen California Healthcare, LLC, were "Cash: $0".

b)    Evergreen Healthcare, Inc. and/or Evergreen Healthcare Management have paid the licensing fee to DHS on at least one occasion for more than one of the Facilities.  Even when the licensing fee comes from a bank account held by the Facility, Dale Patterson—the Assistant Manager for each of the Facilities, the CFO of EHC Financial, and the CEO of EmpRes—signs the check.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

c)    To meet the Facilities' financial responsibility requirements, Evergreen California has provided letters to the California Department of Health Services on behalf of its subsidiaries, as evidence that the subsidiaries have sufficient resources to operate those Facilities for a period of at least 45 days, based upon multiple Facilities having access to the same multimillion dollar line of credit at the same bank. These letters show commingling of funds and that the Parent Entities exercise budgetary control over its subsidiaries.  They also show that, standing alone, each of the Facilities is undercapitalized.

d)    The Long-Term Care Facility Integrated Disclosure and Medi-Cal Cost Reports submitted by the Facilities to California's Office of Statewide Health and Planning Development ("OSHPD") disclose significant "Inter-Company Cash" transfers between the facility licensees and "related parties", namely Evergreen Healthcare, Inc.  For example, during the Fourth Quarter of 2009, the following transactions were disclosed:

- an Inter-Company Cash transfer of $90,766 to Evergreen Lakeport from Evergreen Healthcare;

- a receivable to Evergreen Arvin Healthcare Center from Evergreen Healthcare of $533,334;

- a receivable to Evergreen Bakersfield Healthcare Center from Evergreen Healthcare, of $4,024,616;

- an Inter-Company Cash transfer from Evergreen Gridley Healthcare to Evergreen Healthcare of $959,986;

- an Inter-Company Cash transfer to Evergreen Center of Vallejo-Heartwood transfer of $402,330 from Evergreen Healthcare;

- an Inter-Company Cash transfer of $4,453,376 to New Hope Post-Acute from Evergreen Healthcare;

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

- an Inter-Company Cash transfer of $1,205,862 to Olive Ridge Post Acute Care from Evergreen Healthcare;

- an Inter-Company Cash transfer of $202,835 from Evergreen Health and Rehab Center – Petaluma to Evergreen Healthcare;

- an Inter-Company Cash transfer of $61,454 from Springs Road Healthcare to Evergreen Healthcare;

- an Inter-Company Cash transfer of $565,571 to Twin Oaks Post Acute Rehab from Evergreen Healthcare.

e)       Security Agreements for lines of credit, signed on behalf of all borrowers (including EHC Management, Evergreen Healthcare, Evergreen California, and the Facilities in California and in the other states in which Evergreen operates) by Martini as CEO of EHC Management and as Manager of the Facilities, provide, among other things, that:

- "The Business operations of each borrower are interrelated and complement one another, and such companies have a common business purpose, with intercompany bookkeeping. . .

- Each Borrower acknowledges that it will enjoy significant benefits from the business conducted by the other Borrowers. . .

- Borrowers acknowledge that the credit provided hereunder is on terms more favorable than any Borrower acting alone would receive and that each Borrower benefits directly and indirectly from all advances hereunder . . ."

f)       A UCC Financing Filing Statement with the Washington Secretary of State on December 1, 2004 with a lapse date of December 1, 2014, indicates that EHC Management, LLC has granted to Healthcare Business Credit Corporation a security interest in all of EHC Management's assets

Page 12
FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

and all of the assets of additional debtors, which include but are not limited to the Facilities in California. Evergreen's long-term care facilities and their parents in Washington, Oregon, Nevada, Montana, and Idaho are also listed as debtors.

g)    A UCC Financing Filing Statement with the Washington Secretary of State on October 21, 2009 with a lapse date of October 21, 2014, indicates that EmpRes, EHC Financial, EHC Management, Evergreen California and all of the Facility licensees in California and in the other states in which Evergreen operates have granted a security interest in their assets to Healthcare Finance Group, LLC.

39.    EmpRes, Evergreen California, EHC Management, and EHC Financial ("the Parent Entities") exert substantial control over the day-to-day operations of the Facilities, including but not limited to decisions which directly affect the facility's NHPPD numbers:

a)    The Operating Agreements for the Facilities list one Manager, Martini, who by virtue of being the only Manager, is given all rights and powers necessary and convenient to the operation of their business, including but not limited to, expending funds, managing and operating the business, executing agreements and documents on behalf of the business, and borrowing or raising money.

b)    Each of the Facilities has entered into an Agreement to Provide Management Services with EHC Management, LLC. These agreements are signed twice by Martini, as Manager for the particular Facility and as Manager of EHC Management, LLC. Under the Agreements, EHC Management is entitled to management fees in a sum equal to up to seven percent (7%) of Revenue. At the time, Martini held the majority interest in the Parent Entities and was the Manager of Evergreen California.

c)    Through 2006, Andrew Martini was the Manager of both EHC Management and

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

the individual Facilities.  He signed the yearly licensing renewal applications for the Facilities as their Manager.

        d)     Anne Nipp, was the CEO and Manager of EHC Management from 2007 through 2009.  She began to sign the licensing renewal applications for the Facilities in 2007.  She has been a member of the Facilities since December 20, 2005.  Until July 2008, Nipp held a 4.99% ownership interest in Evergreen California, Evergreen Healthcare, and the Facilities.  On information and belief, she continues to hold a substantial interest in EmpRes through the ESOP.  On information and belief, Nipp is the current CEO and Manager of EHC Management and signs all licensing documents for the Facilities.

