**United States District Court**
For the Northern District of California

1

2

3

4          IN THE UNITED STATES DISTRICT COURT

5        FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   PHYLLIS WEHLAGE, on her behalf and on        No. 10-05839 CW
    behalf of others similarly situated,

8                                                ORDER GRANTING
            Plaintiff,                           DEFENDANTS' MOTION
9                                                TO DISMISS OR STRIKE
        v.                                       NEW PLAINTIFFS AND
10                                               DEFENDANTS (Doc. No.
    EMPRES HEALTHCARE INC., et al.,              55), GRANTING EMPRES
11                                               ENTITIES' MOTION ON
            Defendants.                          ALTER EGO LIABILITY
12   _____/   (Doc. No. 56),
                                                 GRANTING IN PART
13                                               EVERGREEN LAKEPORT'S
                                                 MOTION TO DISMISS
14                                               (Doc. No. 57) AND
                                                 DENYING AS MOOT
15                                               EMPRES ENTITIES'
                                                 MOTION TO DISMISS
16                                               BASED ON PERSONAL
                                                 JURISDICTION (Doc.
17                                               No. 54)

18       Pursuant to the Court's May 25, 2011 Order (Docket No. 46),

19   Plaintiff has filed a First Amended Complaint (1AC) re-alleging her

20   original three claims based on violation of California Health and

21   Safety Code section 1430(b); violation of California's Unfair

22   Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq.; and

23   violation of the California Consumers Legal Remedies Act (CLRA),

24   Cal. Civ. Code § 1750, et seq.  In addition to adding allegations

25   to remedy the deficiencies noted in the May 25, 2011 Order,

26   Plaintiff has added two new Defendants and ten individuals as named

27   Plaintiffs who reside at the individual skilled nursing facilities

28

United States District Court
For the Northern District of California

1  defined in the May 25, 2011 Order as the Evergreen Entities.  <u>See</u>

2  May 25, 2011 Order at 1-2.

3        Defendants[1] file three separate motions to dismiss under

4  Federal Rule of Civil Procedure 12(b)(6) for failure to state a

5  claim upon which relief can be granted.  In the first motion

6  (Docket No. 55), the EmpRes and Evergreen Entities move to dismiss

7  or strike all claims asserted against the Evergreen Entities and

8  all references to the Evergreen Entities as parties in the action,

9  all claims asserted by the newly added plaintiffs and all

10  references to the two new "Facility Defendants" on the ground that

11  such allegations were not authorized by the Court's May 25, 2011

12  Order.

13        In the second motion (Docket No. 56), the EmpRes Entities move

14  to dismiss based on Plaintiff's failure to allege alter ego

15  liability.  In the third motion (Docket No. 57), Evergreen Lakeport

16  moves to dismiss the three claims asserted against it and the

17  EmpRes Entities join in this motion.  The EmpRes Entities have also

18  filed a motion to dismiss under Rule 12(b)(2) for lack of personal

19  jurisdiction (Docket No. 54).  This motion will be moot if the

20  Court grants the EmpRes Entities' motion to dismiss under Rule

21  12(b)(6) for failure to allege alter ego liability.  <u>See</u> <u>KEMA, inc.</u>

22
23        [1]Moving Defendants are EmpRes Healthcare, Inc.; EHC
   Management, LLC; EHC Financial Services, LLC; and Evergreen
   California Healthcare, LLC (collectively, EmpRes Entities) and
24  Evergreen Lakeport.  The claims against Defendants Evergreen at
   Arvin, LLC; Evergreen at Bakersfield, LLC; Evergreen at Heartwood
25  Avenue, LLC, erroneously sued as Evergreen at Heartwood, LLC;
   Evergreen at Springs Road, LLC; Evergreen at Tracy, LLC; Evergreen
26  at Oroville, LLC; Evergreen at Petaluma, LLC; and Evergreen at
   Gridley (SNF), LLC (collectively, Evergreen Entities) were
27  dismissed without leave to amend in the May 25, 2011 Order.

28                                    2

United States District Court
For the Northern District of California

v. Koperwhats, 2010 WL 3464708, *8 (N.D. Cal.) (declining to address Rule 12(b)(2) motion because all claims were dismissed under Rule 12(b)(6)).[2]

Plaintiff has filed a consolidated opposition and Defendants have filed a consolidated reply.  The motions were taken under submission and decided on the papers.  Having considered all the papers filed by the parties, the Court grants the first and second motions to dismiss, and grants in part and denies in part the third motion to dismiss.  The fourth motion to dismiss based on lack of personal jurisdiction is denied without prejudice as moot.

