1  Robert J. Nelson (State Bar No. 132797)
   Lexi Hazam (State Bar No. 224457)
2  Jordan Elias (State Bar No. 228731)
   LIEFF CABRASER HEIMANN &
3  BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
5  Facsimile:  (415) 956-1008

6  Kathryn A. Stebner (State Bar No. 121088)      Michael D. Thamer (State Bar No. 101440)
   Sarah Colby (State Bar No. 194475)             LAW OFFICES OF MICHAEL D. THAMER
7  STEBNER & ASSOCIATES                           Old Callahan School House
   870 Market Street, Suite 1212                  12444 South Highway 3
8  San Francisco, CA 94102-2907                   Post Office Box 1568
   Telephone:  (415) 362-9800                     Callahan, CA 96014-1568
9  Facsimile:  (415) 362-9801                     Telephone:  (530) 467-5307
                                                  Facsimile:  (530) 467-5437
10 [Additional Counsel Appear on Signature Page]

11 *Attorneys for Plaintiffs*

12               UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                    OAKLAND DIVISION

15
   Phyllis Wehlage, et al., on behalf of          Case No. 4:10-cv-05839-CW
16 themselves and all others similarly situated,
                                                  **PLAINTIFFS' NOTICE OF MOTION AND**
17                   Plaintiffs,                  **MOTION FOR PRELIMINARY**
                                                  **APPROVAL OF CLASS SETTLEMENT;**
18           v.                                   **MEMORANDUM OF POINTS AND**
                                                  **AUTHORITIES IN SUPPORT THEREOF**
19 Evergreen at Arvin LLC; Evergreen at
   Bakersfield LLC; Evergreen at Lakeport         Date:        June 21, 2012
20 LLC; Evergreen at Heartwood LLC;               Time:        2 p.m.
   Evergreen at Springs Road LLC; Evergreen       Judge:       The Honorable Claudia Wilken
21 at Tracy LLC; Evergreen at Oroville LLC;        Courtroom:   2, 4th Floor
   Evergreen at Petaluma LLC; Evergreen at
22 Gridley (SNF) LLC; Evergreen at Chico
   LLC; Evergreen at Salinas LLC; Evergreen
23 at Fullerton LLC,

24                   Defendants.

25

26

27

28

1 | <u>**NOTICE OF MOTION AND MOTION**</u>

2 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

3 |      PLEASE TAKE NOTICE that on June 21, 2012, at 2 p.m., in the Courtroom of the

4 | Honorable Claudia Wilken, United States District Judge for the Northern District of California,

5 | located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs, on behalf of themselves and all others

6 | similarly situated, will and hereby do move the Court, pursuant to Federal Rule of Civil

7 | Procedure 23(e), for entry of an Order preliminarily approving a proposed Settlement Agreement

8 | ("Settlement") entered into between the parties, and for other related relief.

9 |      By this unopposed motion, Plaintiffs respectfully move the Court for an Order:

10 |      1.     Preliminarily approving the Settlement in this action pursuant to Federal Rule of

11 | Civil Procedure 23(e);[1]

12 |      2.     Preliminarily certifying a Settlement Class pursuant to Federal Rules of Civil

13 | Procedure 23(a) and 23(b)(2);

14 |      3.     Appointing the attorneys listed in the signature block as Class Counsel;

15 |      4.     Appointing Plaintiffs as Settlement Class Representatives;

16 |      5.     Approving the parties' proposed forms of notice and notice program, and directing

17 | that notice be disseminated pursuant to this program; and

18 |      6.     Setting a Fairness Hearing and certain other dates in connection with the final

19 | approval of the Settlement.

20 |      This Motion is based on the accompanying Memorandum of Points and Authorities, the

21 | Settlement Agreement, the Stipulated Order for Injunction, the Stipulated Judgment, the

22 | Confession of Judgment, the Guaranty, the accompanying Declarations of Catherine A. Yanni,

23 | Michael J. Eggers, Dennis C. Reinholtsen, Robert J. Nelson, Christopher J. Healey, Michael D.

24 | Thamer, Kathryn A. Stebner, W. Timothy Needham, Robert S. Arns, C. Brooks Cutter, and

25 | Edward P. Dudensing, documents attached to those Declarations, any papers filed in reply, the

26 | argument of counsel, and all papers and records on file in this matter.

27 |

28 | [1] A copy of the executed Settlement Agreement is attached as Exhibit A to this Motion. A copy of the Stipulated Injunction is attached as Exhibit 1 to the Settlement Agreement.

1

**TABLE OF CONTENTS**

2

**Page**

3  I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2
4
        A.      Plaintiffs Allege Defendants Violated California Statutes by Understaffing
5              Their Skilled Nursing Facilities. ............................................................... 2

6       B.      The Parties Litigated a Series of Motions to Dismiss. ............................... 3

        C.      The Parties Entered Into Settlement Negotiations and Reached an
7              Agreement. .................................................................................................. 5

8  III.    THE PROPOSED SETTLEMENT WILL BENEFIT THE CLASS BY
        REQUIRING DEFENDANTS TO PROVIDE ADEQUATE STAFFING ....... 5
9
        A.      The Settlement Includes an Injunction Under Which Defendants Agree to
                Provide Legally Sufficient Skilled Nursing Services ................................. 5
10
        B.      Defendants' Financial Condition Precludes Payment of Any Amount
11             Greater Than the Limited Settlement Fund ................................................ 6

12      C.      Because Defendants Are Incapable of Providing Monetary Consideration
               to the Class, the Claims Are Not Being Released. ..................................... 8
13
        D.      The Settlement Provides for Notice to Class Members of the Terms of the
               Settlement and Their Ability to Object. ..................................................... 8
14
   IV.    THE SETTLEMENT SATISFIES THE LEGAL STANDARDS FOR
        OBTAINING PRELIMINARY APPROVAL ................................................... 8
15
        A.      Preliminary Approval Is Appropriate .......................................................... 9
16
                1.      The Settlement Is the Product of Arms-Length Negotiations and
17                     Follows Substantial Litigation and Investigation ...................................... 10

18              2.      The Settlement Is Fair Given the Nature of the Claims, the Value of
                       the Injunction, Defendants' Financial Condition, and the Litigation
19                     Risks. ....................................................................................................... 11

                        a.      The Injunction Is an Outstanding Result for the Class. ................ 11
20
                        b.      The Monetary Consideration Provided Under the Settlement
21                             Is Reasonable Under the Circumstances. ..................................... 13

22                      c.      The Litigation Risks, Including Defendants' Potential
                               Bankruptcy, Support Preliminary Approval. ............................... 15
23
                3.      The Recommendation of Experienced Counsel and an Experienced
                       Mediator Strongly Favor Approval. ......................................................... 16
24
   V.      PRELIMINARY CERTIFICATION OF AN INJUNCTIVE RELIEF CLASS IS
        WARRANTED ................................................................................................. 17
25
   VI.     THE NOTICE SHOULD BE APPROVED ...................................................... 19
26
   VII.    A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED ................... 20

   VIII.   CONCLUSION ................................................................................................. 21

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alvarado Partners, L.P. v. Mehta*,
  723 F. Supp. 540 (D. Colo. 1989) ........................................................................ 14

*Alvarado v. Selma Convalescent Hospital*,
  153 Cal. App. 4th 1292 (2007) ............................................................................ 16

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................... 16

*Byrd v. Civil Serv. Comm'n*,
  459 U.S. 1217 (1983) ............................................................................................ 9

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004)…………………………………………………………9, 19