        e)     The applications for licensing renewals for the Facilities were signed by the same individuals who at the time owned and ran Evergreen California, EHC Management, and the Facilities—Nipp from 2007 to 2010 and Martini from 1999 through 2006, with the exception of 2003, when Patterson signed.  These individuals stated under penalty of perjury: "I/we accept responsibility to . . . (c) comply with health and safety codes and regulations concerning licensing and fire safety.  I/we declare under penalty of perjury that the statements on this notice and any accompanying attachments are correct to my/our best knowledge."

        f)     In his communications with the DPH, Marcus Weenig, the Regional Operations Manager for the California Facilities, uses EmpRes letterhead.

        g)     The current Administrator of Evergreen Lakeport, Paul Medlin, testified to the following under oath on June 6, 2011:

- He has been the Administrator since January 2009;

- He reports directly to Marcus Weeing, the Regional Operations Manager for "Evergreen Healthcare" in California;

- Although listed as a member of Evergreen Lakeport's Governing Board in documents filed with the DPH, he did not know he was on the Board, nor did he know what the Board does.  He has never attended a Board meeting;

- He is unaware of the Inter-Company Cash transfer of $90,799 to Evergreen Lakeport from Evergreen Healthcare in the Fourth Quarter of 2009 described in Paragraph

Page 14
FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1    15(d), above;

2            •        He does not own any stock in the EmpRes ESOP, nor did he even know

3    that it existed;

4            •        He is unaware that Evergreen Lakeport is a co-debtor on a line of credit;

5            •        EHC Management does the payroll for Evergreen Lakeport.  Only EHC

6    Management has the ability to make changes to payroll and staffing reports;

7            •        EHC Management initiates the budget process and approves it.  Medlin's

8    only role in creating the budget is to tell EHC Management his predictions for the resident census in the

     upcoming year.  He cannot make changes to the budget.

9

10           •        He is not provided with a copy of the budget.  Marcus Weenig will tell

11   him when he is over budget and that he must come up with an action plan to get the Facility back within

     its budget;

12

13           •         Medlin puts the income received by Evergreen Lakeport into a bank

     account.  He does not know what happens to it after that;

14

15           •        EHC Management writes the checks for any expenses of Evergreen

     Lakeport;

16           •        He needs approval to spend more than $500;

17           •        He cannot enter into a contract without the approval of EHC Management;

18           •        He does not prepare or sign the application for the Facility's license

19   renewal.  EHC Management handles the application, but he does not know who signs it;

20           •        He does not know who pays the licensing fee for the Facility; and

21           •        The Nursing Manual and the Administrative Policies and Procedures

22   Manual for Evergreen Lakeport are prepared and provided by EHC Management.  Only EHC

23   Management can make changes to the manuals.

24           h)        On information and belief, the parent entities have a centralized computer system

25   and network utilized by all Facilities and Evergreen commonly referred to as the "Evergreen

26   neighborhood."  The system provides data from the Facilities to the officers of Evergreen, division

27   managers, regional managers, executive directors, and the Evergreen billing department. This data is

28

Page 15
FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

reviewed daily and includes an "executive dashboard" which indicates actual labor usage versus the budgeted amount. A red light appears on the executive dashboard if a Facility is over budget, a yellow light appears if it is in danger of exceeding a budget, and a green light appears if a Facility is on budget. This helps Evergreen manage all Facilities on a daily basis without being physically present.

i)    The administrator for each Facility reports directly to a "Regional Manager" employed by Evergreen.  According to the administrator's job description, a requirement of each administrator is to assure that the Facility is within the budget set by Evergreen.

j)    Certain reports and documents, including the "28-Day Report" (which calculates the NHPPD ratio between staff and residents for each department at each facility), therapy reports, and management reports, are accessible through Evergreen's centralized computer network to Facility managers as well as managers in the Evergreen offices located in Washington.

k)    On information and belief, if a Facility is provided a statement of deficiency during a DPH inspection, it is required to report that deficiency to Evergreen.  Evergreen decides whether to appeal that deficiency or provide some other response.

l)    Budgets for each of the Facilities which determine the level of staffing a Facility is allowed are set, maintained and produced by Evergreen in their Vancouver, Washington offices and are not maintained or drafted by the Facilities themselves.

m)    The Core Systems Manual, drafted by Evergreen, includes policies that all Facilities must follow. One such policy requires that each Facility report regulatory activity to the Evergreen offices in Vancouver, Washington at least in part by contacting those offices immediately when an inspector from the DPH arrived to inspect a Facility.

n)    EHC Financial Services, LLC provides accounting services for EHC Management, LLC, Evergreen California Healthcare, LLC, EmpRes Healthcare, Inc, and the Facilities. EHC Financial Services, LLC handles the accounts payable for itself as well as EHC Management, LLC. It also handles all copier and postage machine leases as well as all property taxes, schedules, and building leases for all Evergreen entities, including the Facilities.

o)    Facilities may purchase "pre-approved" supplies through DSSI, an online purchasing system, that automatically sends order information to EHC Financial Management, LLC for

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

upload into EHC Financial Management, LLC's accounting system. Certain supplies must be pre-approved by Evergreen.

p)    All defendants freely use the Evergreen trademarks with no consideration or royalty fee.  All defendants use the Evergreen logo, and their written materials describe Evergreen as if it were a single entity.

q)    Evergreen uses the same Admission Agreement for all of its skilled nursing facilities in California.  The cover page of the agreement has the Evergreen trademark, Evergreen's catchphrase, "A Commitment to Caring", and the title "Evergreen Healthcare Admission Agreement California".