BACKGROUND

The factual background is provided in the May 25, 2011 Order. In that order, the Court dismissed the section 1430(b) and the UCL claims against the EmpRes and Evergreen Entities on the ground that Plaintiff failed to plead a factual basis for her assertion that Evergreen Lakeport, the licensee of the skilled nursing facility (SNF) in which she resides, is the agent for the EmpRes or Evergreen Entities, nor did her allegations support invocation of the alter ego doctrine.  The Court dismissed the claims against the EmpRes Entities with leave to amend for Plaintiff to add alter ego allegations and dismissed the claims against the Evergreen Entities without leave to amend because Plaintiff did not have standing to sue any entity except Evergreen Lakeport, where she resided.

_____

[2]In the May 25, 2011 Order, the Court denied without prejudice the EmpRes Entities' Rule 12(b)(2) motion because the claims against them were dismissed with leave to amend.  The Court allowed the EmpRes Entities to renew their Rule 12(b)(2) motion, if Plaintiff brought claims against them in an amended pleading.

The Court dismissed the CLRA claim against the EmpRes and Evergreen Entities because Plaintiff had not alleged that they had deceived her in the sale of services to her or that she suffered damages as a result.  This claim against the EmpRes Entities was dismissed with leave to amend, and against the Evergreen Entities was dismissed with prejudice.

In regard to the claims against Evergreen Lakeport, the Court ruled that equitable abstention was not warranted and that the primary jurisdiction doctrine did not apply.  The Court ruled that Plaintiff had stated claims under section 1430(b) and the UCL for unlawful business acts, but that she had failed to identify, with the required specificity, the basis of her CLRA claim.  Plaintiff was granted leave to amend the CLRA claim only.

DISCUSSION

I. Motion to Dismiss or Strike New Plaintiffs and Defendants

Federal Rule of Civil Procedure 15(a)(1) provides:

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

In the May 25, 2011 Order, the Court granted Plaintiff leave to amend her complaint and specified how she could do so. Plaintiff was not granted leave to add new parties to her action. Therefore, Plaintiff is attempting to amend her complaint without leave of the Court.

Under Rule 15(a)(1), a party may amend its pleading once as a

United States District Court<br>For the Northern District of California

4

United States District Court
For the Northern District of California

matter of course.  However, the time for doing so is limited to twenty-one days after service of the complaint or service of a motion to dismiss under Rule 12(b).  Plaintiff filed her complaint in 2010, and more than twenty-one days has passed since she served it on Defendants.  Defendants filed their first motions to dismiss on February 18, 2011, giving Plaintiff until March 11, 2011 to file an amended complaint as a matter of course.  Plaintiff's 1AC was filed on June 8, 2011, outside of this time period.  Because the time for Plaintiff to amend her complaint as a matter of course has elapsed, if she wishes to amend her complaint, she must obtain the opposing parties' written consent or leave of the Court.  Fed. R. Civ. Pro. 15(a)(2).  Therefore, Defendants' motion to dismiss or strike the claims by and against the new parties is granted. Furthermore, any claims re-stated against the Evergreen Entities are dismissed.  However, the allegations referring to the Evergreen Entities that support Plaintiff's claims against the remaining Defendants are not stricken.  If Plaintiff wishes to make additional amendments to her 1AC, she must move for leave to amend.

II. EmpRes Entities' Motion Regarding Alter Ego Liability

In paragraphs 37(a)-(h), 38(a)-(g), 39(a)-(q), and 41-44 of her 1AC, Plaintiff has added allegations addressing how the EmpRes Entities are subject to liability through the doctrine of alter ego liability.  For instance, the allegations in paragraph 37 specify that all Defendants share the same officers and directors and that the equitable member of each of the Evergreen Entities is Evergreen California Healthcare; the allegations in paragraph 38 claim that the Evergreen Entities are undercapitalized and rely on the assets

and capital of the EmpRes Entities; and the allegations in paragraph 39 specify how the EmpRes Entities exert substantial control over the day-to-day operations of the Evergreen Entities, including but not limited to decisions which directly affect each entity's hours of direct nursing care per patient per day (NHPPD), which is the subject of this action.

The EmpRes Entities argue that Washington alter ego law applies to this case, but that under the alter ego law of either Washington or California, Plaintiff's allegations are insufficient to establish alter ego liability.[3]  Plaintiff responds that California alter ego law applies, but that under either State's law, she has sufficiently alleged alter ego liability.