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................... 9

*Continental Assur. Co. v. Macleod-Stedman, Inc.*,
  694 F. Supp. 449 (N.D. Ill. 1988) ....................................................................... 11

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ......................................................................... 11

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ............................................................................................ 20

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ..................................................................... 10, 16

*Grunin v. International House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) ........................... 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................. 17

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995) ...................................................................... 14

*In re Corrugated Container Antitrust Litig.*,
  556 F. Supp. 1117 (S.D. Tex. 1982) ................................................................... 14

*In re HP Laser Printer Litigation*,
  2011 U.S. Dist. LEXIS 98759 (C.D. Cal. Aug. 31, 2011) ............................... 11, 12

*In re Mercury Interactive Corporation Securities Litigation*,
  618 F.3d 988 (9th Cir. 2010) ................................................................................. 7

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) .................................................................. 14

*In re Nat'l Student Marketing Litig.*,
  68 F.R.D. 151 (D.D.C. 1974) ............................................................................... 14

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 9

*IUE-CWA v. GMC*,
  238 F.R.D. 583 (E.D. Mich. 2006) ...................................................................... 14

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Jaffe v. Morgan Stanley & Co.*,
2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 8, 2008)..........................................................19

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998)..........................................................................................11

*Linney v. Cellular Alaska Partnership*,
1997 WL 450064 (N.D. Cal. Jul. 18 1997)....................................................................16

*Minton v. Ralston Purina Co.*,
47 P.3d 556 (Wash. 2002)................................................................................................16

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982)..............................................................................................9

*Republic Nat'l Life Ins. Co. v. Beasley*,
73 F.R.D. 658 (S.D.N.Y. 1977) ......................................................................................13

*Schwarm v. Craighead*,
814 F. Supp. 2d 1025 (E.D. Cal. 2011)......................................................................14, 15

*Seiffer v. Topsy's Int'l, Inc.*,
70 F.R.D. 622 (D. Kan. 1976)..........................................................................................14

*Sheick v. Automotive Component Carrier LLC*,
2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010) ..........................................14

*Smith v. Dominion Bridge Corp.*,
2007 U.S. Dist. LEXIS 26903 (E.D. Pa. Apr. 11, 2007) ................................................13

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)........................................................................................19, 20

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)..............................................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)......................................................................................................18

*Wright v. Linkus Enterprises*,
259 F.R.D. 468 (E.D. Cal. 2009) .....................................................................................14

*Young v. Polo Retail, LLC*,
2006 WL 3050861 (N.D. Cal. Oct. 25, 2006)....................................................................9

**STATUTES**

Cal. Bus. & Prof. Code
§ 17200.................................................................................................................................2

Cal. Civ. Code
§ 1780(e)..............................................................................................................................6

Cal. Code. Civ. P.
§ 1021.5................................................................................................................................6

California Health & Safety Code
§ 1276.5........................................................................................................................passim
§ 1430...............................................................................................................................12
§ 1430(b)....................................................................................................................passim
§ 1599.1................................................................................................................2, 3, 6, 18

- iv -

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Civil Code
    § 1770(a)(5)..........................................................................................................................18
    § 1770(a)(7)..........................................................................................................................18

Class Action Fairness Act of 2005 (CAFA)
    28 U.S.C. § 1332(d)(2).........................................................................................................3
    28 U.S.C. § 1332(d)(1)(B) ...................................................................................................3
    28 U.S.C. § 1453 ..................................................................................................................3

**RULES**

Fed. R. Civ. P.
    23................................................................................................................................. 17, 19
    23(b)(2) ....................................................................................................................... 18, 19
    23(c)(2)(A)........................................................................................................................ 19
    23(e) ................................................................................................................................... 9

**TREATISES**

4 *Newberg on Class Actions* (4th ed. 2002)
    § 11.22, *et seq.* ................................................................................................................. 9
    § 11.25................................................................................................................................ 9
    § 11.41.............................................................................................................................. 10

Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004)
    §§ 21.63, *et seq*. ............................................................................................................. 8

1036295.1                  - v -                  MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT;
                                                    MEMO. OF POINTS AND AUTHORITIES IN SUPPORT
                                                       CASE NO. 4:10-CV-05839-CW

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3         Plaintiffs respectfully request that the Court enter an Order preliminarily approving the

4    proposed Settlement Agreement that would resolve this case.  This Settlement Agreement,

5    attached hereto as Exhibit A, follows several arms-length settlement negotiations facilitated by a

6    neutral mediator.  The proposed Agreement is the result of considerable efforts by both sides,

7    represents a significant achievement for the Class of skilled nursing home patients at issue, and is

8    well within the range of reasonableness.  Accordingly, preliminary approval is appropriate and

9    should be granted.

10        This case involves allegations of Defendants' pervasive and intentional failure to provide

11   legally sufficient qualified nurse staffing.  All skilled nursing facilities in California are required

12   to provide at least 3.2 hours of direct nursing hours per patient day in accordance with California

13   Health and Safety Code section 1276.5.  This statutory 3.2 hour requirement represents the

14   minimum aggregate staffing that all patients at skilled nursing facilities must receive.  Plaintiffs

15   allege that Defendants' facilities, in violation of law, failed to meet this requirement.

16        Plaintiffs brought suit primarily to force Defendants to comply with this California statute.

17   The stipulated Injunction incorporated into the Settlement achieves this goal, requiring

18   Defendants to ensure proper staffing in their skilled nursing facilities.  Defendants agree to

19   employ an adequate number of qualified nursing personnel to provide skilled nursing services at

20   their facilities.  This injunction has bite:  a third party monitor will oversee Defendants'

21   compliance, and the Court retains jurisdiction to order appropriate remedies in the event of non-

22   compliance.

23        Defendants' financial condition precludes them from making cash payments to the Class.

24   The agreed-upon cash payment of less than $2 million—to administer this Settlement, cover

25   litigation expenses, and compensate Class Counsel for a portion of its lodestar (subject to Court

26   approval)—constitutes the upper limit on what Defendants can realistically afford.  A greater

27   payment would, in all likelihood, lead them into bankruptcy.  Class Counsel thoroughly

28   investigated and confirmed Defendants' represented financial condition before agreeing to this

1   Settlement.  Class Counsel retained a forensic accounting expert to review Defendants' financial

2   documents, and conducted a lengthy deposition of the Chief Financial Officer of EmpRes

3   Healthcare Management.  Importantly, the Class members' claims are *not* being released, so the

4   absence of cash compensation causes them no prejudice.  Rather, the Settlement expressly

5   preserves the ability of every Class member to pursue individual claims for damages.

6        For the reasons set forth below, the Settlement is within the range of reasonableness and

7   should be preliminarily approved.

8   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

9        Plaintiffs, current and former residents of Defendants' skilled nursing facilities (the

10  "Facilities"), brought this action for injunctive relief and damages based on injuries from

11  Defendants' chronic understaffing of the Facilities, and their failure to disclose those conditions.[2]

12  The understaffing claims arise under California's Health and Safety Code section 1430(b), which

13  provides a cause of action for violations of the right to adequate nurse staffing under Health and

14  Safety Code section 1599.1(a), and the right to reside in a facility that provides at least 3.2

15  nursing hours per patient day ("NHPPD"), as mandated by Health and Safety Code section

16  1276.5.  Plaintiffs also asserted failure-to-disclose claims under the Consumers Legal Remedies

17  Act, Civil Code section 1750, *et seq.* ("CLRA"), and Business and Professions Code section

18  17200, *et seq.* ("UCL").