40.    In response to frustration regarding identifying the entities responsible for nursing homes, the federal government recently enacted the Nursing Home Transparency Act (42 U.S.C. § 1320a-3) to help untangle the organizational structure of nursing home chains.  The information required to be disclosed under the Act will not be available to the public until March of 2013.  *See also* New York Times, September 23, 2007, "More Profit and Less Nursing ant Many Nursing Homes" (describing how for-profit nursing home corporations are dividing themselves into many separate shell companies in order to avoid being held accountable to both the public regulatory system and residents). www.nytimes.com/2007/09/23/business/23nursing.html.

41.    The Facilities are wholly owned, leased, operated, managed, and/or controlled by the Parent Entities, which fail to recognize the uniqueness and independence of the Facilities.  As demonstrated by the allegations above, there is such a unity of interest and ownership between and among all defendants that adherence to the fiction of the separate existence of the Facilities from the Parent Entities would, under these circumstances, sanction a fraud and/or promote injustice.

42.    On information and belief, Evergreen deliberately set up empty shells and agents so that it could deceive the public and the residents as to who was actually responsible for the decisions made at the Facilities, while also siphoning funds out of these Facilities.  Evergreen is the alter-ego of the Facilities, and any corporate veil should be pierced.

43.    Defendants have created a maze of multiple undercapitalized entities—which in reality operate as a single entity—in order to avoid liability, including liability for failure to adequately staff

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

their Facilities in violation of California law.  Adherence to the fiction that these are separate corporate entities would promote injustice and allow EmpRes, EHC Management, EHC Financial and Evergreen California to escape liability for obligations incurred as much for their benefit as for that of the Facilities.

44.    At all times herein mentioned defendants, and each of them, was the agent, partner, joint venturer, representative, and/or employee of the remaining defendants, and was acting within the course and scope of such agency, partnership, joint venture, and/or employment. Furthermore, in engaging in the conduct described below, defendants were all acting with the express or implied knowledge, consent, authorization, approval, and/or ratification of their co-defendants.

45.    Defendants, and each of them, are jointly and separately responsible for the conduct alleged herein and the injuries to the named plaintiffs and members of the class.

46.    Defendants, and each of them, are directly liable because their actions have caused the Facilities to ignore California's minimum staffing requirements and thereby caused harm to the plaintiffs and the members of the class.

47.    The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants designated herein as Does 1 through 100, inclusive, are presently unknown to plaintiffs and thus sued by such fictitious names.  On information and belief, each of the defendants designated herein as "Doe" is legally responsible for the events and actions alleged herein, and proximately caused or contributed to the injuries and damages as hereinafter described.  Plaintiffs will seek leave to amend this complaint, in order to show the true names and capacities of such parties, when the same has been ascertained.

## JURISDICTION AND VENUE

48.    This Court has jurisdiction over all causes of action asserted herein.  Defendants are subject to the personal jurisdiction of this Court because each defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market through participation in skilled nursing facilities located in California, derivation of substantial revenues from California, and other activities, so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

49.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1446.

50.     Venue is proper in this District under 28 U.S.C. § 1391(a), based on the facts, without limitation, that:  this Court is a court of competent jurisdiction; defendants were subject to personal jurisdiction in the District at the time this action commenced based on conducting substantial business in this District, including without limitation, the ownership, administration, management, and/or operation of Evergreen Lakeport, Evergreen Springs Road, Evergreen Heartwood, and Evergreen Petaluma; a substantial part of the events or omission giving rise to the plaintiffs' claims arose in this District; plaintiffs Wehlage, Barry, Roberts, and Starts reside in this District; a portion of defendants' liability arose in this District; and certain acts upon which this action is based occurred in part in this District.

## GENERAL ALLEGATIONS

51.     Defendants have owned, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California since at least 1998.  In owning, operating, managing, administrating, controlling, licensing, and/or supervising various skilled nursing facilities throughout the State of California, defendants must comply with California statutory and regulatory law governing the operation of skilled nursing facilities.

52.     In 1999, in response to growing concern over the low levels of direct patient staffing and quality of care in nursing homes, the California Legislature amended Health & Safety Code section 1276.5 to increase the minimum nursing staff requirement to 3.2 hours of direct patient care per day, effective January 2000.  This legislation eliminated the prior rule that permitted skilled nursing facilities to double the hours for licensed or registered nurses.

53.     Section 1276.5, as amended, sates in pertinent part:

[C]ommencing January 1, 2000, the minimum number of actual nursing hours per patient required in a skilled nursing facility shall be 3.2 hours, except as provided in Section 1276.9.

For the purposes of this section, "nursing hours" means the number of hours of work performed per patient day by aides, nursing assistants, or orderlies plus two times the number of hours worked per patient day by registered nurses and licensed vocational nurses (except directors of nursing in facilities of 60 or larger capacity) . . . except that nursing hours for skilled nursing

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

facilities means the actual hours of work, without doubling the hours performed per patient day by registered nurses and licensed vocational nurses.

H&S Code § 1276.5 (a) and (b)(1).  The Facilities are not exempt under Health & Safety Code section 1276.9.

54.     Generally, only the hours of certified nurse assistants, licensed vocational nurses and registered nurses are considered to determine whether staffing ratios at skilled nursing facilities are in compliance with the requirement of Section 1276.5.  The 3.2 NHPPD requirement is calculated on a facility-wide basis over a 24-hour period.

55.     In addition, Health & Safety Code section 1559.1 establishes a "Patient's Bill of Rights" for residents in skilled nursing facilities that requires, among other things, that the skilled nursing facilities "employ an adequate number of qualified personnel to carry out all functions of the facility." An essential function of a skilled nursing facility is the provision of nursing services.