A. Choice-of-law

1. Contract Choice-of-Law Provision

Plaintiff argues that California law applies because the Admission Agreement between Plaintiff and Evergreen Lakeport contains a choice-of-law provision stating: "This Agreement is governed by and in accordance with the laws of the United States of America and the state where this Facility is located."[4]  Evergreen Lakeport is located in California.  The parties to the Admission Agreement are the individual resident, or that resident's

---

[3]In the May 25, 2011 Order, the Court acknowledged that Defendants are organized under Washington law, but because they did not take the position that Washington law controls this case, the Court applied California's alter ego law.

[4]Plaintiff requests that the Court take judicial notice of the Admission Agreement because she refers to it in ¶ 58 of her 1AC and it forms the basis of her claims under the UCL and CLRA.  The Court grants the request.

United States District Court
For the Northern District of California

authorized representative, and Evergreen Lakeport.[5]  It governs the

parties' mutual responsibilities during the resident's stay at

Evergreen Lakeport, such as Evergreen Lakeport's monthly fee, the

resident's financial responsibilities to pay the fee, financial and

insurance arrangements, the resident's consent for treatment, and

the resident's termination, transfer or discharge.

The parties agree the Court exercises diversity jurisdiction

over this action.  "When a federal court sitting in diversity hears

state law claims, the conflicts laws of the forum state are used to

determine which state's substantive law applies."  389 Orange

Street Partners v. Arnold, 179 F.3d 656, 661 (9th Cir. 1999).

California law thus determines the effect of the contractual

choice-of-law provision.  Under California law, there is a "strong

policy favoring enforcement of [choice-of-law] provisions."

Nedlloyd Lines B.V. v. Sup. Ct., 3 Cal. 4th 459, 464-65 (1992).  To

determine whether a choice-of-law provision is enforceable,

California courts follow the Restatement (Second) of Conflict of

Laws § 187, which provides that a choice-of-law provision will be

enforced unless either,

> (a) the chosen state has no substantial relationship to
> the parties or the transaction and there is no other
> reasonable basis for the parties choice, or
>
> (b) application of the law of the chosen state would be
> contrary to a fundamental policy of a state which has a
> materially greater interest than the chosen state in the
> determination of the particular issue and which, under

---

[5]Plaintiff states that the Admission Agreement is the same for
all Evergreen Entities' facilities in California.  However, because
the claims against the Evergreen Entities have been dismissed, the
only relevant agreement is the one between Plaintiff and Evergreen
Lakeport.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    the rule of § 188, would be the state of the applicable
2    law in the absence of an effective choice of law by the
     parties.

3    Restatement (Second) of Conflict of Laws § 187(2).

4        However, the contract containing the choice-of-law provision

5    must govern the claim that is alleged to arise from it.  Nedlloyd,

6    3 Cal. 4th at 469; Schlumberger Logelco Inc. v. Morgan Equipment

7    Co., 1996 WL 251951, *2 (N.D. Cal.).

8        Defendants argue that, under Schlumberger, the choice-of-law

9    provision in the Admission Agreement does not apply.  In

10   Schlumberger, the defendants contended that a choice-of-law

11   provision in a contract for work on an oil drilling project

12   determined the law on alter ego liability.  Id. at *1-2.  The court

13   found that the alter ego theory was not controlled by the choice-

14   of-law provision in the oil drilling contract because the alter ego

15   claim did not arise from or relate to the contract.  Id. at *3

16   (citing Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp

17   345, 348-49 (M.D.N.C. 1995) (choice-of-law provision in contract

18   not applied to determine alter ego liability because that issue was

19   collateral to and not part of parties' negotiations or expectations

20   with respect to the contract); United Trade Assocs. Ltd. v Dickens

21   & Matson (USA) Ltd., Inc., 848 F. Supp. 751, 759 (E.D. Mich. 1994)

22   (same)).

23       Plaintiff responds that Washington Mutual Bank v. Sup. Ct., 24

24   Cal. 4th 906, 917 (2001), which held that contractual choice-of-law

25   provisions should be applied broadly, is controlling, and that

26   Schlumberger is not applicable because it preceded Washington

27   Mutual.  In Washington Mutual, the California Supreme Court

28                                    8

United States District Court
For the Northern District of California

explained that the advocate of a choice-of-law clause bears the burden of establishing that its alleged claims fall within its scope.  Id. at 916; Estrella v. Freedom Fin. Network, LLC, 2010 WL 2231790, *4 (N.D. Cal.) (Washington Mutual requires a court to conduct a choice-of-law analysis for each claim or issue).  In Estrella, the court found that a choice-of-law clause in a consumer contract for debt relief applied to all of the asserted claims, including claims under the CLRA and UCL.  Estrella, 2010 WL 2231790, at *5.