19  **A.    Plaintiffs Allege Defendants Violated California Statutes by Understaffing Their Skilled Nursing Facilities.**

20

21       As Plaintiffs allege, the 3.2 hour NHPPD requirement under section 1276.5 represents the

22  minimum staffing required for patients at skilled nursing facilities.  Third Amended Complaint,

23  ¶ 3.  Understaffing is uniformly viewed as one of the primary causes of the inadequate care and

24  often unsafe conditions in skilled nursing facilities.  Scientific studies have repeatedly shown a

---

[2] The "Evergreen Defendants" are:  Evergreen at Arvin, L.L.C.; Evergreen at Bakersfield, L.L.C.;
Evergreen at Chico, L.L.C.; Evergreen at Gridley (SNF), L.L.C.; Evergreen at Fullerton, L.L.C.;
Evergreen at Heartwood Avenue, L.L.C.; Evergreen at Lakeport, L.L.C.; Evergreen at Oroville,
L.L.C.; Evergreen at Petaluma, L.L.C.; Evergreen at Springs Road, L.L.C.; and Evergreen at
Tracy, L.L.C.  Plaintiffs also originally sued the "Parent Entities":  EmpRes Healthcare, Inc.;
EHC Management, L.L.C.; EHC Financial Services, L.L.C.; and Evergreen California
Healthcare, L.L.C.  As explained below, the Court granted Defendants' Motion to Dismiss the
Parent Entities under Washington law.  Order of October 13, 2011 (Dkt. No. 79).

1  direct correlation between inadequate skilled nursing care and serious health problems—

2  including, but not limited to, a greater likelihood of falls, pressure sores, significant weight loss,

3  incontinence, and premature death.  Third Amended Complaint, ¶ 2.

4      Plaintiffs allege that Defendants failed to satisfy the 3.2 hour NHPPD minimum

5  requirements, failed to provide adequate numbers of qualified nursing staff given aggregate

6  patient acuity levels at the Facilities, and failed to employ sufficient numbers of registered nurses

7  on numerous days during the Class Period.  Many of Defendants' Facilities have an inordinately

8  high number of reported complaints, deficiencies, and citations resulting from inadequate care of

9  their elderly and dependent adult residents, as reflected in records maintained by the California

10  Department of Health Services.  Third Amended Complaint, ¶ 4.  These and other facts support

11  liability under Health and Safety Code section 1430(b) for predicate violations of Health and

12  Safety Code sections 1276.5 and 1599.1.

13      **B.      The Parties Litigated a Series of Motions to Dismiss.**

14      Plaintiffs originally filed this class action in California state court on November 15, 2010,

15  seeking injunctive relief and damages.  On December 22, 2010, then-defendant EmpRes

16  Healthcare, Inc. (since dismissed by Court order) noticed removal to this Court under the Class

17  Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), and 28 U.S.C. § 1453 ("CAFA").[3]  (Dkt.

18  No. 1).  Plaintiffs did not and do not contest the removal.  This Court has subject-matter

19  jurisdiction under CAFA, because: (a) this is a putative class action within the meaning of 28

20  U.S.C. § 1332(d)(1)(B); (b) all members of the proposed Class are citizens of a State (California)

21  different from all Defendants (Washington); and (c) the alleged amount in controversy exceeds

22  $5,000,000.

23      Defendants filed several motions to dismiss the First Amended Complaint on February 18,

24  2011, contending:  (1) the Court should abstain from hearing the matter on the basis of equitable

25  abstention; (2) Plaintiff Wehlage did not have standing as to the Facilities where she did not

26  _____

27  [3] A virtually identical class action is pending against these same Defendants in the Eastern
District of California, *Grenzebach v. EHC Management LLC*, No. 11-cv-00197-MCE-DAD (E.D.
Cal.).  The *Grenzebach* action has been stayed pending this Court's rulings in the present action,

28  and will also be resolved by the proposed Settlement Agreement.  Agreement, at 1, 10.

1    reside; (3) Plaintiffs had not adequately alleged that the Parent Entities were the alter egos of the

2    Facilities under Washington law; (4) Plaintiffs had not alleged their CLRA claims with requisite

3    specificity; and (5) personal jurisdiction over the Parent Entities was lacking.[4]  (Dkt. Nos. 22-26.)

4         On May 25, 2011, the Court granted Defendants' motions on grounds two through four

5    above, dismissing all Defendants except the Lakeport Facility and granting leave to amend the

6    alter ego and CLRA allegations.  Order of May 25, 2011 (Dkt. No. 46).  In the Second Amended

7    Complaint, filed on June 8, 2011, Plaintiffs added class representatives for each of the previously-

8    named Facilities, and also added two additional Facility Defendants and representatives for each

9    of the latter, for a total of eleven Facilities and thirteen class representatives.  Plaintiffs included

10   additional alter ego and CLRA allegations as well.  (Dkt. No. 50.)

11        On June 22, 2011, the Parent Entities again moved to dismiss the claims against them on

12   alter ego grounds, and all Defendants again moved to dismiss on grounds of abstention and

13   failure to sufficiently allege a CLRA claim.  In addition, Defendants moved to dismiss the newly-

14   added class representatives on the grounds that Plaintiffs had not sought leave to amend.  (Dkt.

15   Nos. 54-58.)

16        On October 31, 2011, the Court denied Defendants' Motions to Dismiss on abstention

17   grounds, granted Defendants' Motion to Dismiss on alter ego grounds, and granted Defendants'

18   Motions to Dismiss on all other grounds with leave to amend.  Order of October 13, 2011 (Dkt.

19   No. 79).  On November 7, 2011, Plaintiffs filed a Motion for Leave to Amend their Complaint to

20   include the additional representatives, which Defendants opposed.  (Dkt. Nos. 82, 85.)

21   Defendants once again moved to dismiss the CLRA claim, this time on the grounds that Plaintiffs

22   had not provided sufficient notice.  (Dkt. No. 85.)  On February 6, 2012, the Court granted

23   Plaintiffs' Motion for Leave to Amend and granted the Defendants' Motion to Dismiss the CLRA

24   claim for lack of sufficient notice, with leave to amend once notice was provided.  Order of

25   February 7, 2012 (Dkt. No. 90).

26        Plaintiffs filed their operative Complaint, the Third Amended Complaint, on February 9,

---

[4] The Facilities did not join in the Parent Defendants' Motion to Dismiss on jurisdictional
grounds, and the Lakeport Facility did not join in the other Defendants' Motion to Dismiss on
standing grounds.

2012.  (Dkt. No. 91.)  Defendants again moved to dismiss on abstention grounds, for the third time.  (Dkt. No. 95.)  Defendants withdrew their Motion in light of the pending Settlement Agreement.  (Dkt. No. 99.)

C.    **The Parties Entered Into Settlement Negotiations and Reached an Agreement.**

The parties engaged in three mediation sessions before Catherine A. Yanni at JAMS, on October 24, 2011; December 15, 2011; and March 14, 2012.  The negotiations were hard-fought and at arms' length.  Declaration of Catherine A. Yanni in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement ("Yanni Decl."), ¶ 5.  The parties' early positions at the mediation reflected highly divergent views about the claims and damages asserted against the Defendants, and their defenses thereto.  *Id.*, ¶ 6.