56.     At all relevant times, defendants have been required to staff the Facilities with sufficient levels of qualified personnel so as to comply with the 3.2 hour NHPPD requirement of Section 1276.5.

57.     At all relevant times, defendants have been required to employ adequate numbers of qualified nursing staff given aggregate patient acuity levels at the Facilities and to employ sufficient numbers of registered nurses.

58.     Defendants portray and promote the Facilities as meeting or exceeding all statutory and regulatory nurse staffing requirements.  In their standard admission agreements and in postings at the Facilities, defendants uniformly and systematically claim to adhere to the Patient's Bill of Rights, as set forth in Section 72527 of the California Administrative Code, which in part requires defendants to provide an "adequate number of qualified personnel."  The admission agreement states that by signing it, the resident agrees that s/he has read the list of patients' rights, resolved any questions, and received a copy.

59.     In addition, defendants have also promised the State of California that they will meet all state and federal requirements regarding the operation, management, administration and/or ownership of skilled nursing facilities.  In particular, as part of the initial licensing and annual renewal process for the Facilities, defendants promise to comply with the Health and Safety Code and applicable regulations,

925484.1

which include minimum and adequate staffing requirements.

60.    Defendants' representations track their duty under California law to provide sufficient nursing staff and related services.  Unfortunately, the actual nurse staffing defendants provide falls well short of their representations and their legal duty.  On information and belief, defendants have systematically and continuously failed to comply with the 3.2 hour NHPPD requirement under Section 1276.5 on 20% or more days during the Class Period. Defendants have failed to disclose and concealed these continuing legal violations to the public and members of the class.

61.  On information and belief, defendants have failed to employ adequate numbers of qualified nursing staff given aggregate patient acuity levels at the Facilities, and/or to employ sufficient numbers of registered nurses on many days during the Class Period. Defendants have failed to disclose and concealed these continuing legal violations to the public and members of the class.

62.    Despite their failure to adequately staff the Facilities, defendants wrongly received in the millions of dollars in aggregate payments from residents and/or their family members.  These monies were solicited and collected under the false and misleading pretense that defendants complied with California staffing laws and would remain in compliance.

63.    In reality, defendants failed to provide nurse staffing at levels that the named plaintiffs and class members reasonably expected to receive.  As such, the named plaintiffs and class members lost money and were injured in fact as a result of defendants' failure to comply with the minimum and adequate nurse staffing requirements.  They were also deprived of their rights under Sections 1276.5 and 1599.1 to reside in a skilled nursing facility that provided sufficient and adequate nursing personnel to comply with California law.

64.    During their stays at the Facilities, each of the named plaintiffs (or their deceased relatives) suffered one or more of the following indignities and other harms that directly resulted from failure to maintain minimum and adequate qualified nurse staffing at their respective facilities, including without limitation:  no response or long response times to call lights; lack of assistance with grooming and bathing; inadequate attention to toileting needs, resulting in residents' sitting in undergarments and bedclothes soaked in urine or feces; rough and painful handling by staff; lack of assistance with eating; failure to provide fluids as needed, resulting in dehydration and frequent urinary tract infections; falls;

pressure sores; failure to administer medications or improper administration of medications; loss of personal items and medical devices; failure to provide pain control; over-sedation; and lack of proper hygiene and infection control measures.

## CLASS ACTION ALLEGATIONS

65.     This action is brought on behalf of the named plaintiffs identified above and all similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  The class is defined as:

a.      **Evergreen Class.**  All persons who resided at one of Evergreen's California Facilities from November 15, 2006 through the date of class certification (the "Class Period").  The claims alleged in the First and Second Causes of Action under Health & Safety Code section 1430(b) are asserted on behalf of the Evergreen Class against the Parent Entities.

b.      **Facility Subclasses.**  The claims alleged in the First and Second Causes of Action under Health & Safety Code section 1430(b) are asserted on behalf of each Facility Subclass against the Facility in which the relevant named plaintiffs and class members resided.

i.      **Evergreen Lakeport Class.**  All persons who resided at Evergreen Lakeport from November 15, 2006 through the date of class certification.  Plaintiff Phyllis Wehlage represents this subclass.

ii.     **Evergreen Bakersfield Class.**  All persons who resided at Evergreen Bakersfield from November 15, 2006 through the date of class certification.  Plaintiff John Michael Beauvais represents this subclass.

iii.    **Evergreen Arvin Class.**  All persons who resided at Evergreen Arvin from November 15, 2000 through the date of class certification. Plaintiff Maria Hernandez, by and through her Guardian Ad Litem Isabel Simental-Collier, represents this subclass.

iv.     **Evergreen Springs Road Class.**  All persons who resided at Evergreen Springs Road from November 15, 2006 through the date of class certification.  Plaintiff Earl Roberts represents this subclass.

v.      **Evergreen Heartwood Avenue Class.**  All persons who resided at

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

Evergreen Heartwood Avenue from November 15, 2006 through the date of class certification.  Plaintiff Marie-Louise Patch represents this subclass.

vi.    **Evergreen Petaluma Class.**  All persons who resided at Evergreen Petaluma from November 15, 2006 through the date of class certification.  Plaintiff Howard Richard Starts, by and through his Guardian Ad Litem Marilyn Starts, represents this subclass.

vii.    **Evergreen Tracy Class.**  All persons who residing at Evergreen Tracy from November 15, 2006 through the date of class certification. Plaintiff Dea Barry represents this subclass.

viii.    **Evergreen Oroville Class.**  All persons who resided at Evergreen Oroville from November 15, 2006 through the date of class certification. Plaintiffs Tamara Collins and Paige Melendez represent this subclass.