Neither Washington Mutual nor Estrella addressed an alter ego issue; they both determined whether the plaintiff's substantive claims were governed by the contract in question.  Here, there is no disagreement that Plaintiff's three substantive claims against Evergreen Lakeport are governed by the Admission Agreement.  To bring the EmpRes Entities under the auspices of the Admission Agreement and its choice-of-law provision, Plaintiff argues that "because all Defendants are closely related to the Facilities who signed the agreement, the parties' choice-of-law provision applies to all Defendants." Opp. at 5.  This reasoning illustrates that the alter ego issue is collateral to the Admission Agreement.

Therefore, the Court holds that the choice-of-law provision in the Admission Agreement does not apply to the alter ego analysis.

2. Statutory Choice-of-Law Analysis

Where a statute dictates the choice-of-law, the court need not apply a common law choice-of-law analysis.  Barclays Discount Bank Ltd. v. Levy, 743 F.2d 722, 725 (9th Cir. 1984).

Defendants argue that California Corporations Code

9

United States District Court
For the Northern District of California

section 17450(a) dictates that Washington alter ego law applies
to the three EmpRes Entities that are limited liability companies
(LLCs): EHC Management, LLC; EHC Financial Services, LLC; and
Evergreen California Healthcare, LLC.  Section 17450(a) provides:

> the laws of the state or foreign country under which a
> foreign limited liability company is organized shall
> govern its organization and internal affairs and the
> liability and authority of its managers and members.

Plaintiff argues that section 17450(a) codified only the
"internal affairs doctrine" for LLCs.  Plaintiff cites <u>Butler v.
Adoption Media, LLC</u>, which held that section 17450(a) did not
apply to a choice-of-law issue regarding LLCs because it merely
codified the internal affairs doctrine, which governs matters
concerning the relationships among or between the LLC and its
officers, directors and shareholders and does not govern disputes
involving people or entities that are not part of the LLC.  2005
WL 2077484, *1 and n.1 (N.D. Cal.) (citing <u>Edgar v. MITE Corp.</u>,
457 U.S. 624, 645 (1982) (internal affairs doctrine recognizes
that only one state should have authority to regulate matters
peculiar to relationships among or between corporation and its
officers, directors, and shareholders; otherwise corporation
could be faced with conflicting demands)).  Plaintiff also cites
<u>Milliken & Co. v. Haima Gp. Corp.</u>, 2010 U.S. Dist. LEXIS 44835,
*9-12 (S.D. Fla.), <u>report and recommendation adopted</u>, 2010 U.S.
Dist. LEXIS 44775 (S.D. Fla.), in which the court held that a
statute similar to section 17450(a) was inapplicable to a choice-
of-law issue because the substantive question was external to the
corporate entity.

United States District Court
For the Northern District of California

To support the proposition that alter ego liability is a matter of a LLC's internal affairs, Defendants cite <u>Rubbermaid, Inc. v. Robert Bosch Tool Gp., Corp.</u>, 2010 U.S. Dist. LEXIS 100650, *15 (C.D. Ill.), which applied a law similar to section 17450(a) to hold that the alter ego law of the state of incorporation applied to determine the liability of a Delaware LLC to claims brought by a third party.  Defendants also cite <u>Kalb, Voorhis & Co. v. American Fin. Corp.</u>, 8 F.3d 130, 132 (2nd Cir. 1993), which applied the alter ego law of the state of incorporation to determine the liability of shareholders to a third party.  The court stated, "Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."  <u>Id.</u>

There is no definitive authority on this issue.  Defendants' authority is more persuasive.  First, the statutory language, that the state of incorporation governs the liability and authority of the LLC's managers and members, points to the application of Washington's alter ego liability law to the LLCs constituting the EmpRes Entities.  Second, even though alter ego liability involves law suits brought by third parties, it determines, based on the structure of the corporation, whether the shareholders are liable in lieu of the LLC, which is an internal affair.  Therefore, Washington's law determines the alter ego liability of the LLCs constituting the EmpRes Entities.