Defendants asserted in mediation that their financial resources were extremely limited and that ongoing litigation or meaningful monetary compensation to Class members may push them into bankruptcy.  Yanni Decl., ¶ 7.  At the second mediation, Defendants shared with Plaintiffs and their expert accountant internal financial documents supporting Defendants' claims regarding their financial condition.  *Id.*  The mediator stressed that absent a settlement, both sides would incur substantial expenses from continued litigation, and Defendants could face bankruptcy, resulting in no relief at all for the Class.  *Id.*, ¶ 8.  The parties ultimately reached an agreement in principle at the third mediation.

III.    **THE PROPOSED SETTLEMENT WILL BENEFIT THE CLASS BY REQUIRING DEFENDANTS TO PROVIDE ADEQUATE STAFFING**

The parties executed the Settlement Agreement between April 30 and May 16, 2012.  A summary of its material terms is provided below.

A.    **The Settlement Includes an Injunction Under Which Defendants Agree to Provide Legally Sufficient Skilled Nursing Services.**

The centerpiece of the proposed Settlement is a stipulated Injunction that substantially resolves the core issue in this lawsuit:  Defendants' systematic violation of the California law requiring them to provide 3.2 hours of skilled nursing services per patient day in their skilled nursing Facilities.  Agreement § 6.  The stipulated Injunction is attached as Exhibit 1 to the

Settlement Agreement (Exhibit A hereto).  The Injunction provides that "[a]t all times,

Defendants shall comply with Health and Safety Code section 1276.5 by providing a minimum of

3.2 actual nursing hours per patient day ('NHPPD') at any skilled nursing home owned or

operated by the Defendants, or any of them, in California."  Stipulated Injunction, ¶ 1.  Further,

"[a]t all times, Defendants shall comply with Health and Safety Code section 1599.1 by

employing an adequate number of qualified personnel to carry out all of the functions of the

facility at any skilled nursing home owned or operated by Defendants, or any of them, in

California."  Stipulated Injunction, ¶ 2.

Defendants agree to track their compliance and submit regular reports to a Court-

appointed monitor empowered to "undertake all . . . necessary actions to monitor Defendants'

compliance with the terms of this Injunction.  All fees and costs of the Monitor shall be paid by

the Defendants."  Stipulated Injunction, ¶ 4; *see also Id.*, ¶¶ 5-7.  "Monitoring Costs shall not be

paid from the Settlement Fund, but are instead Settling Defendants' separate financial obligation

(which shall also be secured by the Guaranty . . . .)."  Agreement, § 6.3.

This consent decree will remain in effect for two-and-one-half years after entry of an

Order finally approving the Settlement.  Stipulated Injunction, ¶ 9; Agreement, § 6.2.  The

consent decree makes clear that if the Defendants violate its terms, "Plaintiffs may seek a Court

order extending the Injunction duration, in addition to any other available remedy."  Stipulated

Injunction, ¶ 9.

**B.**      **Defendants' Financial Condition Precludes Payment of Any Amount Greater Than the Limited Settlement Fund.**

Under the Settlement, Defendants will pay $1,999,950 to administer the Settlement, to

fund the $2,500 service awards for the named Plaintiffs that Class Counsel will ask the Court to

approve, to cover the costs of the Court-approved Notice to the Class, and to compensate Class

Counsel (subject to Court approval) for the litigation expenses they advanced and their time spent

litigating this action.[5]  Agreement, § 5.  Defendants have agreed to pay this Settlement

---

[5] Class Counsel is entitled to attorneys' fees, in part, because of California's mandatory fee-shifting statute for private attorney general actions, including actions under Health and Safety Code § 1430(b) and the Consumer Legal Remedies Act.  *See* Cal. Code. Civ. P. § 1021.5; Cal. Health & Safety Code § 1430(b); Cal. Civ. Code § 1780(e).  Consistent with *In re Mercury*
*Footnote continued on next page*

consideration in phases, as they cannot afford to pay the full amount up front. Only $1 million will be paid initially, with the remainder to be paid in 12 monthly installments. Agreement, § 5.1. The total payment under the proposed Settlement that is reserved for attorneys' fees and costs is *less* than Class Counsel's current documented lodestar. Nelson Decl., ¶ 5.

The Settlement does not provide monetary consideration to the Class for a simple reason: the Parent Entities' financial condition prevents them from paying anything more than this limited sum. The Settlement Agreement sets forth Defendants' representation "that a judgment in excess of the Settlement Payment . . . would likely result in bankruptcy or financial impairment at such a level that the company would be in the imminent threat of bankruptcy." Agreement, at 1.

Class Counsel independently verified the Parent Entities' financial condition. As the Agreement states, Plaintiffs hired a forensic accounting expert, Michael J. Eggers, who "was permitted limited review of Settling Defendants' financial information . . . ." Agreement, at 1. In his expert declaration filed under seal, Mr. Eggers describes the documents he reviewed and his conclusion that the Parent Entities lack the financial capability to pay more than the amount they have agreed to pay under the Settlement. Eggers Decl., ¶¶ 5-10. Plaintiffs also deposed the Chief Financial Officer of EmpRes Healthcare Management, Michael J. Miller, who testified that the Parent Entities subsist on a line of credit and the lender would likely discontinue lending, resulting in bankruptcy, if Defendants were to pay in excess of $2 million to settle this litigation. The transcript of this deposition is submitted under seal for the Court's review, as Exhibit A to the Reinholtsen Declaration. Defendants showed Plaintiffs' counsel financial documents at the deposition, and subsequently allowed Mr. Eggers to review these and other financial documents. Eggers Decl., ¶ 5. The documents confirm the precarious state of the Parent Entities' financial affairs. Eggers Decl., ¶¶ 7-9.

---

*Footnote continued from previous page*

*Interactive Corporation Securities Litigation*, 618 F.3d 988 (9th Cir. 2010), Class Counsel will submit lodestar reports in support of their fee application, which will be filed prior to the final fairness hearing. Class Counsel obtained a Guaranty from EmpRes Healthcare Group, to ensure that the payments agreed to under the Settlement will be made. A copy of this Guaranty is attached as Exhibit 3 to the Settlement Agreement (Exhibit A to this Motion).

- 7 -

1

2

**C.      Because Defendants Are Incapable of Providing Monetary Consideration to the Class, the Claims Are Not Being Released.**

The Settlement Agreement makes clear that Class member damages claims are not

precluded in the future.  Agreement, § 9 ("No Releases").  The language in the Settlement

Agreement is categorical; it expressly provides that the Settlement does not and will not

extinguish *any* future claims against these Defendants:

> Named Plaintiffs and Settlement Class Members are not releasing
> and do not release any claim(s) whatsoever that they have or may
> have against Settling Defendants or their Related Persons and
> Entities.  Plaintiffs' sole obligation to Settling Defendants is to
> dismiss the Actions, without prejudice . . . .

Agreement, § 9.

**D.      The Settlement Provides for Notice to Class Members of the Terms of the Settlement and Their Ability to Object.**

The Settlement provides for dissemination of Notice to every Class member by U.S. mail

within 30 days after entry of an Order preliminarily approving the Settlement.  Agreement, § 2.

The Notice summarizing the Settlement terms, and informing Class members of their right to

object, is attached as Exhibit B to this Motion.  Notice costs will be paid out of the Settlement

fund.  Agreement, § 2.5.

**IV.      THE SETTLEMENT SATISFIES THE LEGAL STANDARDS FOR OBTAINING PRELIMINARY APPROVAL**

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-

step procedure for approval of class action settlements:

(1)      Certification of a settlement class and preliminary approval of the
proposed settlement after submission to the Court of a written
motion for preliminary approval.

(2)      Dissemination of notice of the proposed settlement to the affected
class members.