ix.    **Evergreen Gridley Class.**  All persons who resided at Evergreen Gridley from November 15, 2006 through April 1, 2010.  Plaintiff Sherri Avalos represents this subclass.

x.    **Evergreen Fullerton Class.**  All persons who resided at Evergreen Fullerton from January 21, 2007 through the date of class certification. Plaintiff Harold Benveniste represents this subclass.

xi.    **Evergreen Chico Class.**  All persons who resided at Evergreen Chico from January 21, 2007 through the date of class certification.  Plaintiff Sherri Avalos represents this subclass.

c.    **Private Pay Subclasses.**  Within each of the above-referenced Facility Subclasses, a Private Pay Subclass is asserted on behalf of all facility residents who made payments to defendants, or any of them, through their own funds during the Class Period.  In addition to claims under Health & Safety Code section 1430(b), the Private Pay Subclasses assert the claims alleged in the Third Cause of Action (Bus. & Prof. Code section 17200 et seq.) and the Fourth Cause of Action (Civil Code section 1770 et seq.) against the relevant Facility and all Parent Entities.

66.    Excluded from the above-referenced class and subclasses are:  (i) the defendants, any

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

entity in which the defendants have a controlling interest; the officers, directors, and employees of any defendant; and the legal representatives, heirs, successors, and assigns of defendants; (ii) any judge assigned to hear this case (or any spouse or family member of any assigned judge); (iii) any juror selected to hear this case.

67.     This action is brought as a class action and may properly be so maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure and applicable case law.  In addition to injunctive relief, this action seeks recovery for economic damages arising from defendants' understaffing, such as recovery of statutory damages and/or moneys paid by named plaintiffs and the class as a result of defendants' failure to disclose and concealment of the fact that the Facilities did not and would not comply with nurse staffing requirements, including Health & Safety Code section 1276.5 and Health & Safety Code section 1599.1.  This action does not seek recovery for personal injuries that may have been caused by inadequate staffing at defendants' facilities.

68.     **Numerosity of the Class**.  Members of the class are so numerous that their individual joinder herein is impracticable.  The precise number of members of the class and their addresses are presently unknown to plaintiffs.  The precise number of persons in the class and their identities and addresses may be readily ascertained from defendants' records.  If deemed necessary by the Court, members of the class may be notified of the pendency of this action by mail, supplemented by published notice.

69.     **Existence of Predominance of Common Questions of Fact and Law.**  Common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class.  These common legal and factual questions include, without limitation:

a.     whether all or some of the Facilities failed to comply with the 3.2 hour NHPPD minimum staffing requirements of Health & Safety Code section 1276.5 during the Class Period;

b.     whether defendants failed to employ an adequate number of qualified nursing personnel to carry out all of the functions of their facilities in violation of the Health & Safety Code section 1599.1 during the Class Period;

c.     whether defendants' understaffing their facilities violates any right(s) of residents

as set forth in the Patient's Bill of Rights in Section 72527 of Title 22 of the California Administrative Code;

        d.    whether defendants' conduct violates Health & Safety Code section 1430(b); and

        e.    whether defendants' conduct violates the Consumer Legal Remedies Act, Civ. Code § 1770 et seq.; and

        f.    whether defendants engage in unfair, unlawful or deceptive business practices in connection with their management, administration and operation of the Facilities.

70.    **Typicality.**  The claims of the named plaintiffs are typical of the claims the Evergreen Class and the Facility and Private Pay Subclasses they seek to represent.  On information and belief, the named plaintiffs and Facility Subclass members resided at their respective Facility during the Class Period on days when it failed to meet the 3.2 hour NHPPD minimum staffing requirements of Health & Safety Code section 1276.5 and/or failed to provide sufficient qualified nursing personnel as required under Health & Safety Code section 1599.1.

71.    All named plaintiffs (or their deceased relatives) incurred costs and expenses in connection with their stays at the Facilities.  In addition, many of the named plaintiffs including, without limitation, Phyllis Wehlage, Sherri Avalos, Maria Hernandez, Tamara Collins, Earl Roberts, Dea Barry, and Howard Richard Starts paid private funds to the defendants. All named plaintiffs have sustained actual damages and injury in fact.

72.    **Adequacy**.  The named plaintiffs are adequate representatives of the class on whose behalf this action is prosecuted.  Their interests do not conflict with the interests of the class.  Also, they have retained competent counsel with experience in class action litigation who will prosecute this action vigorously.

73.    **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of the claims asserted herein, pursuant to Federal Rule of Civil Procedure 23(b)(3).  The statutory damages, restitution and other potential recovery for each individual member of the class are modest relative to the substantial burden and expense of individual prosecution of these claims.  Given the amount of the individual class members' claims, few, if any, class members could afford to seek legal redress individually for the wrongs complained of herein.  Even if the class members could afford

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

individual litigation, the court system could not.  Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, in a single trial.

74.    Additionally, the above-referenced class may be certified under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the class as a whole.

**FIRST CAUSE OF ACTION UNDER HEALTH & SAFETY CODE SECTION 1430(b) (BASED ON VIOLATIONS OF MINIMUM NURSE STAFFING REQUIREMENTS)  AGAINST ALL DEFENDANTS**

75.    Plaintiffs refer to, and incorporate herein by this reference, all preceding paragraphs.

76.    California Health & Safety Code section 1430(b) provides that "a current or former resident or patient of a skilled nursing facility as defined in subdivision (c) of section 1250 . . . may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patient's Bill of Rights in Section 72527 of Title 22 of the California Code of Regulations, [which incorporates Health & Safety Code section 1599.1)], or any other right provided for by federal or state law or regulation."