United States District Court
For the Northern District of California

3. Government Interest Test

Because no statute governs the choice of law for the alter ego liability of corporations and because there is no effective choice-of-law contractual provision, California's governmental interests test determines which State's law applies to the alter ego liability of EmpRes Healthcare, Inc.  <u>Kearney v. Salomon Smith Barney, Inc.</u>, 39 Cal. 4th 95, 100 (2006); <u>Washington Mutual</u>, 24 Cal. 4th at 919-20.  In <u>Kearney</u>, the California Supreme Court described the governmental interest test as follows:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state.

39 Cal. 4th at 107-08.

The parties agree, and the Court finds, that the alter ego liability laws of Washington and California are different.  Thus, the first prong of the governmental interest test is satisfied.

Defendants argue that a true conflict does not exist because Washington has an interest in applying its alter ego law to business entities formed under its laws, whereas California has no interest in controlling the corporate governance, organization

12

and liability of foreign business entities.  See Hurtado v. Sup. Ct., 11 Cal. 3d 574, 580 (1974) ("When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied."). For support, Defendants cite CTS Corp. v. Dynamics Corp. of Amer., 481 U.S. 69, 91 (1987), which stated that it is "an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares. A state has an interest in promoting stable relationships among parties involved in the corporations it charters . . ." Defendants also argue that California Corporations Code section 17450(a) shows that California has expressly disclaimed an interest in applying California alter ego law to foreign limited liability companies and the same should apply to corporations.

Plaintiff, citing McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 95 (2010), argues that California has an interest in affording its residents a remedy for an injury.  McCann addressed whether a California or Oklahoma statute would govern a California plaintiff's suit for injury from contracting mesothelioma while working in an oil refinery in Oklahoma.  Id. at 74.  The plaintiff's action was barred in Oklahoma by its statute of limitations whereas, in California, the suit was timely.  Id.  In this context, the court made the statement cited by Plaintiff, "California has a legitimate interest in having a statutory provision that affords a remedy for or a benefit to an

13

United States District Court
For the Northern District of California

injured person or business applied when, as here, the injured person or business is a California resident or business." Id. at 95.

The law in question here is the alter ego doctrine, not whether Plaintiff has a substantive cause of action against a proper defendant. As Defendants point out, they are not challenging the application of California law to any of Plaintiff's causes of actions. Therefore, California's interest in affording its resident a remedy for an injury is not directly at issue.

Plaintiff also argues that California has an interest in applying its alter ego law in this situation because it has a long tradition of affording alter ego recovery to injured consumers and has specifically included this remedy in California Corporations Code section 17101, which states, in part, "A member of a limited liability company shall be subject to liability under the common law governing alter ego liability." However, the issue is not whether California has an alter ego liability law applicable to its own LLCs. The question is whether it has an interest in applying its law to business entities that are formed in states other than California. Notably, section 17101 does not indicate that it applies to a "foreign limited liability company," which is defined in California Corporations Code section 17001(q) as "(1) an entity formed under the limited liability company laws of any state other than this state, . . . ." California does have an interest in preventing corporate entities from escaping liability with an unwarranted corporate

14

shield; however, the application of Washington's alter ego liability law would mitigate this concern.

In sum, Washington has a strong interest in controlling the liability of business entities formed under its laws, and California has an interest in preventing companies from escaping liability through an unwarranted corporate shield.  However, California's interest is mitigated through the application of Washington's alter ego law.  Thus, the Court concludes that there is no real conflict and Washington's alter ego law must be applied.

B. Application of Washington Alter Ego Law

Washington's alter ego law consists of the following two-part test:  "First, the corporate form must be intentionally used to violate or evade a duty; second, disregard must be necessary and required to prevent unjustified loss to the injured party."  Meisel v. M & N Modern Hydraulic Press Co., 97 Wash. 2d 403, 410 (1982).  The first prong requires abuse of the corporate form that typically involves fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.  Id.  This can be seen as a judicial expansion of the fraudulent conveyance law to circumstances in which that doctrine does not apply.  Id.  The second prong requires that wrongful corporate activities must actually harm the party seeking relief; intentional misconduct must be the cause of the harm that is avoided by disregard of the corporate form.  Id.  Deliberate undercapitalization of a corporate entity is insufficient to establish an abuse of the corporate form.

15

United States District Court
For the Northern District of California

Norhawk Investments, Inc. v. Subway Sandwich Shops, Inc., 61
Wash. App. 395, 399-400 (1991).