(3)      A formal fairness hearing, or final settlement approval hearing, at
which class members may be heard regarding the settlement, and
at which evidence and argument concerning the fairness, adequacy,
and reasonableness of the settlement are presented.

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004), §§ 21.63, *et seq*.

("*Manual 4th*").  This procedure safeguards class members' procedural due process rights and

1    enables the Court to fulfill its role as the guardian of class interests.  *See* 4 *Newberg on Class*

2    *Actions*, § 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").

3        With this motion, Plaintiffs respectfully request that the Court take the first step in the

4    settlement approval process by granting preliminary approval to the proposed Settlement.

5        **A.    Preliminary Approval Is Appropriate.**

6        The law favors the compromise and settlement of class-action suits.  *See, e.g.*, *Byrd v.*

7    *Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566,

8    576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992);

9    *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit

10   recognizes the "overriding public interest in settling and quieting litigation . . . particularly . . . in

11   class action suits which are now an ever increasing burden to so many federal courts and which

12   frequently present serious problems of management and expense."  *Van Bronkhorst v. Safeco*

13   *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

14       "[T]he decision to approve or reject a settlement is committed to the sound discretion of

15   the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

16   *Hanlon*, 150 F.3d at 1026.  In exercising such discretion, the Court should give "proper deference

17   to the private consensual decision of the parties . . . . [T]he court's intrusion upon what is

18   otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

19   limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

20   of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

21   taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027;

22   *see also* Fed. R. Civ. P. 23(e).

23       At the preliminary approval stage, the Court need only find that the proposed settlement is

24   within the "range of reasonableness" such that dissemination of notice to the class, and the

25   scheduling of a fairness hearing, are worthwhile and appropriate.  4 *Newberg* § 11.25; *see also In*

26   *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007); *Young v. Polo*

27   *Retail, LLC*, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).

28       While consideration of the requirements for *final* approval is unnecessary at this stage, all

of the relevant factors weigh in favor of the Settlement proposed here.[6]  The Settlement readily

satisfies the standard for preliminary approval because:  (a) it is the product of serious, arms-

length negotiations between the parties, reached after substantial and hard-fought litigation and

thorough investigation by Plaintiffs; (b) it provides substantial relief to the Settlement Class in the

form of a stipulated injunction, and is fair, reasonable, and adequate given the alleged harm, the

value of the injunction, Defendants' tenuous financial condition, and the parties' respective

litigation risks; (c) it was negotiated by, and is recommended by, experienced Class Counsel, and

was reached with the help of a well-respected mediator, who also supports approval of the

Settlement.

**1.      The Settlement Is the Product of Arms-Length Negotiations and Follows Substantial Litigation and Investigation.**

Where, as here, a settlement is the product of arms-length negotiations conducted by

capable and experienced counsel, the court begins its analysis with a presumption that the

settlement is fair and reasonable.  *See* 4 *Newberg* § 11.41; *Ellis v. Naval Air Rework Facility*, 87

F.R.D. 15, 18 (N.D. Cal. 1980).  The parties here engaged in three full days of mediation before

an experienced mediator, Catherine A. Yanni.  Those negotiations, while at times contentious,

ultimately resulted in an agreement in principle on the key terms of the proposed Settlement.

Yanni Decl., ¶¶ 6-9; Nelson Decl., ¶ 4.  For the past two months, the parties have been working to

negotiate and finalize the Settlement terms.  *Id*.  The parties were represented throughout these

negotiations by counsel experienced in the prosecution, defense, and settlement of complex class

actions, and were guided by the Court's prior rulings in this case.

Moreover, the Settlement is informed by Plaintiffs' thorough investigation and comes

after hard-fought litigation.  Prior to filing their initial complaint, and continuing throughout the

litigation, Plaintiffs closely investigated the staffing practices at issue, by obtaining and analyzing

Defendants' reports to the California Office of Statewide Health Planning and Development;

obtaining, reviewing and summarizing all of the California Department of Public Health licensing

---

[6] Plaintiffs will address in detail each of the factors required for final settlement approval in their Motion for Final Approval of the Settlement, to be submitted following issuance of notice to the Class.

1    and certification files for each named facility; obtaining the workers' compensation files of

2    Defendants' former employees; and tracking down and interviewing such former employees and

3    other potential witnesses.  Needham Decl., ¶ 9.  Further, as the Court is aware, the pleadings were

4    heavily contested though four rounds of motions to dismiss, and those motions raised complex

5    issues of law and fact.

6         Class Counsel—who include the same attorneys who won a landmark jury verdict against

7    another skilled nursing home company—were well-equipped to evaluate the Settlement and

8    conclude that it is in the best interests of the Class.  Nelson Decl., ¶¶ 3, 9; Thamer Decl., ¶¶ 2-6;

9    Healey Decl., ¶¶ 6-10, 18; Stebner Decl., ¶¶ 3-7; Needham Decl., ¶¶ 4-5, 9-10; Cutter Decl., ¶ 4;

10   *see also* Yanni Decl., ¶ 13 ("[I]n my judgment, Class Counsel's experience in nurse understaffing

11   litigation generally and in class action litigation, and their persistent efforts throughout the course

12   of this hard-fought litigation, played an invaluable role in achieving this settlement on behalf of

13   the Class Members and also benefiting future patients of the facilities.").

14            **2.    The Settlement Is Fair Given the Nature of the Claims, the Value of
                   the Injunction, Defendants' Financial Condition, and the Litigation
15                  Risks.**

16              **a.    The Injunction Is an Outstanding Result for the Class.**

17        The proposed Settlement provides important injunctive relief that will benefit Class

18   members and other patients in the future.  As the Ninth Circuit has held, the value of a class

19   settlement may include the non-monetary benefits it secures.  For example, in affirming approval

20   of a class settlement in *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998), the

21   court stressed that "the value of the injunctive relief ($20.9 million to $34.2 million) far

22   outweighs the value of the settlement fund."  *Id*. at 1240; *see also Cullen v. Whitman Med. Corp.*,

23   197 F.R.D. 136, 147 (E.D. Pa. 2000) (the value of the class settlement approved included the full

24   amount of debt forgiveness provided to the class); *Continental Assur. Co. v. Macleod-Stedman,

25   Inc.*, 694 F. Supp. 449, 468 (N.D. Ill. 1988) (finding a settlement provided fair value based in part

26   on the corporate restructuring it secured).

27        In *In re HP Laser Printer Litigation*, 2011 U.S. Dist. LEXIS 98759 (C.D. Cal. Aug. 31,

28   2011), the court finally approved a class action settlement of consumer claims against Hewlett-

1  Packard, which agreed to stop selling the defective printer cartridges at issue in that action.  The

2  court's finding that the settlement was "fundamentally fair, adequate, and reasonable" was based

3  in part on its observation that class counsel "views this settlement as providing 'virtually all of the

4  injunctive relief sought . . . that directly address[es] the gravamen of the complaints.'"  *Id.* at *11.

5      Similarly, the injunction here accomplishes much of what Plaintiffs sought to achieve with

6  this litigation.  As noted above, this consent decree not only mandates that Defendants

7  immediately comply with the law by adequately staffing their Facilities, but also requires them to

8  extensively document their compliance and submit to ongoing review by an independent monitor.

9  The monitoring and oversight compelled by the injunction will provide the residents of the

10  Facilities with a level of care they would not otherwise enjoy.  Thamer Decl., ¶ 6.  And, should

11  Defendants fail to comply, the Court retains jurisdiction and the ability to order remedial

12  sanctions.