77.    Section 1430(b) provides for a remedy of statutory damages "up to $500" per violation, together with a right to injunctive relief, attorneys' fees and costs.  H&S Code §1430(b).  The remedies in Section 1430(b) are cumulative to any other remedies provided by law.  H&S Code §1430(c).

78.    Defendants have violated and continue to violate Section 1430(b) by, among other things, failing to comply with the 3.2 hour NHPPD requirement of Cal. Health & Safety Code section 1276.5 at their Facilities.

79.    As a result of defendants' conduct, the named plaintiffs and class members have suffered injury and are entitled to statutory damages in an amount to be determined at trial, as well as injunctive relief, attorneys' fees and costs.

**SECOND CAUSE OF ACTION UNDER HEALTH & SAFETY CODE SECTION 1430(b)**

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

**(BASED ON VIOLATIONS OF ADEQUATE, QUALIFIED NURSE STAFFING REQUIREMENTS)  AGAINST ALL DEFENDANTS**

80.    Plaintiffs refer to, and incorporate herein by this reference, all preceding paragraphs.

81.    Defendants have violated and continue to violate Section 1430(b) by, among other things, failing to provide an adequate number of qualified nursing personnel to carry out all functions at the Facilities, in violation of Cal. Health & Safety Code § 1599.1.  Without limitation, defendants' violations of section 1599.1 are evidenced by: (a) violations of the statutory minimum 3.2 NHPPD requirements; (b) the failure to employ adequate numbers of qualified nursing staff given aggregate patient acuity levels at the Facilities; and (c) the failure to employ sufficient numbers of registered nurses.

82.    As a result of defendants' conduct, the named plaintiffs and class members have suffered injury and are entitled to statutory damages in an amount to be determined at trial, as well as injunctive relief, attorneys' fees and costs.

**THIRD CAUSE OF ACTION FOR UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS PRACTICES AGAINST ALL DEFENDANTS**

83.    Plaintiffs refer to, and incorporate herein by this reference, all preceding paragraphs.

84.    Defendants, and each of them, have engaged in unlawful business acts and practices. Such acts and practices constitute unfair business practices in violation of Business and Professions Code section 17200 *et seq.*

85.    In particular, defendants, and each of them, have engaged in unlawful business acts and practices by violating numerous laws, statutes and regulations including, without limitation:

a.    Failing to maintain adequate levels of skilled nursing staff necessary to meet the 3.2 NHPPD requirement, in violation of Health & Safety Code section 1276.5;

b.    Failing to employ an adequate number of qualified nursing personnel, in violation of Health & Safety Code section 1599.1; and

c.    Failing to disclose and concealing that the Facilities did not and would not comply with nurse staffing requirements, including Health & Safety Code section 1276.5 and Health & Safety Code section 1599.1.

86.    Defendants, and each of them, have also engaged in fraudulent business practices by

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

virtue of their failure to disclose and active concealment of the actual levels of nurse staffing at their California skilled nursing facilities.

87.    Members of the general public (including without limitation persons admitted to and/or residing in the Facilities during the Class Period, and their family members and/or representatives) have been and are likely to be deceived by the statements, representations, omissions, and other conduct by defendants as alleged herein.

88.    The acts and practices of defendants, and each of them, also constitute unfair business acts and practices within the meaning of Business & Professions Code section 17200, *et seq.*, in that the conduct alleged herein is immoral, unscrupulous and contrary to public policy, and the detriment and gravity of that conduct outweighs any benefits attributable to such conduct.  Further, defendants' conduct threatens actual and incipient violations of numerous laws and regulations intended to protect elderly and dependent adult residents, and, in addition, defendants' conduct violates the policy or spirit of these laws and otherwise results in a significant harm or threat of harm to elderly residents.

89.    Defendants' conduct presents a continuing threat of harm to the public in that, among other things, defendants continue to mislead elderly and dependent adults (and their family members and/or representatives) into agreeing to be admitted to their skilled nursing facilities without disclosing the inadequate staffing at those Facilities.

90.    All named plaintiffs incurred costs and expenses in connection with their stays at the Facilities.  In addition, many of the named plaintiffs including, without limitation, Phyllis Wehlage, Sherri Avalos, Maria Hernandez, Tamara Collins, Earl Roberts, Dea Barry, and Howard Richard Starts paid money from their own funds to the defendants based on the reasonable expectation that the Facilities would be staffed in compliance with applicable laws.  As a result, all named plaintiffs lost money and sustained injury in fact as a result of defendants' conduct.  The true facts are that the Facilities regularly failed to comply with the minimum and adequate nurse staffing requirements under California law.  As a direct and proximate result of the defendants' unfair, unlawful and deceptive business practices, the named plaintiffs and members of the general public have sustained substantial economic harm as alleged herein.  Likewise, as a direct and proximate result of the defendants' unfair, unlawful and deceptive business practices, members of the general public (including without limitation

925484.1

persons admitted to and/or residing in the Facilities during the Class Period, and their family members and/or representatives) have been harmed and continue to be harmed by defendants' conduct.

91.    Plaintiffs seek an injunction that requires that defendants immediately cease acts of unfair and fraudulent business acts or practices as alleged herein, and to enjoin defendants from continuing to engage in any such acts or practices in the future.  At present, the named plaintiffs seek restitution on behalf of the following Facility Subclasses:  Lakeport, Twin Oaks, Gridley, Arvin, Oroville, Springs Road, Tracy, and Petaluma.  Plaintiffs also seek attorneys' fees and all other remedies permitted by law.