Citing five paragraphs in her 1AC, Plaintiff argues that her
allegations satisfy Washington's alter ego test.  In paragraph
42, Plaintiff alleges that the EmpRes Entities "deliberately set
up empty shells and agents so that [they] could deceive the
public and residents . . ."  In paragraph 43, Plaintiff alleges
that "Defendants have created a maze of multiple undercapitalized
entities--which in reality operate as a single entity--in order
to avoid liability."  In paragraph 40, Plaintiff alleges that
for-profit nursing home corporations such as EmpRes divide into
many separate shell companies "in order to avoid being held
accountable to both the public regulatory system and residents."
Plaintiff alleges that the EmpRes Entities fund, obtain licenses
for and guarantee the debt of Evergreen Lakeport and the other
Evergreen Entities.  She also alleges that the EmpRes Entities
control all the factors that impact Evergreen Lakeport's and the
other Evergreen Entities' staffing levels, which is at issue in
this case.

The analysis in Norhawk is instructive for the determination
of whether Plaintiff states alter ego liability under Washington
law.  In Norhawk, a franchisee abandoned its lease and the lessor
obtained a judgment against it.  Norhawk, 61 Wash. App. at 397-
98.  After the lessor failed to obtain payment from the
franchisee, it sued the franchiser under the theory of alter ego
liability.  Id. at 398.  The lessor argued that it was harmed by
the franchiser's corporate structure because, at all times, the

16

franchiser would be judgment proof.  <u>Id.</u>  The court stated,

> Although Norhawk may have been harmed, harm alone does
> not create corporate misconduct.  "The absence of an
> adequate remedy alone does not establish corporate
> misconduct." . . . It is also well established that
> "the purpose of a corporation is to limit liability."

<u>Id.</u> at 400 (citations omitted).  The court explained that the

corporate form must be honored unless there is such "a

commingling of rights and interests as to render it apparent that

the entities are intended to function as one, and further, that

to regard them as separate would aid the consummation of a fraud

or wrong upon others."  <u>Id.</u> at 401 (citations omitted).

Plaintiff's allegations that the EmpRes Entities have

financial and operational authority over Evergreen Lakeport and

the other Evergreen Entities are not sufficient to satisfy

Washington's alter ego test.  First, except for conclusory

statements, Plaintiff fails to allege that the EmpRes Entities

intentionally abused the corporate form in order to engage in

fraud or misrepresentation.  And, even if her allegations met the

first prong of the test, she fails to allege that the EmpRes

Entities intentionally harmed her by abusing the corporate form.

Plaintiff may bring her three claims against Evergreen Lakeport,

the residence where she lives and where she suffered the alleged

injury caused by its inadequate staffing.  Although Plaintiff

alleges that Evergreen Lakeport is undercapitalized, she does not

allege that it was so created with the intention to harm her

through inadequate staffing or of avoiding paying her damages

caused by the inadequate staffing.

Because Plaintiff has failed sufficiently to allege alter

United States District Court
For the Northern District of California

ego liability, the EmpRes Entities' motion to dismiss the claims against them is granted.  Dismissal is without prejudice to moving to add the Empress Entities, even after judgment, if Evergreen Lakeport evades its responsibility to provide relief. If Plaintiff brings such a motion, she may submit it with evidence in support of her alter ego claim.

III. Evergreen Lakeport's Motion to Dismiss

Evergreen Lakeport argues that Plaintiff's CLRA claim and UCL claim based on fraud should be dismissed for lack of specificity under Rule 9 of the Federal Rules of Civil Procedure. Evergreen Lakeport also argues that the Court should revisit its decision regarding Plaintiff's claim under Health and Safety Code section 1430(b), which provides a right of action for violations of the minimum staffing requirements set forth in Health and Safety Code section 1265.5(a), and the doctrines of equitable abstention and primary jurisdiction.

A. CLRA Claim

As stated in the May 25, 2011 Order, the CLRA prohibits "deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Because the claim sounds in fraud, it is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-26 (9th Cir. 2009).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

18

against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Secs. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Allegations of fraud based on information and belief usually do not satisfy the particularity requirements of Rule 9(b); however, as to matters peculiarly within the opposing party's knowledge, allegations based on information and belief may satisfy Rule 9(b) if they also state the facts upon which the belief is founded. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

Evergreen Lakeport asserts that Plaintiff fails to plead the substance and nature of the alleged misrepresentations made to her with the required specificity. Plaintiff responds that, in ¶¶ 93, and 95 through 103, of the 1AC, she adequately pleads Evergreen Lakeport's failure to disclose the material fact that it was understaffed. Citing Falk v. General Motors Corp., 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007), Plaintiff also argues that, when a CLRA claim is based on non-disclosure or active concealment of a material fact, there is no need to plead specific misrepresentations. In Falk, the court stated that a CLRA claim based on failure to disclose is cognizable where: (1) the defendant had exclusive knowledge of material facts not known to the plaintiff and (2) the defendant actively concealed a material fact from the plaintiff. Id. To show that the non-

19

1   disclosed information is material, a plaintiff must show that

2   "had the omitted information been disclosed, a reasonable

3   consumer would have been aware of it and behaved differently."