13      This injunctive relief is conservatively valued at between $8.4 million and $9.75 million,

14  providing a significant benefit to the Class.  As detailed in the Healey Declaration, Class Counsel

15  used two separate methods to estimate the monetary value of the injunctive relief.  Healey Decl.,

16  ¶¶ 11-17.  The first method employs a benchmark—the stipulated value of the injunction in

17  *Lavender v. Skilled Healthcare*, a case involving facts and claims similar to those here.  Healey

18  Decl., ¶¶ 9, 13-14.  The factors underlying the valuation in *Skilled Healthcare* included the costs

19  of paying additional salaries, benefits, and training expenses, and of implementing new staff

20  tracking systems and reporting requirements, to comply with the injunction.  Healey Decl., ¶ 13.

21  A mathematical comparison between the number of licensed beds covered by the injunction there,

22  as well as its duration, with the corresponding facts in this case, results in an $8.4 million

23  estimated value for the injunction in this case.  Healey Decl., ¶ 14.

24      Second, Class Counsel provide an alternative valuation pegged to the benefit to the Class

25  (as opposed to the cost of Defendants' compliance).  Healey Decl., ¶¶ 15-17.  Such an estimate is

26  possible because, under California law, a defendant shown to have violated the rights of a skilled

27  nursing home resident incurs statutory damages of up to $500 per violation.  *See* Cal. Health &

28  Safety Code § 1430.  Here, Defendants reported 314,300 patient days for all the Facilities covered

by the injunction, and Plaintiffs believe these Facilities failed to satisfy the minimum staffing requirement on approximately 25 percent of the days in question. Healey Decl., ¶ 16. Consequently, there were an estimated 78,575 violations per year. Using a conservative amount of $100 per violation—one-fifth of the $500 maximum potential statutory damages—the potential yearly damages would exceed $7.8 million. Healey Decl., ¶ 16. Over the two-and-one-half year duration of this injunction, the total potential damages for continued non-compliance would exceed $19.5 million. Healey Decl., ¶ 16. However, because the purpose of the statutory remedy is to deter understaffing as well as to compensate residents, the $19.5 million estimate may overstate the actual value conferred upon residents from Defendants' consent to stop violating the law. Healey Decl., ¶ 17. Yet even if only half of the potential $19.5 million benefit were attributed to the injunction, its value would still exceed $9.75 million. Healey Decl., ¶ 17.

Each of these valuation methods is reasonable, and each reveals the Stipulated Injunction to be an outstanding and valuable result for the Class.

### b. The Monetary Consideration Provided Under the Settlement Is Reasonable Under the Circumstances.

The absence of monetary recovery to the Class is reasonable given the valuable injunctive relief and Defendants' financial condition. Courts assessing proposed class settlements have recognized that the reasonableness of their monetary consideration must be judged, not in a vacuum, but with a view toward the defendants' actual ability to pay. Indeed, a settling "defendant's overall financial condition and ability to pay" is one of the key factors in the settlement approval analysis. *Grunin v. International House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975); *see also* 4 *Newberg* § 11:50 (noting that "[c]ollectibility of a judgment . . . bear[s] on the reasonableness of a settlement in relation to the defendants' ability to withstand a greater one."); *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 662, 668 (S.D.N.Y. 1977) (given "the extent of the assets available to be pursued," court rejected objection that the consideration in a "modest" class settlement was too low).

Thus, "[d]ire financial condition weighs heavily in favor of settlement." *Smith v. Dominion Bridge Corp.*, 2007 U.S. Dist. LEXIS 26903, at *19 (E.D. Pa. Apr. 11, 2007). For

1  instance, in approving the class-wide settlement of ERISA and related claims in *Sheick v.*

2  *Automotive Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010),

3  the court found:  "[A]ll the parties agree that there is a substantial risk that ACC will not be

4  financially capable of continuing to provide benefits were litigation to continue and even if

5  litigation ultimately resulted in a judgment on the merits in favor of the Class Members.  Absent

6  settlement, all Class Members would be subject to the uncertainty, risk, hardship and delay

7  attendant to continued litigation, which ultimately might leave them with absolutely nothing."  *Id.*

8  at *51.  Likewise, in *Wright v. Linkus Enterprises*, 259 F.R.D. 468 (E.D. Cal. 2009), the court

9  granted preliminary approval to a class settlement of claims under the Fair Labor Standards Act,

10 finding that "the financial condition of Defendants creates the possibility that Defendants could

11 not withstand greater liability than the proposed settlement amount."[7]  *Id.* at 476.

12    In another recent decision, *Schwarm v. Craighead*, 814 F. Supp. 2d 1025 (E.D. Cal.

13 2011), the defendant had gone bankrupt and only approximately $160,000 was available from the

14 estate.  Because of the reality that "bankruptcy has made it impossible for each class member to

15 be adequately compensated for the monetary harm they suffered," the court directed that all the

16 money be paid as service awards or attorneys' fees, with nothing to the class.  *Id.* at 1031-33.  The

17 court explained that "[c]lass members may never benefit financially from class counsel's efforts,

18 but they do benefit from the attorneys' success in stopping defendants' illegal practices and

19 _____

20 [7] *See also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 662 (E.D. Va. 2001)
   (although the settlement consideration consisted of the corporation's securities rather than cash,
   the prospects for a cash recovery were slim in light of the corporation's weakened financial
21 condition, and the court granted final approval); *In re Nat'l Student Marketing Litig.*, 68 F.R.D.
   151, 155-56 (D.D.C. 1974) (uncertain financial condition of the principal corporate defendant
22 justified approval of a partial settlement with it involving no cash recovery—"lines of credit
   needed to maintain its operations are not easily established or are established on unfavorable
23 terms."); *Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 630 (D. Kan. 1976) (evidence supported
   class counsel's representation that they "seriously doubted" plaintiffs' ability to collect a large
24 judgment); *IUE-CWA v. GMC*, 238 F.R.D. 583, 588-89 (E.D. Mich. 2006) (class counsel hired
   experts to analyze the settling defendant's precarious financial condition); *In re Corrugated*
25 *Container Antitrust Litig.*, 556 F. Supp. 1117, 1149-51 (S.D. Tex. 1982) (finally approving a class
   settlement; crediting accountant findings of defendant's "weakened financial condition" and
26 discussing the "important nonmonetary benefits" of the settlement); *In re Chambers Dev. Sec.*
   *Litig.*, 912 F. Supp. 822, 839 (W.D. Pa. 1995) (stating that the defendant's "precarious financial
27 condition is a major factor favoring approval of the settlement."); *Alvarado Partners, L.P. v.*
   *Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) ("If the litigation continues, the potential for
28 bankruptcy is real, after which recovery from the corporation is questionable.").

1    protecting class members . . . . Class counsel achieved some of the benefit the parties sought in

2    bringing suit . . . ." *Id*. at 1029.