## FOURTH CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT AGAINST ALL DEFENDANTS

92.    Plaintiffs refer to, and incorporate herein by this reference, all preceding paragraphs.

93.    Defendants have violated and continue to violate the Consumers Legal Remedies Act, Civil Code §§ 1750 *et seq.* ("CLRA") by their failure to disclose, and active concealment of, the material facts.  Defendants did not disclose and actively concealed that the Defendant Facilities have failed to comply with California's minimum and adequate nurse staffing requirements as alleged herein, and continue to do so.  Defendants' conduct constitutes unfair and deceptive acts or practices in violation of section 1770(a) of the CLRA, including, without limitation, sections 1770(a)(5) and 1770(a)(7).

94.    The named plaintiffs are "senior citizens" and/or "disabled persons" as defined by Civ. Code §1761(f) and (g), and "consumers" as defined in for purposes of Civ. Code § 1761(d). Defendants are "persons" as defined by Civil Code section 1761(c).  The provision of skilled nursing services constitutes a "transaction" covered by the CLRA.

95.    Defendants owed a duty to disclose the true facts regarding staffing levels at the Facilities because, among other things: (a) defendants had exclusive knowledge of material facts not known to the named plaintiffs and the class at the time of the subject transactions; and (b) defendants actively concealed material facts from the named plaintiffs and the proposed class.

96.    Without limitation, defendants had superior knowledge of the California requirements for minimum and adequate qualified nurse staffing at skilled nursing facilities, and the actual staffing levels at their facilities.  Defendants had daily access to the staffing, scheduling, payroll, and resident census

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

and other information necessary to determining whether the Facilities were complying with the 3.2 NHPPD minimum requirement and the adequate, qualified staffing requirement under section 1599.1. Defendants made daily calculations with respect to nurse staffing levels at the Facilities which showed numerous days during the Class Period on which the Facilities did not even meet the bare minimum staffing requirements.  Further, on information and belief, defendants were repeatedly advised by Facility personnel of understaffed conditions. The named plaintiffs did not know of these or other material facts concerning the understaffed conditions at the Facilties.

97.    Through deficiency notices and other reports issued by the California Department of Public Health (previously Department of Health Services), defendants had direct notice of staffing violations at the Facilities.  While some (but not all) DPH reports are publicly available, in practice, the public's access to such reports is limited at best. Without question, defendants had better access to, and/or were in a superior position to know, the results of DHS audits, DHS inspections, and numerous deficiencies or citations issued by the State of California concerning staffing conditions at the Facilities.

98.    In addition, defendants actively concealed or suppressed the true facts concerning nurse staffing levels at the Facilities.  Without limitation, defendants: (a) repeatedly represented to the California regulators that they were complying with applicable nurse staffing requirements to obtain cost reimbursement and/or maintain licensure status for the Facilities, even though such representations were false; (b)  representing to the consuming public (including the named plaintiffs) that the Facilities would comply with the Patient's Bill of Rights (which includes the right to adequate, qualified staffing), despite defendants' knowledge that the Facilities were understaffed; (c) intentionally failing to disclose to residents or prospective residents that the Facilities regularly fell below the bare minimum staffing requirement, despite actual knowledge of such violations; (d) responding to DPH deficiency notices by promising to improve staffing, but failing to do so; (e) failing to comply with the nurse staffing posting requirements under state and federal law by posting projected (as opposed to actual) staffing, or simply failing to post any nurse staffing information; and (f) responding to resident complaints with misleading assertions that staffing concerns were either isolated incidents and/or would be addressed.

99.    Defendants' concealment is further evidenced by recent deposition testimony from employees from Evergreen's Lakeport facility.  Under oath, those witnesses admitted that the Lakeport

facility regularly failed to meet the 3.2 NHPPD minimum requirement. The repeated violations of the minimum staffing requirement occurred despite the fact that, in making its 3.2 NHPPD calculations, Lakeport improperly included hours by Assistant Directors of Nursing (ADONs), MDS Coordinators, Directors of Staff Development, and other personnel even when they were not providing direct patient care. The Lakeport facility continued to admit new residents despite direct knowledge that the Facility was not complying with the bare minimum staffing requirements. The failure to meet the 3.2 NHPPD minimum requirement was not disclosed to residents.

100.    The facts concealed and/or not disclosed by defendants are material. The named plaintiffs, class members and reasonable consumers would have considered the failure to meet the minimum and adequate nursing staffing requirements to be important (if not critical) in deciding whether to enter into the subject transactions and reside in defendant's Facilities. The named plaintiffs and class members reasonably expected that the defendants' Facilities, as licensed skilled nursing facilities, would meet or exceed these minimum and adequate staffing requirements. Had the true facts concerning the understaffed conditions at the Facilities been disclosed, the named plaintiffs and class members would not have agreed to reside at the Facilities.

101.    The named plaintiffs and class members could not reasonably have been expected to learn or discover the non-disclosed facts concerning defendants' pervasive and ongoing understaffing violations. Defendants knew that their persistent and extensive staffing violations were not reasonably likely to be discovered. Defendants intentionally concealed, suppressed and/or failed to disclose the true facts with the intent to defraud the named plaintiffs and class members. Defendants also knew that the failure to meet the minimum and adequate qualified nurse staffing posed a health and safety risk to the named plaintiffs and class members.