4   <u>Id.</u>

5       In her 1AC, Plaintiff alleges that Defendants "did not

6   disclose and actively concealed that the [Evergreen Entities]

7   have failed to comply with California's minimum and adequate

8   nurse staffing requirements as alleged herein, and continue to do

9   so", 1AC at ¶ 93, and that Defendants knew they had inadequate

10  staffing and Plaintiff did not know it, 1AC at ¶¶ 96-97.

11  Paragraph 98 is the heart of the claim, alleging Defendants'

12  fraudulent conduct as: (1) representing to state regulators that

13  they were complying with the nursing staff requirements;

14  (2) representing to the consuming public, including Plaintiff,

15  that the Evergreen Entities were in compliance with the required

16  staffing levels; (3) failing to disclose to residents or

17  prospective residents that the Evergreen Entities fell below the

18  nurse staffing requirement; (4) responding to the regulators'

19  deficiency notices by promising to improve staffing, but failing

20  to do so; (5) responding to regulators' deficiency notices by

21  posting projected, as opposed to actual, staffing ratios; and

22  (6) responding to residents' complaints with misleading

23  assertions that staffing shortfalls were isolated incidents or

24  that they would be addressed.

25      Plaintiff is correct that she does not have to plead

26  specific misrepresentations when the issue is concealment or non-

27  disclosure.  However, five of the six allegations in ¶ 98 are

28                              20

that Defendants made misrepresentations.  Only ¶ 98(3) alleges
failure to disclose a material fact and this allegation is
sufficient to state a claim.  The other allegations in
¶ 98 are deficient under Rule 9(b) because they do not state who
made the statement, the time and place of the statement and how
the statement was made to Plaintiff.

Evergreen Lakeport next argues that the allegations are
insufficient because they do not indicate that Plaintiff had or
could have had any exposure to any representation, or that there
were any circumstances in which Evergreen Lakeport should have or
could have provided other information to her, or that she relied
on these misrepresentations or non-disclosures to her detriment.
However, in ¶ 100, Plaintiff alleges reliance by stating that the
non-disclosed fact was material and, had she known it, she would
not have agreed to reside at Evergreen Lakeport.  Also, in ¶ 101,
Plaintiff alleges that she could not reasonably have been
expected to learn or discover by herself the non-disclosed facts
regarding staffing violations.  This is sufficient to state
reliance for the non-disclosure allegation.

Citing Swartz v. KPMG LLP, 476 F.3d 756, 764-64 (9th Cir.
2007), Evergreen Lakeport also argues that the allegations are
insufficient because they refer to Defendants, in general,
without specifying the part each Defendant played in the
concealment or non-disclosures.  In Swartz, the court stated:
"Rule 9(b) does not allow a complaint to merely lump multiple
defendants together but 'requires plaintiffs to differentiate
their allegations when suing more than one defendant . . . and

inform each defendant separately of the allegations surrounding his alleged participation in the fraudulent scheme.' . . . In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" Id. at 765 (citing Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989)).

None of Plaintiff's allegations discloses the role of any specific Defendant in the misrepresentations or intentional non-disclosure or concealment of the nursing staff violations. Plaintiff may amend to allege, if she truthfully can do so, that Evergreen Lakeport made the misrepresentations to Plaintiff, or failed to disclose material facts.

The CLRA claim is dismissed with leave to amend only to remedy the deficiencies noted above.

B. UCL Claim Based On Fraud

Evergreen Lakeport moves to dismiss the fraud-based allegations in the UCL claim on the ground that they too fail to meet Rule 9(b)'s requirement for specificity.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Under the UCL, "a fraudulent business practice is one in which members of the public are likely to be deceived." Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1254 (2009). UCL claims grounded in fraud must satisfy Rule 9(b). Kearns, 567 F.3d at 1125.

Paragraph 86 of the 1AC alleges: "Defendants, and each of

22

them, have also engaged in fraudulent business practices by virtue of their failure to disclose and active concealment of the actual levels of nurse staffing at their California skilled nursing facilities." Paragraph 87 alleges: "Members of the general public (including . . . persons admitted to and/or residing in the Facilities during the Class Period . . .) have been and are likely to be deceived by the statements, representations, omissions, and other conduct by Defendants as alleged herein."