3         The same is true here.  The fairness of this Settlement is underscored by the fact that Class

4    members are not releasing any claims; they retain the ability to pursue separate damages claims

5    against Defendants.  Agreement, § 9.  Moreover, given the Parent Entities' financial condition,

6    continued litigation on a class basis is unlikely to yield a recovery greater than that provided for

7    under the Settlement.  Agreement, at 1.  The record contains the expert declaration of a forensic

8    accountant, Michael J. Eggers, who scrutinized the Parent Entities' financial documents and

9    concluded they are incapable of paying more than the amount they have agreed to pay.  Eggers

10   Decl., ¶¶ 5, 9.  This fact was confirmed by the detailed deposition testimony of the CFO of a

11   Parent Entity.  Reinholtsen Decl., Exh. A; Eggers Decl., ¶¶ 5-8.

12        Under these circumstances, the mediator was correct to find that the proposed Settlement

13   embodies "a reasonable and practical resolution of uncertain legal claims and defenses,

14   particularly given Defendants' precarious financial condition . . . . Absent a settlement, both sides

15   would incur substantial expenses from continued litigation, and Defendants could face

16   bankruptcy, resulting in no relief for the class."  Yanni Decl., ¶¶ 5, 8; *see also* Cutter Decl., ¶ 4

17   (settlement resulted from an "assessment of the risks to the class members that Defendants would

18   drain what resources would be available to benefit the class if the case were to continue.").

19   Indeed, by forcing the Defendants into bankruptcy, a significant judgment could harm rather than

20   help the Class members.

21                    **c.    The Litigation Risks, Including Defendants' Potential**
                           **Bankruptcy, Support Preliminary Approval.**
22

23        The potential risks attending further litigation support preliminary approval.  The named

24   Defendants, the Evergreen Entities, do not hold substantial assets of their own.  This Court,

25   however, dismissed the Parent Entities under Washington law.  Order of October 13, 2011 (Dkt.

26   No. 79).  Plaintiffs therefore would have to convince the Court to revisit this ruling, and pierce

27   the corporate veil, to have a chance of obtaining a judgment against the Parent Entities—a

28   particularly difficult undertaking under Washington law.  *See Minton v. Ralston Purina Co.*, 47

1  P.3d 556, 562-63 (Wash. 2002).  Even assuming Plaintiffs were to surmount the formidable alter-

2  ego hurdle, they would still face the very real possibility of the Parent Entities' declaring

3  bankruptcy.

4  In addition, both liability and damages are hotly disputed; Plaintiffs would face a host of

5  difficult merits challenges were this case to proceed to trial.  Among other arguments, Defendants

6  have claimed that (a) evidence of annualized staffing data does not prove violations of the daily

7  staffing requirements; (b) if permitted to count the hours of all persons who provided nursing care

8  (*e.g.*, including those who are not registered nurses or licensed caregivers), the Facilities were

9  adequately staffed; (c) Health and Safety Code section 1276.5, upon which Plaintiffs rely, does

10 not expressly confer a right upon residents that they may enforce under section 1430(b) or other

11 statutes; (d) given that Plaintiffs have not alleged actual damages resulting from understaffing and

12 have disclaimed recovery for physical injuries, there is a substantial question as to what amount

13 (if any) should be awarded as damages at trial; (e) injunctive relief is precluded on abstention

14 grounds under *Alvarado v. Selma Convalescent Hospital*, 153 Cal. App. 4th 1292, 1298 (2007).

15 Proceeding to trial could add years to the resolution of this case in view of the legal and

16 factual issues raised and the likelihood of appeals, including with respect to issues already

17 decided by this Court, such as abstention.  Considered against the risks of continued litigation and

18 Defendants' potential bankruptcy, the totality of relief under the proposed Settlement is well

19 within the range of reasonableness.

20          **3.      The Recommendation of Experienced Counsel and an Experienced
                      Mediator Strongly Favor Approval.**

21

22 The judgment of competent counsel regarding the proposed Settlement should be given

23 significant weight.  *See Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal.

24 July 18 1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd v.

25 Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs'

26 counsel should be given a presumption of reasonableness.").

27 Class Counsel here have extensive experience litigating and settling consumer class

28

1   actions and other complex matters.[8]  They have intensively investigated the factual and legal

2   issues raised in this action, and that investigation informed the Settlement negotiations.  Needham

3   Decl., ¶ 9; Nelson Decl., ¶ 3.  The fact that qualified and well-informed counsel endorse the

4   Settlement as being fair, reasonable, and adequate weighs heavily in favor of approval.  Nelson

5   Decl., ¶ 9; Thamer Decl., ¶ 6; Healey Decl., ¶ 18; Needham Decl., ¶ 10; Stebner Decl., ¶ 8; Cutter

6   Decl., ¶ 4; Dudensing Decl., ¶ 4.

7        Furthermore, the key terms of the Settlement were recommended by a capable mediator,

8   Catherine Yanni, who is highly experienced in mediating class actions.  Ms. Yanni unreservedly

9   endorses the Settlement, noting "the final settlement terms reflect the litigation risks on both

10  sides, the severe limitations on Defendants' financial resources, and an effort to provide

11  meaningful redress to the Class.  The importance of the injunction cannot be overstated, as it will

12  ensure that minimum skilled nursing requirements are met for several years going forwards."

13  Yanni Decl., ¶ 11.  The record fully supports her conclusion and the Settlement should be

14  preliminarily approved.

15  ## V.    PRELIMINARY CERTIFICATION OF AN INJUNCTIVE RELIEF CLASS IS WARRANTED

16

17       Provisional certification of a settlement class is a necessary component of preliminary

18  approval.  The Court need not consider the manageability of a potential trial because the

    Settlement, if approved, would obviate the need for a trial.  *See Amchem Products, Inc. v.*

19  *Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1021-23 (9th Cir.

20  1998).  A court may certify a class if a plaintiff demonstrates that all of the prerequisites of

21  Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of

22  Rule 23(b) has been met.  *See* Fed. R. Civ. P. 23.

23
    Because this proposed Settlement achieves injunctive relief for the Class, Plaintiffs
24
    request certification of a corresponding injunctive relief Class pursuant to Rule 23(b)(2).  Class
25
    certification is warranted under that subsection if the defendant "has acted or refused to act on
26
    grounds that apply generally to the class, so that final injunctive relief . . . is appropriate
27
    ---
    [8] Nelson Decl., ¶¶ 6-8; Thamer Decl., ¶¶ 2-5; Stebner Decl., ¶¶ 2-7; Healey Decl., ¶¶ 4-10;
28  Needham Decl., ¶¶ 2-8; Arns Decl., ¶¶ 2-7; Cutter Decl., ¶¶ 2-3; Dudensing Decl., ¶ 2.

respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Plaintiffs brought this action on behalf of a proposed Class consisting of all persons who resided at one of the Facilities from November 15, 2006 through the date of class certification.  Plaintiffs also request certification of Subclasses for each skilled nursing Facility.  Each of the requirements of Rule 23(a) and Rule 23(b)(2) is satisfied, making certification appropriate.

First, the members of the Class and the Subclasses are so numerous that joinder of all members is impractical.  Plaintiffs are informed and believe that the Class and Subclasses comprise hundreds, if not thousands, of residents at Defendants' Facilities.  Further, the Class and Subclasses are composed of easily ascertainable sets of persons who resided at one or more Facility during the Class Period.

Second, this litigation features common class-wide issues that, absent the Settlement, would drive the resolution of the claims.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Several disputed issues are common to Plaintiffs and the Class:  whether Defendants violated and continue to violate Section 1430(b) by failing to comply with the 3.2 hour NHPPD requirement of Health and Safety Code section 1276.5; whether Defendants violated and continue to violate Section 1430(b) by failing to provide an adequate number of qualified nursing personnel to carry out all functions at the Facilities, in violation of Health and Safety Code section 1599.1; whether Defendants have violated and continue to violate the CLRA, including, without limitation, Civil Code sections 1770(a)(5) and 1770(a)(7), by failing to disclose, and actively concealing, material facts regarding qualifications and staffing conditions; whether Defendants have violated and continue to violate the UCL in that their conduct is immoral, unscrupulous and contrary to public policy, and the detriment and gravity of that conduct outweighs any benefits attributable to it; and whether Plaintiffs and the Class are entitled to injunctive relief to ensure that Defendants' Facilities satisfy the minimum adequate staffing requirements.