102.    As a direct and proximate result of the defendants' conduct, the named plaintiffs and the class members have suffered actual damages, and have been harmed and continue to be harmed by defendants' conduct. Among other things, the named plaintiffs and class members paid money to defendants, or otherwise incurred costs and expenses, for nursing services that failed to meet reasonable expectations. Defendants' conduct presents a continuing threat of harm to the public in that, among other things, defendants continue to fail to disclose and/or conceal the fact that the Facilities do not

provide the minimum and adequate, qualified staffing required under California law.  Despite

knowledge that the Facilities regularly fall below the bare minimum nurse staffing requirements,

defendants continue to induce elderly and vulnerable citizens to enter their Facilities.

103.    Despite receipt of written notice and an opportunity to cure the violations alleged herein

pursuant to Civil Code section 1782(a), defendants have failed to provide any remedy or appropriate

relief for their CLRA violations within the statutory 30-day time period.  As such, the named plaintiffs

and class members are entitled to compensatory, monetary and punitive damages, in addition to

equitable and injunctive relief, attorneys' fees and costs, and any other remedies available under the

CLRA. At present, the named plaintiffs seek CLRA damages on behalf of the following Facility

Subclasses:  Lakeport, Twin Oaks, Gridley, Arvin, Oroville, Springs Road, Tracy, and Petaluma.

103.    As "senior citizens" and/or "disabled persons," the named plaintiffs and class members

are entitled to additional, enhanced CLRA damages of up to $5000.

## **PRAYER**

WHEREFORE, plaintiffs pray for judgment as follows:

1.    For a Court order certifying that the action may be maintained as a class action;

2.    For appropriate injunctive relief pursuant to Health & Safety Code § 1430(b), Civil Code

§ 1780(a)(2), and Bus. & Prof. Code § 17203.

3.    For restitution and any other monetary relief permitted by law;

4.    For statutory damages in an amount to be proven at trial, including $500.00 in statutory

damages for each day a Facility was understaffed in violation of each Class Member's rights pursuant to

Health & Safety Code § 1430(b);

5.    For punitive damages;

6.    For treble damages pursuant to Civil Code section 3345;

7.    For enhanced CLRA damages of up to $5000 pursuant to Civil Code section 1780(b);

8.    For pre-judgment interest, according to law;

9.    For post-judgment interest, according to law;

10.    For attorneys' fees and costs; and

11.    For such other and further relief as the Court may deem just and proper.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

1

2

## JURY TRIAL DEMANDED

3

Plaintiffs demand a jury trial on all issue so triable.

4

5

DATED:        June 8, 2011

6

7

*/s/ Robert J. Nelson*

Robert J. Nelson (State Bar No. 132797)

8

Email: rnelson@lchb.com

Lexi J. Hazam (State Bar No. 224457)

9

Email:  lhazam@lchb.com

Andrew S. Kingsdale (State Bar No. 255669)

10

Email: akingsdale@lchb.com

**LIEFF, CABRASER, HEIMANN &**

**BERNSTEIN, LLP**

11

275 Battery St., 29th Floor

San Francisco, CA  94111-3339

12

Tel:    (415) 956-1000

Fax:    (415) 956-1008

13

14

Kathryn A. Stebner (State Bar No. 121088)

Email:  kathryn@stebnerassociates.com

15

Sarah Colby (State Bar No. 194475)

Email:  sarah@stebnerassociates.com

**STEBNER AND ASSOCIATES**

16

870 Market Street, Suite 1212

San Francisco, CA  94102

17

Tel:    (415) 362-9800

Fax:    (415) 362-9801

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

Michael D. Thamer (State Bar No. 101440)
Email: Michael@trinityinstitute.com
**LAW OFFICES OF MICHAEL D. THAMER**
Old Callahan School House
12444 South Highway 3
Post Office Box 1568
Callahan, California 96014-1568
Tel:    (530)467-5307
Fax:    (530) 467-5437

W. Timothy Needham (State Bar No. 96542)
Email: tneedham@janssenlaw.com
Michael J. Crowley (State Bar  No. 102343)
Email: mcrowley@janssenlaw.com
**JANSSEN, MALLOY, NEEDHAM, MORRISON,**
**REINHOLTSEN & CROWLEY, LLP**
730 Fifth Street
Eureka, CA  95501
Tel:    (707) 445-2071
Fax:    (707) 445-8305

Christopher J. Healey (State Bar No. 105798)
Email: chealey@luce.com
Aaron Winn (State Bar No. )
Email: awinn@luce.com
Christopher Rowlett (State Bar No. )
Email: crowlett@luce.com
**LUCE, FORWARD, HAMILTON & SCRIPPS**
600 West Broadway, Suite 2600
San Diego, CA  92101
Tel:    (619) 236-1414
Fax:    (619 232-8311

Robert J. Nelson (State Bar No. 132797)
Email:  rnelson@lchb.com
Robert S. Arns (State Bar No. 65071)
Email:  rsa@arnslaw.com
Jonathan E. Davis (State Bar No. 191346)
Email:  jed@arnslaw.com
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:    (415) 495-7800
Fax:    (415) 495-7888

Ed Dudensing (State Bar No. 182221)
Email:  ed@dudensinglaw.com
**THE LAW OFFICE OF ED DUDENSING**
925 G Street
Sacramento, CA  95814
Tel:    (916) 448-6400
Fax:    (916) 448-6401

C. Brooks Cutter (State Bar No. 121407)
Email:  bcutter@kcrlegal.com

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1

1

2

3

4

5

6

7

8

9

10

John Robert Parker, Jr. (State Bar No. 257761)
Email:  jparker@kcrlegal.com
**KERSHAW CUTTER & RATINOFF**
401 Watt Avenue
Sacramento, CA 95864
Tel:    (916) 448-9800
Fax:    (916) 669-4499

Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

925484.1