These allegations are sufficient to state that Plaintiff, as a person admitted to one of the Facilities, was not told the material facts about nurse staffing violations and that she and members of the public were likely to be deceived by the concealment. However, these allegations suffer from the same deficiency noted above in that they do not specify the role that Evergreen Lakeport played in the misrepresentations or concealment. As stated above, Plaintiff may amend to allege, if she truthfully can do so, who made the misrepresentations to Plaintiff, and failed to disclose material facts. This claim is dismissed with leave to amend only to remedy the deficiencies noted above.

C. Renewed Arguments Regarding § 1430(b) Claim, Abstention and Primary Jurisdiction

In the May 25, 2011 Order, the Court denied Evergreen Lakeport's motion to dismiss Plaintiff's UCL claim for unlawful business acts, based on equitable abstention, denied the motion to stay the case pursuant to the doctrine of primary

23

United States District Court
For the Northern District of California

jurisdiction, and denied the motion to dismiss the California Health and Safety Code section 1430(b) claim on the merits.  In regard to the doctrine of equitable abstention, the Court stated that dismissal was without prejudice to renewal if circumstances changed.  See May 25, 2011 Order at 16.  Based on this statement, Evergreen Lakeport seeks to renew all the arguments presented in its first motion to dismiss.

Evergreen Lakeport's attempts to re-litigate the primary jurisdiction doctrine and the merits of the § 1430(b) claim are, in effect, motions for reconsideration, which are not properly before the Court.  See Civil L.R. 7-9.  Therefore, its motion to dismiss based on these arguments is denied.

Evergreen Lakeport argues that re-visiting equitable abstention is warranted because, since the Court issued the May 25, 2011 Order, two other courts have applied this doctrine to dismiss claims identical to those asserted by Plaintiff.  The two cases are Walsh v. Kindred Healthcare, __ F. Supp. 2d __, 2011 WL 2415739 (N.D. Cal. June 15, 2011) (J. White) and Shuts v. Covenant Holdco, LLC, Case No. RG10551807 (Alameda County Sup. Ct. May 4, 2011).[6]

Neither Walsh nor Shuts is binding authority and neither persuades the Court that it should reconsider its decision. Therefore, Evergreen Lakeport's renewed motion to dismiss the UCL claim for unlawful business acts, based on equitable abstention, is denied.

---

[6]The Shuts case was decided before the Court issued the May 25, 2011 Order.

United States District Court
For the Northern District of California

CONCLUSION

For the foregoing reasons, the Court: (1) grants Defendants'
motion to dismiss or strike the claims brought by or against new
parties in the 1AC; (2) grants the EmpRes Entities' motion to
dismiss based on lack of alter ego liability; (3) grants in part
and denies in part Evergreen Lakeport's motion to dismiss as
follows: (a) the CLRA claim is dismissed with leave to amend;
(b) the UCL fraud claim is dismissed with leave to amend; (c) the
motion is otherwise denied; and (4) denies without prejudice the
EmpRes Entities' motion to dismiss for lack of personal
jurisdiction as moot, with leave to refile if the alter ego issue
is revisited at a later date.  Plaintiff's motion to compel
jurisdictional discovery (Docket No. 69) is denied without
prejudice to refiling if the Empres Entities refile their
jurisdictional motion.  Plaintiff's motion for an extension of
time for briefing on the jurisdictional motion is also denied
(Docket No. 73).

If Plaintiff wishes to amend her complaint to add parties
and claims, she must file a motion seeking leave to amend within
seven days from the date of this order.  If she does so, she
shall include in her proposed amended complaint the amendments
allowed in this order.  If she does not move for leave to amend,
she must file an amended complaint as allowed by this order
within seven days.  Defendants may file an answer, or a combined
motion to dismiss the amended complaint and opposition to the
motion for leave to amend, of no more than twenty-five pages,
within fourteen days from the date the motion and/or the amended

25

complaint are filed.  Within seven days thereafter, Plaintiff may file a combined reply of no more than fifteen pages.  The motions will be taken under submission.  If leave to amend is granted, Plaintiff will have to serve personally the two new Defendants, if she has not yet done so.  The Court will schedule a case management conference after issuing its order.

        IT IS SO ORDERED.


Dated: 10/31/2011

                                        CLAUDIA WILKEN
                                        United States District Judge

**United States District Court**
For the Northern District of California