Third, the claims of the representative Plaintiffs are typical of the claims of the Class, and of each Subclass of which a representative Plaintiff is a member.  The facts surrounding Defendants' misconduct are common to Plaintiffs and the Class, and represent a common thread

1   of misconduct that caused similar injuries to all Class members.

2          Fourth, the named Plaintiffs are adequate Class representatives. Because their claims are

3   typical of those of the Class and Subclasses, Plaintiffs have the same interests in the outcome of

4   this case as the other Class members. The representative Plaintiffs—like all Class members—

5   resided at (or are the successors-in-interest to someone who resided at) one or more of the

6   Facilities during the relevant time period. Class Counsel are likewise adequate based on their

7   prosecution of this case until now and their experience litigating large, complex class actions of

8   this nature, including class actions involving understaffing at skilled nursing homes. Nelson

9   Decl., ¶¶ 3, 6-8; Thamer Decl., ¶¶ 2-6; Stebner Decl., ¶¶ 2-8; Healey Decl., ¶¶ 4-10; Needham

10  Decl., ¶¶ 2-9; Arns Decl., ¶¶ 2-7; Cutter Decl., ¶¶ 2-3; Dudensing Decl., ¶ 2.

11         Finally, each and every member of the Class is entitled to injunctive relief under Health

12  and Safety Code section 1430(b) as a result of the inadequate levels of qualified nursing staff at

13  Defendants' skilled nursing Facilities. By engaging in pervasive understaffing, Defendants have

14  acted and refused to act on grounds that apply generally to the proposed Settlement Class of

15  residents at those Facilities, such that "final injunctive relief . . . is appropriate respecting the class

16  as a whole." Fed. R. Civ. P. 23(b)(2).

17         Therefore, the Class should be preliminarily certified for Settlement purposes. *See, e.g.*,

18  *Jaffe v. Morgan Stanley & Co*., 2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 8, 2008) ("The

19  parties have agreed upon extensive injunctive relief which reasonable plaintiffs would have

20  brought suit to obtain. Moreover, because Plaintiffs complain primarily of ongoing . . . practices,

21  declaratory and injunctive relief would be necessary and appropriate were Plaintiffs to succeed.

22  Accordingly, the Court hereby CERTIFIES the injunctive-relief class under Rules 23(a) and

23  23(b)(2).").

24  **VI.      THE NOTICE SHOULD BE APPROVED**

25         The proposed form of Notice and the Notice program fully comply with due process and

26  Fed. R. Civ. P. 23. Rule 23(c)(2)(A) authorizes the Court to "direct appropriate notice" to a class

27  certified under Rule 23(b)(2). Every notice of a class action settlement should include a general

28  description of the proposed settlement. *See Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson*

1   *Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

2          The proposed Notice here includes all the necessary and appropriate information.  *See*

3   Exhibit B hereto.  The Notice accurately and succinctly informs the Class members of the salient

4   terms of the Settlement and their right to object to it.  The Notice also describes the hearing

5   before this Court on final approval of the Settlement, and the application for awards of attorneys'

6   fees and expenses.  The Notice is more than sufficient to apprise the Class of the Settlement terms

7   and their rights.

8          Notice sent to each class member "who can be identified through reasonable effort"

9   constitutes reasonable notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

10  Accordingly, the settling parties in this case have proposed that the Notice be sent by first class

11  mail to all Class members who can be identified from Defendants' records.  Agreement, § 2.  The

12  Notice will also be published via a one-time paid advertisement in *USA Today*.

13         The Court should approve the Notice and the Notice program.

14  **VII.    A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED**

15         The last step in the approval process is a Fairness Hearing at which this Court may hear all

16  evidence and argument necessary to determine whether to grant final approval to the Settlement.

17  Plaintiffs respectfully request that the Court set the following schedule for further Settlement-

18  related proceedings:

| | |
|---|---|
| Deadline for Class Counsel to file their fee application. | 30 days after the Court grants preliminary approval. |
| Deadline for Class members to submit objections to the proposed Settlement and/or to Class Counsel's fee application. | 55 days after the Court grants preliminary approval. |
| Deadline for Class Counsel to submit their final approval motion and responses to any objections. | 85 days after the Court grants preliminary approval. |
| Final Fairness Hearing. | 100 days after the Court grants preliminary approval. |

- 20 -

VIII.   **CONCLUSION**

        For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

(1) granting preliminary approval to the Settlement; (2) certifying for settlement purposes the

proposed Settlement Class; (3) appointing counsel listed below as Class Counsel; (4) appointing

Plaintiffs as Settlement Class Representatives; (5) approving the parties' proposed forms of notice

and notice program, and directing that notice be disseminated pursuant to the program; and

(6) setting a Fairness Hearing and other dates in connection with the final approval of the

Settlement.


Dated: May 16, 2012                    Respectfully submitted,

                                       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


                                       By:   _/s/ Lexi Hazam_____
                                             Lexi Hazam

                                       Robert J. Nelson (State Bar No. 132797)
                                       Lexi Hazam (State Bar No. 224457)
                                       Jordan Elias (State Bar No. 228731)
                                       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                       275 Battery Street, 29th Floor
                                       San Francisco, CA  94111-3339
                                       Telephone:  (415) 956-1000
                                       Facsimile:  (415) 956-1008

                                       Michael D. Thamer (State Bar No. 101440)
                                       LAW OFFICES OF MICHAEL D. THAMER
                                       Old Callahan School House
                                       12444 South Highway 3
                                       Post Office Box 1568
                                       Callahan, CA 96014-1568
                                       Telephone:  (530) 467-5307
                                       Facsimile:  (530) 467-5437

                                       Kathryn A. Stebner (State Bar No. 121088)
                                       Sarah Colby (State Bar No. 194475)
                                       STEBNER & ASSOCIATES
                                       870 Market Street, Suite 1212
                                       San Francisco, CA 94102-2907
                                       Telephone:  (415) 362-9800
                                       Facsimile:  (415) 362-9801

1    Christopher J. Healey (State Bar No. 105798)
     MCKENNA, LONG & ALDRIDGE, LLP
2    600 West Broadway, Suite 2600
     San Diego, CA 92101
3
     W. Timothy Needham (State Bar No. 96542)
4    Michael J. Crowley (State Bar No. 102343)
     JANSSEN, MALLOY, NEEDHAM, MORRISON,
5    REINHOLTSEN & CROWLEY, LLP
     730 Fifth Street
6    Eureka, CA 95501

7    Robert S. Arns (State Bar No. 65071)
     Steven R. Weinmann (State Bar No. 190956)
8    THE ARNS LAW FIRM
     515 Folsom Street, 3rd Floor
9    San Francisco, CA  94105

10   C. Brooks Cutter (State Bar No. 121407)
     John Robert Parker, Jr. (State Bar No. 257761)
11   KERSHAW, CUTTER & RATINOFF
     401 Watt Avenue
12   Sacramento, CA  95864

13   Edward P. Dudensing (State Bar No. 182221)
     THE LAW OFFICE OF EDWARD P. DUDENSING
14   925 G Street
     Sacramento, CA  95814
15
     *Attorneys for Plaintiffs*
16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMO. OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 4:10-CV-05839-CW